## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | |
|---|---|
| MARCY CROFT, | Case No. 3:25-cv-000422 |
| *Plaintiff,* | |
| VS. | **COMPLAINT** |
| ANTHONY BUZBEE, ANTHONY BUZBEE, L.P. d/b/a THE BUZBEE LAW FIRM, and JOSE MALDONADO | **JURY TRIAL DEMANDED** |
| *Defendants.* | |

### PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, MARCY CROFT, by and through undersigned attorneys, sues Defendants, ANTHONY BUZBEE, ANTHONY BUZBEE, L.P. D/B/A THE BUZBEE LAW FIRM (the "Buzbee Law Firm"), and JOSE MALDONADO, and in support thereof states as follows:

### INTRODUCTION

1.      This case arises from a coordinated campaign to falsely accuse a well-respected attorney of criminal conduct and to broadcast those accusations to a massive public audience in an effort to discredit, intimidate, and silence her.

2.      In furtherance of that campaign, Defendant Anthony Buzbee and his law firm publicly accused Plaintiff Marcy Croft of committing multiple felonies, including illegal client solicitation, bribery, intimidation, and obstruction of justice. These accusations were published on social media platforms with substantial followings. The statements were false, unprivileged, and made with actual malice.

3.      The accusations did not arise from any misconduct by Ms. Croft. Instead, they arose after Ms. Croft briefly and voluntarily evaluated a former Buzbee client's concerns regarding

the Buzbee Law Firm's handling of client funds and declined to recommend pursuing claims. Rather than ending the matter, Defendants, acting in concert, publicly accused Ms. Croft of criminal activity.

4.      Accusations of felony conduct against a practicing lawyer strike at the core of professional reputation and livelihood.  By falsely portraying Ms. Croft as a criminal and conspirator, Defendants sought to discredit, intimidate, and silence her through public spectacle rather than truth.

5.      This lawsuit seeks accountability for defamation, false light, emotional distress, and civil conspiracy.  No lawyer—regardless of platform, notoriety, or audience—is entitled to falsely accuse another of crimes with impunity.  The law provides a remedy when reputations are destroyed by deliberate falsehoods.  This action seeks that remedy.

## **PARTIES**

6.      Plaintiff Marcy Croft is a citizen of Mississippi, who conducts regular business through her Mississippi law firm.

7.      Defendant Anthony Buzbee is a citizen of the State of Texas, with a residence at 13818 Musket Lane, Galveston, Texas 77554, and may be served with process at that address or at any other location authorized by Federal Rule of Civil Procedure 4(e).

8.      Defendant Anthony Buzbee, L.P. d/b/a the Buzbee Law Firm is a limited partnership with Anthony Buzbee as owner and limited partner, and Services by AGB, L.L.C. as president and general partner.  Buzbee is the president, manager, and sole member of Services by AGB, L.L.C.  As a result, the Buzbee Law Firm is a citizen of the State of Texas.  The Buzbee Law Firm is located at 600 Travis Street, Suite 7500, Houston, Texas 77002, and may be served with

process upon Peter Taaffe at 600 Travis Street, Suite 7300, Houston, TX 77002, or any other agent authorized by Federal Rule of Civil Procedure 4(e).

9.      Defendant Jose Maldonado is a citizen of the State of Texas, with a residence at 2209 Mulberry Lane, Pasadena, Texas 77502, and may be served with process at that address or at any location authorized by Federal Rule of Civil Procedure 4(e).

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction because Defendants and Plaintiff are completely diverse (Defendants are citizens of Texas, and Plaintiff is a citizen of Mississippi), and Plaintiff seeks damages in excess of $75,000.  *See* 28 U.S.C. § 1332(a).

11.      This Court has personal jurisdiction over Defendants because they are residents of Texas.

12.      Venue is proper in the Southern District of Texas because all Defendants reside there.  *Id.* § 1391(b)(1).

## FACTS

13.      This lawsuit arises from a deliberate and malicious campaign of defamation and intimidation against Plaintiff Marcy Croft.  Defendants Anthony Buzbee, Jose Maldonado, and the Buzbee Law Firm, acting in concert, have falsely accused Ms. Croft of criminal conduct and have disseminated those accusations publicly through social media and written communications.  The accusations were not grounded in fact or law.  Instead, they were deployed as part of a broader effort to discredit, intimidate, and silence Ms. Croft and to control the public narrative at a moment of heightened scrutiny.

*Ms. Croft's Legal Practice*

14.    Ms. Croft has been a well-respected member of the Mississippi Bar for nearly three decades, recognized for her integrity, advocacy, and legal acumen.  Throughout her distinguished career, she has been guided by one key principle: seeking justice.

15.    An experienced trial lawyer, Ms. Croft has successfully represented Fortune 500 companies in complex mass tort litigation, uncovered fraudulent legal schemes that resulted in the dismissal of tens of thousands of claims, and played a critical role in exposing unethical practices in litigation throughout the nation.  Beyond high-stakes corporate litigation, she has devoted significant *pro bono* efforts to criminal justice reform, advocating for incarcerated individuals within the Mississippi Department of Corrections.  Ms. Croft was the lead litigator in exposing the inhumane conditions at the Mississippi State Penitentiary at Parchman, proudly working alongside Team Roc, the philanthropic arm of entertainment company Roc Nation, to improve conditions that were causing injury, illness, and death at what was recognized at the time as the country's worst and most dangerous prison in a remote corner of the Mississippi Delta.  That advocacy led to an investigation by the Department of Justice and a broader movement to reform prison conditions in Mississippi, making all its citizens safer.

16.    Ms. Croft's clients regard her as an honest, fair, and diligent advocate.  She is known for taking on tough opponents and standing firm in the face of adversity and intimidation.  Throughout her career, she has demonstrated that she does not back down from a challenge, earning a reputation as a formidable advocate who fights tirelessly for justice.  Respected by bench and bar alike, Ms. Croft has received numerous peer-nominated awards, honoring her professionalism, excellence, and commitment to the rule of law, including recognition in *Benchmark Litigation*'s inaugural "Top 250 Female Litigators in America" list.  She has been

consistently recognized over the years by *Super Lawyers* and *Best Lawyers in America*, is a member of the Pro Bono College of the State Bar of Texas, and maintains an AV Preeminent rating with Martindale-Hubbell. Additionally, she has chaired national conferences on fraud and abuse in litigation, served as a lecturer at national legal seminars, and served in liaison counsel roles in federal multi-district litigation proceedings. As a recognized leader in fraud detection and litigation strategy, she has advised on high-stakes crisis management matters and successfully represented clients in some of the nation's largest and most complex legal disputes.

17.     Indeed, it was Ms. Croft's excellent reputation that enabled her to strike out on her own, co-founding her firm, MJ Legal, P.A. in Jackson, Mississippi, four years ago.

18.     Unfortunately, Ms. Croft's closely guarded reputation has suffered and will continue to suffer harm due to Defendants' coordinated effort to spread falsehoods and damage her professional standing.

### *Buzbee Initiates Scheme Using Maldonado to Engage Plaintiff*

19.     On December 17, 2024, Jose Maldonado, a former client of the Buzbee Law Firm, contacted Ms. Croft in Mississippi, ostensibly to ask for her help and guidance. Maldonado represented that he believed his former counsel—the Buzbee Law Firm—had exploited him and mishandled client funds, and he asked Ms. Croft to evaluate potential claims.

20.     As she has done for countless people in need, Ms. Croft agreed to help Maldonado and offered to provide a free case assessment. This was standard practice for Ms. Croft, who routinely reviews legal issues on a *pro bono* basis, advises on the viability of claims, and then refers individuals for legal representation when appropriate. Maldonado was no different.

21.     On December 19, 2024, Ms. Croft spoke with Maldonado regarding his concerns. During that call, Ms. Croft advised that, while she believed he had likely been the victim of a

fraudulent scheme perpetrated by his former counsel, based on the limited materials provided, she did not believe that he had sufficient evidence to pursue civil claims. Ms. Croft also perceived that someone else was present during the call and heard a sound consistent with a recording device being activated. That call occurred while Ms. Croft was in Mississippi.

22.     Unknown to Ms. Croft at the time of that call, Maldonado had already sent an email to Ms. Croft's firm the day before, on December 18, 2024, stating that her services were no longer needed. Strangely, Maldonado failed to mention this email during their December 19 phone call, raising concerns about his intentions. At that point, Ms. Croft ceased all work related to Maldonado.

23.     But Maldonado's work to engage with Ms. Croft wasn't done. Despite his December 18 email, Maldonado contacted Ms. Croft in Mississippi again on December 23, 2024, stating that he had seemingly found the rest of the paperwork for his case. Ms. Croft did not respond. Soon after, Ms. Croft learned that Maldonado had partnered with Buzbee and his law firm at or around the same time Ms. Croft been providing legal advice to Maldonado. Buzbee, the very lawyer whom Maldonado had initially sought Ms. Croft's advice to sue was now actually Maldonado's ally, and was part of a coordinated attempt to entrap and defame Ms. Croft.

### *Uncovering Buzbee's Corruption*

24.     This partnership between Buzbee and Maldonado becomes even more troubling in light of the financial irregularities Ms. Croft uncovered while assessing Maldonado's claims. During her brief involvement with Maldonado, Ms. Croft discovered alarming details about a case challenging the Buzbee Law Firm's financial practices: *Guadalupe Garza v. Callan Marine, LTD*, No. 2020CCV-61002-3 (Nueces Cnty. Ct. at Law No. 3, filed July 17, 2020) [hereinafter "*Garza*"]. *Garza* involved allegations of unpaid, insufficient, or delayed maintenance payments to one of

Buzbee's former clients.  Maldonado's name appeared in a motion to compel filed in that case.  *See* Ex. A (Resp. to Mot. to Quash Texas Access to Justice Subpoena or, Alternatively, Issue a Protective Order and Mot. to Compel, filed in *Garza* on Sept. 12, 2022) at 4, Exs. 10, 12.

25.    In that motion, a maritime defendant located in Galveston, Callan Marine, sought a subpoena to investigate the Buzbee Law Firm's numerous bank accounts, including certain accounts at HomeTown Bank in Galveston.  Callan Marine discovered that the Buzbee Law Firm told clients that Callan Marine had failed to make necessary maintenance and cure payments.  Callan Marine asserted that, contrary to these false allegations of nonpayment, it had "consistently honored" its financial obligations by sending maintenance checks to plaintiff's counsel, "trust[ing] that The Buzbee Law Firm [would] forward [the] check[s]" to its clients.  Ex. A at 1, 2, Ex. 6.  Unfortunately, that trust was misplaced as, according to the court filing, those checks never reached their intended recipients.  *See id.*

26.    Callan Marine alleged that the Buzbee Law Firm electronically deposited client maintenance checks into its own bank accounts at HomeTown Bank.  Ex. A at 3, 4, Exs. 7, 10, 11, 12.  As part of its subpoena request, Callan Marine sought to determine whether these accounts were originally designated as business operations accounts or official IOLTA trust accounts.  It specifically inquired about how these accounts were classified and when, if ever, they were formally designated as trust accounts.  The unclear status of these accounts raised significant concerns about whether client funds were improperly commingled or misused.  Ex. A at 4, Ex. 9.

27.    The motion further revealed that these transactions were not isolated incidents.  Callan Marine noted that the relevant bank account was just "one of multiple accounts into which similar funds [had] been transferred."  Ex. A at 4.  The motion cited multiple deposits, including

two instances in which checks made out to Jose Maldonado had been "electronically deposited by

The Buzbee Law Firm." *Id.*



Ex. A at Exs. 10, 12.

28.    Given that Callan Marine's checks had been sent to the Buzbee Law Firm but never reached the clients, the central question became: "where did the money go?"  Ex. A at 7.

29.    When Ms. Croft spoke with Maldonado, he, too, had the same question about his Callan Marine checks—where did his money go?  Maldonado told Ms. Croft that that was not his signature and that he did not authorize Buzbee or his firm to sign his name and deposit those checks into accounts at HomeTown Bank or any other bank on the dates in question.[1]

30.    Buzbee's other former clients appear to be asking the same question.  Two former clients sued Buzbee for breaches of fiduciary duty related to the mishandling of settlement funds.  *See Thompson v. Buzbee*, No. 2:24-cv-02827 (E.D. La. filed Dec. 9, 2024); *Guidry v. Buzbee,* No. 2:24-cv-02873 (E.D. La. filed Dec. 13, 2024).[2]  The allegations contained in those lawsuits expose unethical practices.  And another suit—whether from Maldonado or any of Buzbee's former clients questioning his firm's handling of loans to clients and the financing of medical expenses—could have further exposed Buzbee, which is why he and Maldonado acted in concert to entrap Ms. Croft and to launch an attack to undermine her before more of Buzbee's actions came to light.

### *Buzbee's Defamation Campaign Begins – Instagram Edition*

31.    Caught in a web of his own lies, Buzbee lashed out.

---

[1] *See* Ex. A at Exs. 10, 12. Maldonado provided limited paperwork for Ms. Croft's review. Listed in that paperwork was an additional, anomalous reference to "Hometown Clients Ex" on what appeared to be a financial document.  There was also a form stamped with the name Dr. Rubin Bashir—a physician who repeatedly appears in public filings as an alleged treating physician and/or expert in cases filed by Buzbee and his firm.  Although these irregularities raised concerns, Ms. Croft did not believe Maldonado presented her with documentation sufficient to bring a civil claim, so she did not refer Maldonado to other counsel.  Defendants have been aware of these facts—which are not privileged—from the outset.

[2] Because Buzbee requires his clients to agree to arbitration clauses to prevent fee disputes from being aired publicly, these cases have since been dismissed.

32.     On December 18, 2024—the same day Maldonado abruptly terminated his relationship with Ms. Croft via email, the day after Maldonado first reached out to Ms. Croft, and the day before Ms. Croft heard a recorder click while talking with Maldonado—Buzbee launched a coordinated attack on his personal Instagram account, where he has over 100,000 followers:



*See* Tony Buzbee (@tonybuzbee), INSTAGRAM (Dec. 18, 2024), https://www.instagram.com/p/DDuRQQLpy5K.

33.    In a calculated attempt to incite public outrage and destroy Ms. Croft's credibility, Buzbee's post to his ***104,000 Instagram followers*** is rife with defamatory and actionable falsehoods[3]:

34.    Buzbee falsely claimed that Ms. Croft had hired (fake) "agents" to illegally solicit clients, engaging in the felonious act of barratry—which is categorically false.

> including barratry and impersonation of a public official. ==The case was brought on behalf of a former client of the firm who was illegally solicited by agents working on behalf of the Defendants.== These agents pretended to working for the State of Texas and

35.    Later, he told his more than 100,000 Instagram followers that "agents" "*acting on Croft's behalf*" offered former clients of Buzbee up to $10,000 to file a frivolous case against him:

> As set forth in the lawsuit, earlier this week, ==agents acting on Croft's behalf again were caught on tape soliciting and offering money (up to $10,000) to former clients of The Buzbee Law Firm to convince them to file a frivolous case against the Buzbee Law Firm.==
> These folks have now stooped to a new low to try to

---

[3] Buzbee sometimes refers to Ms. Croft (and presumably others) in the post as "Defendants." Any case in which Ms. Croft is a defendant is not a basis for her claims here and therefore not relevant to the parties' relationship.

36.     Buzbee's statements to his more than 100,000 Instagram followers, as set forth in paragraphs 34 and 35 are lies.  Buzbee willfully, maliciously, wantonly, and with reckless disregard for the truth spread these lies to his followers, causing serious damage to Ms. Croft and her law firm.

37.     Reeling from damaging exposure in highly public cases, Buzbee doubled down on his lies, accusing Ms. Croft of *habitual* illegal activity:



38.     And he likewise accused Ms. Croft of a conspiracy to obstruct justice:



39.     But Buzbee didn't stop there.  He next said that Ms. Croft was "orchestrating" such an unlawful conspiracy:



40.     Buzbee's statements to his more than 100,000 Instagram followers, as set forth in paragraphs 37, 38, and 39, are also lies.  Buzbee willfully, maliciously, wantonly, and with reckless

disregard for the truth spread these lies to his followers, causing serious damage to Ms. Croft and her law firm.

41.     Reaching even further, Buzbee charged Ms. Croft and others with "intimidat[ion]" tactics:

> These folks have now stooped to a new low to try to intimidate the lawyers of the Buzbee Law Firm from doing their important work. They now are contacting clients and former clients and actually offering them

42.     He repeated his prior falsehoods, accusing Ms. Croft of barratry and intimidation:

> intimidate the lawyers of the Buzbee Law Firm from doing their important work. They now are contacting clients and former clients and actually offering them money to sue me. This conduct was specifically targeted at our firm so we would not pursue cases related to the Diddy litigation. LET ME BE CLEAR: we will not be bullied or intimidated. The Defendants this time overstepped, got sloppy, and stupidly got

43.     And lest his followers be left with any doubt, Buzbee closed his post by accusing Ms. Croft and others of an "overstepp[ing]," "sloppy," "stupid[ ]," and "illegal" "scheme":

> will not be bullied or intimidated. The Defendants this time overstepped, got sloppy, and stupidly got caught at their illegal scheme on tape. We have reported this conduct to the authorities, and intend

44.     Buzbee's statements to his more than 100,000 Instagram followers, as set forth in paragraphs 41, 42, and 43—are further lies.  Buzbee willfully, maliciously, wantonly, and with

reckless disregard for the truth spread these lies to his followers, causing serious damage to Ms. Croft and her law firm.

45.    The damage caused by Buzbee's smear campaign was immediate and severe. Accusing a respected member of the bar of committing a felony, being "sloppy" and "stupid," and orchestrating a conspiracy to obstruct justice was not only deliberate but also highly damaging. These reckless, baseless, and patently false allegations were designed to inflict maximum harm on Ms. Croft's professional reputation and standing within the legal community in Mississippi.

*Buzbee's Public Defamation Campaign Deepens – Facebook Edition*

46.    Buzbee's lies didn't stop when he logged out of Instagram.  Rather, he continued his campaign through two December 18, 2024, posts on a second social media platform—Facebook—where he has thousands of followers.

47.     One of Buzbee's Facebook posts copied verbatim from his Instagram post:



*See* Tony Buzbee (tony.buzbee), Facebook (Dec. 18, 2024), https://www.facebook.com/tony.buzbee.

48.     Buzbee posted a second time that same day, this time bolstering his prior defamatory and actionable statements with new ones:



*See* Tony Buzbee (tony.buzbee), FACEBOOK (Dec. 18, 2024), https://www.facebook.com/tony.buzbee.

49.     In this second Facebook post, Buzbee purports to "quote" from a "secret recording" between Ms. Croft's supposed "agents" and a former Buzbee client—whom the "agents" supposedly offer cash in exchange for suing Buzbee:

> tape soliciting and offering money (up to $10,000) to former clients of The Buzbee Law Firm to convince them to file a frivolous case against the Buzbee Law Firm. In one of the secret recordings, the scheme is described in detail:
>
>     "What we're trying to do is, we are trying put this thing together for the company that we're working for--
>
>     We could get you paid, . . . you could get money right soon, you know?
>     We gave this kid 1,000 bucks to start yesterday just to get him on the right path.
>     At the end of the day, this is going to go through the courts, Buzbee is getting sued . . ."

50.     Like Buzbee's statements before, those in paragraphs 47 and 48 are still lies. Buzbee willfully, maliciously, wantonly, and with reckless disregard for the truth spread these lies on Facebook, causing serious damage to Ms. Croft and her law firm in Mississippi.

### *Buzbee's Public Defamation Campaign Continues*

51.     But Buzbee didn't stop there.  His defamation campaign continued, from social media to old-fashioned snail mail.

52.    On December 19, 2024, Buzbee and the Buzbee Law Firm sent Buzbee's former clients a letter defaming Ms. Croft—this time, on large firm letterhead:



53.    In this letter, Buzbee repeated many of the same falsehoods he spread on social media the day before.

54.    Buzbee accused the "lawyers that hire" the "investigators"—presumably referring to Ms. Croft—of offering former clients up to $10,000 in exchange for suing him:

> As you may have seen, this firm recently sued Jay Z for a number of different issues.  In response, a number of 'investigators' have contacted our past clients like you.  This contact has been in an effort to gain clients to sue this firm.  They have even gone so far as to offer some of these ex-clients money and made promises of more money in the future.  These actions are illegal and violate Texas law.  More importantly, these 'investigators' and the lawyers that hire them have to pay as much as $10,000 to the people contacted.  If you have been contacted by an investigator,

55.    As with Buzbee's prior statements, those in paragraph 54 are also false.  Buzbee willfully, maliciously, wantonly, and with reckless disregard for the truth spread these lies publicly, causing serious damage to Ms. Croft and her law firm in Mississippi.

**COUNT I: DEFAMATION AGAINST BUZBEE AND THE BUZBEE LAW FIRM**

56.     Plaintiff incorporates the preceding paragraphs of the complaint and reserves the right to amend these allegations as further information is obtained from Defendants.

57.     On December 18, 2024, Buzbee knowingly and willfully made multiple false statements about Ms. Croft, including allegations that she engaged in illegal conduct.

58.     On December 19, 2024, Buzbee and the Buzbee Law Firm knowingly and willfully made multiple false statements about an attorney which, read in context of Buzbee's prior publications, were plainly directed at Ms. Croft.

59.     These Defendants published those knowingly and willfully false statements by posting them on Buzbee's personal Instagram and Facebook accounts to hundreds of thousands of followers and disseminating them via the Buzbee Law Firm letterhead.

60.     The false statements were clearly defamatory, in that they expose Ms. Croft to public ridicule and lower her in the confidence of her personal and professional community.

61.     Ms. Croft has suffered special harm as a result of the false statements.

62.     These Defendants' actions were willful, malicious, and committed with reckless disregard for the truth, warranting the imposition of compensatory and punitive damages for Ms. Croft's harm.

**COUNT II: DEFAMATION PER SE AGAINST BUZBEE AND THE BUZBEE LAW FIRM**

63.     Plaintiff incorporates the preceding paragraphs of the complaint and reserves the right to amend these allegations as further information is obtained from Defendants.

64.     On December 18, 2024, Buzbee knowingly and willfully made multiple false statements about Plaintiff.

65.     Buzbee published those knowingly and willfully false statements by posting them on his personal Instagram and Facebook accounts to hundreds of thousands of followers.

66.     On December 19, 2024, the Buzbee Law Firm knowingly and willfully made multiple false statements about an attorney which, read in context of Buzbee's prior publications, were plainly directed at Ms. Croft.

67.     The statements were clearly defamatory, in that they expose Plaintiff to public ridicule and lower her in the confidence of her personal and professional community, and they are actionable *per se* in accusing Ms. Croft of illegal conduct, which is inherently damaging to her reputation as a lawyer, as well as a respected citizen in the local community.

68.     Defendants' actions were willful, malicious, and committed with reckless disregard for the truth, warranting the imposition of compensatory and punitive damages.  Defendants' false and defamatory statements are not subject to the protections of any privilege.

## COUNT III: FALSE LIGHT INVASION OF PRIVACY AGAINST DEFENDANTS BUZBEE AND THE BUZBEE LAW FIRM

69.     Plaintiff incorporates the preceding paragraphs of the complaint and reserves the right to amend these allegations as further information is obtained from Defendants.

70.     As a private citizen, Ms. Croft has an actual and reasonable expectation of privacy with respect to Buzbee and the Buzbee Law Firm.  This expectation extends to all false and misleading statements made about her on social media, including but not limited to Instagram and Facebook posts, memoranda on law firm letterhead, and other public statements—all of which would be highly offensive to a reasonable person.  Buzbee's and the Buzbee Law Firm's false and misleading statements, made knowingly or with reckless disregard for the truth, were intended to cast Ms. Croft in a false light and cause harm to her reputation and standing in both her personal and professional life in Mississippi.

71.     Defendants' actions were willful, malicious, and committed knowingly or with reckless disregard for the truth, warranting the imposition of compensatory and punitive damages.

## COUNT IV: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST DEFENDANTS BUZBEE AND THE BUZBEE LAW FIRM

72.     Plaintiff incorporates the preceding paragraphs of the complaint and reserves the right to amend these allegations as further information is obtained from Defendants.

73.     Buzbee's and the Buzbee Law Firm's actions were outrageous and done intentionally and wantonly through these Defendants' willful and unlawful acts directed at Ms. Croft's reputation in Mississippi.

74.     It was foreseeable to Buzbee and the Buzbee Law Firm that their reckless disregard for the truth of their statements would cause Ms. Croft severe emotional distress.

75.     As a direct and proximate consequence of Buzbee's and the Buzbee Law Firm's intentional actions, Ms. Croft has suffered and will continue to suffer significant insult, indignity, humiliation, embarrassment, and severe physical anguish and emotional distress.

76.     Buzbee's and the Buzbee Law Firm's actions were willful, malicious, and committed with reckless disregard for the truth, warranting the imposition of compensatory and punitive damages.

## COUNT V: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AGAINST DEFENDANTS BUZBEE AND THE BUZBEE LAW FIRM

77.     Plaintiff incorporates the preceding paragraphs of the complaint and reserves the right to amend these allegations as further information is obtained from Defendants.

78.     Buzbee's and the Buzbee Law Firm's actions were, alternatively, done carelessly and negligently through these Defendants' unlawful and reckless acts directed at Ms. Croft's reputation in Mississippi.

79.    Buzbee and the Buzbee Law Firm knew or should have known that their reckless disregard for the truth of their statements would cause Ms. Croft severe emotional distress.

80.    As a direct and proximate consequence of Buzbee's and the Buzbee Law Firm's negligent actions, Ms. Croft has suffered and will continue to suffer significant insult, indignity, humiliation, embarrassment, and severe physical anguish and emotional distress.

## COUNT VI: CIVIL CONSPIRACY AGAINST ALL DEFENDANTS

81.    Plaintiff incorporates the preceding paragraphs of the complaint and reserves the right to amend these allegations as further information is obtained from Defendants.

82.    Defendants willfully engaged in a concerted effort to entrap, defame, discredit, and harm Ms. Croft by concocting a fake solicitation for legal services for the purpose of spreading false and defamatory statements through social media and other public statements.

83.    Defendants, acting in concert and with a common purpose, conspired to fabricate false allegations against Ms. Croft, including but not limited to false claims of criminal misconduct, professional impropriety, and unethical behavior, with the intent to destroy her personal and professional reputation.

84.    In furtherance of this conspiracy, Defendants coordinated their actions to entrap Ms. Croft and disseminate false information as a weapon to intimidate and silence her.

85.    As a direct and proximate result of Defendants' conspiracy, Ms. Croft has suffered significant harm, including reputational damage, emotional distress, and impairment to her professional standing in Mississippi.

86.    Defendants' actions were willful, malicious, and committed with reckless disregard for the truth, warranting the imposition of compensatory and punitive damages.  There is clear and

convincing evidence of actual malice, fraud, or gross negligence warranting the imposition of punitive damages.

## DAMAGES

87.     Plaintiff incorporates the preceding paragraphs of the complaint and reserves the right to amend these allegations as further information is obtained from Defendants.

88.     As a result of Defendants' conduct as alleged herein, Plaintiff sustained injuries and incurred substantial damages including but not limited to the following compensatory damages in the amount of at least $25,000,000:

  a.     Past, present, and future mental and emotional distress;

  b.     Damages per se arising from defamation per se;

  c.     Loss of wage-earning capacity; and

  d.     Loss of personal and professional reputation, as well as public embarrassment.

89.     Clear and convincing evidence establishes that Defendants acted with actual malice, fraud, or gross negligence warranting the imposition of punitive damages in an amount to be determined by the jury.

## JURY DEMAND

Plaintiff Marcy Croft demands trial by jury and respectfully requests that judgment be entered against Defendants Anthony Buzbee, Jose Maldonado, and Anthony Buzbee, L.P. d/b/a the Buzbee Law Firm for compensatory and consequential damages as shown by the evidence in an amount not less than $25,000,000, pre-interest on the judgment, post-interest on the judgment, punitive damages, attorney's fees, all costs, fees, and disbursements, and such other relief under the laws of the United States or of any kind to which Plaintiff is otherwise entitled.

Dated: December 17, 2025

Respectfully submitted,

*/s/ Sydney Scott*
  Sydney Scott
    State Bar No. 24088379
    SDTX Federal No. 3126470
  Kylie Calabrese
    State Bar No. 24120738
    SDTX Federal No. 3699266
  Johanna E. Smith
    State Bar No. 24126934
    SDTX Federal No. 3716571
  Tiffany Penner
    State Bar No. 24122890
    SDTX Federal No. 3716571
  GIBSON, DUNN & CRUTCHER LLP
  811 Main St., Suite 3000
  Houston, TX 77002
  Telephone: (346) 718-6600
  SAScott@gibsondunn.com
  kcalabrese@gibsondunn.com
  jesmith@gibsondunn.com
  tpenner@gibsondunn.com


  Reed Brodsky
  (*pro hac vice* application forthcoming)
  GIBSON, DUNN & CRUTCHER LLP
  200 Park Avenue
  New York, NY 10166
  Telephone: (212) 351-4000
  RBrodsky@gibsondunn.com

  *Attorneys for Plaintiff Marcy Croft*