UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| MARCY CROFT, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 3:25-CV-000422 |
| | § | |
| ANTHONY BUZBEE, ANTHONY | § | |
| BUZBEE, L.P. d/b/a THE BUZBEE LAW | § | |
| FIRM, AND JOSE MALDONADO, | § | |
| | § | |
| *Defendants.* | § | |

**DEFENDANTS ANTHONY BUZBEE, ANTHONY BUZBEE, L.P. d/b/a THE BUZBEE LAW FIRM, AND JOSE MALDONADO'S MOTION TO DISMISS OR TO STAY**

1

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................... 6

FACTUAL BACKGROUND ................................................................................................... 7

    A.   The Underlying Litigations ............................................................................................ 7

    B.   Solicitation of Maldonado and Others ....................................................................... 8

    C.   Croft and Investigators' Ties to Jay-Z and Roc Nation ....................................... 10

    D.   Buzbee Files Litigation In Response to "Investigators" – but the *Garcia* Case Was the First to Name Croft ........................................................................................................... 11

    E.   Croft's Retaliatory Complaints Against Buzbee, the Firm, and Maldonado .................. 13

    F.   Buzbee's Posts Were Made in Connection with the *Garcia* case, not *Maldonado*, and Croft Does Not Explain How She Possesses Buzbee's Letter to Firm Clients ........................ 14

    G.   All Facts Point to Croft's Participation in a Larger Group Effort ..................................... 15

LEGAL STANDARDS ........................................................................................................ 17

    A.   Standard for Rule 12(b)(6) Dismissal ......................................................................... 17

    B.   Standard for Summary Judgment ................................................................................. 18

    C.   Standard for *Colorado River* Abstention ..................................................................... 18

ARGUMENT ........................................................................................................................ 19

    A.   Croft's Claims Should be Dismissed Under Rule 12(b)(6) or Rule 56 .......................... 19

        1.   Croft's Conspiracy Claim Is Inherently Implausible and Contradicted by Evidence ... 19

        2.   Croft's Defamation Claims Fail as to Intent as Well as Damages ............................... 21

        3.   Croft's Claim for False Light Invasion of Privacy Is Unrecognized Under Texas Law 23

        4.   Croft's Claim for Intentional Infliction of Emotional Distress Fails .......................... 23

        5.   Negligent Infliction of Emotional Distress is Not a Recognized Tort in Texas .......... 24

    B.   Alternatively, Croft's Claims Should be Dismissed or Stayed Pursuant to the *Colorado River* Abstention Doctrine ........................................................................................................... 25

CONCLUSION ..................................................................................................................... 26

# TABLE OF AUTHORITIES

## Federal Cases

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................ 15, 16, 17

*Bagley v. Guillen*,
   90 F.4th 799 (5th Cir. 2024) ................................................................................ 16, 17

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................ 15, 16, 17

*Black v. BBVA/Compass Bank*,
   No. H-19-1218, 2020 U.S. Dist. LEXIS 86481 (S.D. Tex. 2020) ........................... 21

*Brown v. Pac. Life Ins. Co.*,
   462 F.3d 384 (5th Cir. 2006) ................................................................................ 17, 23

*Colorado River Water Conservation District v. United States*,
   424 U.S. 800 (1976) .................................................................................... 4, 16, 17, 23

*Deville v. Marcantel*,
   567 F.3d 156 (5th Cir. 2009) ....................................................................................... 16

*Diamond Offshore Co. v. A & B Builders*,
   302 F.3d 531 (5th Cir. 2002) ....................................................................................... 16

*Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*,
   342 U.S. 180 (1952) ..................................................................................................... 16

*Landmark Ins. Co. v. Esters*,
   No. 2:20-CV-01263, 2025 U.S. Dist. LEXIS 163674 (W.D. La. 2025) ................... 16

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) .............................................................................................. 17, 23, 24

*Saucier v. Aviva Life & Annuity Co.*,
   701 F.3d 458 (5th Cir. 2012) ....................................................................................... 24

*Scott v. Harris*,
   550 U.S. 372 (2007) ..................................................................................................... 16

*Stewart v. W. Heritage Ins. Co.*,
   438 F.3d 488 (5th Cir. 2006) ....................................................................................... 24

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,

    551 U.S. 308 (2007)................................................................................................. 15


**State Cases**

*Boyles v. Kerr*,

    855 S.W.2d 593 (Tex. 1993)................................................................................ 23

*Brewerton v. Dalrymple*,

    997 S.W.2d 212 (Tex. 1999)................................................................................ 22

*Bryant v. May*,

    2018 WL 2708531 (Tex. App.—Texarkana June 6, 2018, no pet.) ........................ 23

*Cain v. Hearst Corp.*,

    878 S.W.2d 577 (Tex. 1994)................................................................................ 22

*Conley v. Driver*,

    175 S.W.3d 882 (Tex. App.—Texarkana 2005, pet. denied) ................................ 23

*D Magazine Partners, L.P. v. Rosenthal*,

    529 S.W.3d 429 (Tex. 2017)................................................................................ 20

*Doe v. Cruz*,

    683 S.W.3d 475 (Tex. App.—San Antonio 2023, no pet.)..................................... 22

*Doggett v. Travis Law Firm, P.C.*,

    555 S.W.3d 127 (Tex. App.—Houston [1st Dist.] 2018, pet. denied)..................... 22

*Haynes & Boone, L.L.P. v. Chason*,

    81 S.W.3d 307 (Tex. App.—Tyler 2001, pet. denied)............................................ 23

*Hoffmann-La Roche Inc. v. Zeltwanger*,

    144 S.W.3d 438 (Tex. 2004)................................................................................ 22

*In re Lipsky*,

    460 S.W.3d 579 (Tex. 2015)................................................................................ 20

*Twyman v. Twyman*,

    855 S.W.2d 619 (Tex. 1993)........................................................................... 22, 23

*Valenzuela v. Aquino*,

    853 S.W.2d 512 (Tex. 1993)................................................................................ 23

*WFAA-TV, Inc. v. McLemore*,

978 S.W.2d 568 (Tex. 1998)..................................................................................... 20

**Rules**

Fed. R. Civ. P. 12(b)(6)........................................................................................... 17

Fed. R. Civ. P. 56(a) ............................................................................................... 18

## INTRODUCTION

Defendants Anthony Buzbee ("Buzbee"), Anthony Buzbee, L.P. d/b/a The Buzbee Law Firm ("Firm" and together with Buzbee, the "Buzbee Defendants") and Jose Maldonado bring this motion to dismiss or stay Plaintiff Marcy Croft's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and the abstention doctrine articulated in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), and its progeny.

This lawsuit is the last gasp of a wrongdoer who has been caught in the act. It arises directly out of and in response to three related lawsuits brought by the Buzbee Defendants, Maldonado, and Gerardo Garcia in Harris County District Court against Croft and co-defendants Roc Nation, Quinn Emanuel Urquhart & Sullivan LLP, and others. Croft's claims here are nothing more than patently false counterclaims for defamation based on the allegations against her in those lawsuits.

The absurd basis of Croft's lawsuit is that the Buzbee Defendants conspired with Maldonado – a man Croft admits she took on as a client – to "entrap" her, a random and unknown Mississippi lawyer, so that the Buzbee Defendants could have a scapegoat in their ongoing legal battle with rapper Shawn "Jay-Z" Combs and his company Roc Nation related to the Buzbee Defendants' representation of clients in the Sean "Diddy" Combs litigations. That is preposterous. The absurdity of Croft's allegations is exceeded only by the brazenness of her attempts to avoid admitting the role she undoubtedly played in the tortious and illegal scheme set forth in the prior underlying Harris County lawsuits.

Croft's complaint should be dismissed. Under FRCP 12(b)(6), Croft's allegations of "entrapment" by Defendants are manifestly implausible, and Croft's allegations as to Defendants' state of mind and her own damages are entirely conclusory. Further, given the prior existing legal proceedings in Harris County district court, which are precisely what Croft's claims arise from,

this Court should decline to exercise jurisdiction over her claims based on the *Colorado River* abstention doctrine.  Should the Court decide to exercise jurisdiction, however, a stay is nonetheless warranted in the interests of judicial economy because the viability of Croft's claims depend upon the resolution, one way or the other, of Defendants' claims currently pending against Croft in Harris County.  Finally, in light of the pleadings and other evidence submitted here to support *Colorado River* abstention, if the Court chooses to treat this motion as a motion under FRCP 56, then summary judgment is warranted as Croft will not be able to submit competent evidence under oath countering the inescapable conclusions to be drawn from that evidence.

## **FACTUAL BACKGROUND**

### A.  The Underlying Litigations

This case is related to, and arises directly out of, three cases filed in Harris County District Court in late 2024 and early 2025:  *The Buzbee Law Firm v. Quinn Emanuel Urquhart & Sullivan, LLP*, Cause No. 2024-84902, 11th Judicial District Court (filed December 5, 2024); *Gerardo Garcia v. Marcy Bryan Croft, et al*., Cause No. 2024-87692, 127th Judicial District Court (filed December 18, 2024); and *Jose Maldonado v. Marcy Bryan Croft, et al*., Cause No. 2025-00577, 190th Judicial District Court (filed January 3, 2025).  See Request for Judicial Notice ("RJN"), filed herewith, at Exhibits 1 (Firm's original petition), 2 (Firm's amended petition, naming Croft as a defendant), 3 (Garcia petition), and 4 (Maldonado petition).  Plaintiff Croft is a defendant in all three cases, alongside Roc Nation (the company founded by rapper Shawn "Jay-Z" Carter) and others.  Defendant The Buzbee Law Firm is the plaintiff in the first of the Harris County lawsuits, and Defendant Maldonado is the plaintiff in the third of the lawsuits.

As detailed in those three lawsuits, in late 2024, the Firm sent standard pre-lawsuit demand letters to attorneys for Shawn "Jay-Z" Carter, asking for a confidential mediation in connection

with other litigation against Sean "Diddy" Combs.  *See* RJN, Ex. 2 at 6; RJN Ex. 3 at 9; RJN, Ex. 4 at 9.  One of the Firm's clients then named Carter as a defendant in that litigation in New York.  *See id*.  Shortly thereafter, a multitude of the Firm's current and former clients, current and former employees, and even family members were approached by suspicious "investigators," who sought damaging information on the Firm and Buzbee.  In the case of the Firm's current and former clients, the investigators aggressively solicited those clients to sue the Firm.  See RJN, Ex. 2, 6-15 and Exs. A-M; Ex. 3 at 9-11; Ex. 4 at 9-11.  Defendant Maldonado and Gerardo Garcia were two such former clients.

### B.  Solicitation of Maldonado and Others

Defendant Maldonado was solicited by two "investigators" to sue Plaintiff's former attorney Tony Buzbee.  RJN, Ex. 3 at 11; Declaration of David C. Fortney ("Fortney Dec."), Ex. 2 (Affidavit of Jose Maldonado), ¶¶ 2-5.[1]  One investigator identified herself as "Jessica Santiago."  RJN, Ex. 3 at 11.  The investigators, who wore badges and guns, represented that they were from "the state." Fortney Dec., Ex. 2 at ¶¶ 3-5.  They told Maldonado that the Firm had stolen money from him.  *Id.* ¶ 5.  They asked Maldonado if he would file a lawsuit against the Firm and, based on what the investigators had told him, Maldonado said yes.  *Id.*  The investigators also told Maldonado that there was "money in it" for him if he agreed to sue Buzbee.  RJN, Ex. 3 at 11.

The investigators signed Maldonado to a contract for representation and then, with him, called attorney Croft, of MJ Legal, in Mississippi.  Fortney Dec., Ex. 2, ¶ 6.  Croft admits speaking to Maldonado several times, although she claims it was Maldonado who initially contacted her "to advise him in his investigation of potential claims against" Buzbee.  Fortney Dec., Ex. 1 at 13:20

---

[1] Defendants attach evidence from the Harris County cases here for a number of reasons, including to establish a basis for *Colorado River* abstention, but also due to the fact that much of the evidence contradicts the pleaded allegations in the Croft complaint.  Defendants understand that this may require the Court to treat this Motion as one for summary judgment under Rule 56.

– 18:19.[2]  Croft makes this claim despite the fact that Maldonado was a Texas resident with a Texas-based potential claim against a Texas law firm, with no obvious way of knowing who Ms. Croft was, or any obvious reason for reaching out to her – a seemingly random attorney two states away in Mississippi.  *See id.*  Croft claims that she was not surprised to get a call from Maldonado, a random Texas resident, and she never asked him how he found her.  Fortney Dec., Ex 1 at 15:1 – 19:2.  Croft admits that Maldonado signed an engagement agreement with her.  *Id*. at 14:15-17. However, Croft could not recall or explain how she sent the letter to, or received the letter back from, Maldonado (by email or otherwise).  *Id.* at 22:10 – 23:3; 30:7 – 31:19.  Maldonado not only testified that he was provided an engagement letter with Croft *by investigators* (and gave it back to them), but that he had to email Croft "through her website," which would have been unnecessary if he had received any emails from her directly.  Fortney Dec., Ex. 2 at ¶¶ 7, 9.  The obvious conclusion is that investigators in fact served as an intermediary between Maldonado and Croft, and that Maldonado did not contact Croft "out of the blue."

Around the same time as Maldonado was solicited, investigators also solicited Firm client Gerardo Garcia and attempted to have him file suit against the Firm.  Fortney Dec., Ex. 6, ¶¶ 2-4. An investigator again identified as "Jessica Santiago" called Garcia on December 17, 2024 and told Garcia that she wanted Garcia to speak about his potential case to Marcy Croft of MJ Legal. Fortney Dec. Ex. 6 at ¶¶ 4-5; Fortney Dec. Ex. 1 at 33:18-24; Fortney Dec. Ex. 3.  Two days later, Garcia received a missed call from a number he did not recognize, with the caller identifying herself in a voicemail as Marcy Croft.  Fortney Dec. Ex. 6, ¶ 6.  The voicemail was intended for Maldonado.  Fortney Dec. Ex. 6, ¶ 6; Fortney Dec. Ex. 2.  However, Garcia had *never provided* his phone number to Croft, who nonetheless had it and called it, even if by mistake.  Fortney Dec.

---

[2] A limited-scope deposition of Croft was taken in the *Maldonado* action (while it was removed to the Southern District of Texas, prior to remand) regarding the identity of investigator "Jessica Santiago."

Ex. 6, ¶ 7; Fortney Dec. Ex. 4.  Only investigator "Jessica Santiago" had Garcia's number.  *See, e.g.*, Fortney Dec. Ex. 5 (text string between "Santiago" and Garcia).

Croft claims that she never interacted with Garcia and did not know who Garcia was until Garcia filed suit naming her as a defendant.  Fortney Dec., Ex. 1 at 32:20 – 33:17.  However, Croft admitted that it was her, from her number, who called Garcia's phone and left a voicemail intended for Maldonado.  Fortney Dec. Ex. 1 at 43:21 – 46:18 (Croft admitting that her number was reflected on Exhibit 4 as being the caller).  If Garcia never reached out to Croft (in the same way that Croft claims Maldonado randomly reached out to her) there is simply no way that Croft would have Garcia's phone number to call *except* if a third party, like investigator "Jessica Santiago," provided it to her.  And a transcript of a phone call between Garcia and Santiago is replete with references to Croft as an attorney who was investigating Buzbee, with whom Santiago wanted to connect Garcia.  Fortney Dec., Ex. 3 at 2-7.  Croft has no answer – at least none that she will admit – as to why or how she obtained the number of a second client of the Firm's.

### C.  Croft and Investigators' Ties to Jay-Z and Roc Nation

In her deposition (taken for jurisdictional purposes in federal court, in all three consolidated cases), Croft insisted that Maldonado reached out to her, that she was unaware of any investigators, that she did not know any investigator named Jessica Santiago, and that she had no idea who Gerardo Garcia was.  But that quite simply beggars belief.  Why would Maldonado search out and contact a Mississippi lawyer?  Why would that same Mississippi lawyer have the phone number for Garcia, another one of the Firm's clients?  And why would these contacts occur within weeks of the Firm filing a lawsuit against Jay-Z?

As it happens, Marcy Croft and her law firm, MJ Legal, have a long history of working with Jay-Z and Roc Nation.  Indeed, Croft prides herself on being one of the only attorneys

"authorized by Team Roc" to work on its behalf in Mississippi. *See* RJN, Ex. 2, at 10-14; RJN, Ex. 4, at 3-7. Croft worked on those Roc Nation engagements alongside the law firm Quinn Emanuel, which served as counsel for Jay-Z in the Southern District of New York. *See id.* The entire premise of Defendants' Harris County lawsuits is that, in light of these parties' histories and the timing of the Jay-Z litigation, Croft's contacts with two of the Firm's prior clients in connection with attempts to solicit those clients to sue the Firm is anything but happenstance.

### D.  Buzbee Files Litigation In Response to "Investigators" – but the *Garcia* Case Was the First to Name Croft

Originally, upon becoming aware of the horde of "investigators" reaching out to its clients and employees – but without at that time knowing the identity of Croft or other conspirators – the Firm filed the first of the Harris County lawsuits against Jay-Z's firm Quinn Emanuel, seeking a temporary restraining order. *See* RJN, Ex. 1. At the TRO hearing, Quinn Emanuel denied any knowledge of or participation in any attempt to investigate the Firm or contact the Firm's clients or employees. But shortly thereafter, Quinn Emanuel attorney Alex Spiro admitted in court documents that his firm was, in fact, attempting to "investigate" the Firm and Buzbee. *See* RJN, Ex. 5, at p. 17 fn. 1. This was in *direct contradiction* to the representations made to the Harris County court in connection with the TRO being sought, but vindicated the Firm's position that Quinn Emanuel was at least one driving force behind the investigators harassing and soliciting the Firm's clients and employees.

The Firm did not become aware of Marcy Croft's identity or her participation in the conspiracy to solicit Firm clients until Gerardo Garcia had a call on December 17, 2024 with investigator "Jessica Santiago," in which Santiago identified Croft as an attorney purportedly organizing a "class action" of 70 people with claims against the Firm. *See* Fortney Dec., Ex. 3 at

pp. 3-7; Fortney Dec., Ex. 6, ¶¶ 4-5. Garcia filed a petition for barratry against Croft and others on December 18, 2024. *See* RJN, Ex. 3. Maldonado filed his petition for barratry against Croft and others weeks later, on January 3, 2025.

This sequence of events is badly at odds with Croft's narrative. Croft accuses Maldonado and the Firm of "conspiring" to "entrap" her, by having Maldonado reach out to her. Complaint (Dkt 1) at ¶¶ 1-3, 13, 19-23. First, standing alone, it is preposterous to think that the Firm and Maldonado would conspire to target and "entrap" Croft – at that time a random Mississippi lawyer entirely unknown to the Firm. Even given that she had previously worked for Roc Nation, Roc Nation and Jay-Z presumably have utilized many lawyers across the country. There is absolutely no reason Croft articulates as to why *she* would have been identified and singled out by the Firm and Maldonado. But *had* Maldonado been used to "entrap" Croft[3], Maldonado's petition would have been filed first, not Garcia's. But Maldonado's petition was not filed until January 3, 2025. Garcia's, by contrast, was filed while Maldonado and Croft had just begun communicating.

Croft has denied ever speaking to Garcia or knowing who Garcia is, and Garcia therefore could not be used to "entrap" her – yet Garcia nonetheless was independently informed of Croft's identity, and received a phone call from Croft's phone without ever having previously been in contact with her. Croft's gambit to pin "entrapment" on Maldonado is transparently false, perpetuated only because she cannot run from her actual communications with Maldonado. But it is *Garcia's* knowledge of Croft's identity, not Maldonado's, and *Garcia's* receipt of a call from Croft's phone number, despite them having no other direct communication, that puts the lie to Croft's story. Garcia could only get Croft's name from someone else involved, and crucially, *Croft*

---

[3] Croft's use of the word "entrapment" is telling. Entrapment, of course, usually refers to the inducement of a criminal defendant by law enforcement to commit a crime to which the defendant was not predisposed. It can be a defense against criminal prosecution – but by its nature it *admits* that the defendant did commit the underlying conduct of which the he or she is accused.

*could only get Garcia's number from someone else involved as a co-conspirator.* That person appears to be the female investigator known as Jessica Santiago. But Croft couldn't have received Garcia's phone number from Maldonado, or else she presumably would have remembered more about Mr. Garcia in her deposition and would have named Mr. Garcia in this lawsuit.

**E. Croft's Retaliatory Complaints Against Buzbee, the Firm, and Maldonado**

After Garcia, Maldonado and the Firm each sued Croft in Harris County district court, Croft filed special appearances to the *Garcia* and Firm petitions contesting jurisdiction, answered the *Maldonado* petition (conceding jurisdiction), and then removed all three cases to federal court. Despite appearing to concede both state and federal court jurisdiction over her in the *Maldonado* action, Croft thereafter filed a separate complaint against the Firm and Maldonado (nearly identical to the one here) in Mississippi state court, alleging defamation and related torts. *See* RJN, Ex. 6. That complaint, as with the complaint here, reads as a counterclaim to the Harris County lawsuits for the Firm and Maldonado making the allegations in those cases. Croft's Mississippi complaint was removed to federal court and subsequently dismissed. *See* RJN, Exs. 7 and 8. Thereafter, Croft filed the instant complaint in this lawsuit, choosing to file a separate suit in this Court rather than filing a counterclaim in the Harris County litigations.

Croft asserts claims against Buzbee and the Firm for defamation, false light, and infliction of emotional distress based on numerous posts made by Buzbee to Instagram and Facebook accusing Croft of participating in a conspiracy to commit barratry. *See* Complaint (Dkt 1) at ¶¶ 32-80. Croft also alleges that Buzbee and the Firm defamed her in a letter sent to the Firm's former clients. *See id.* ¶¶ 52-55. Croft sues Maldonado (her former client, if only briefly) alongside Buzbee and the Firm, accusing him of conspiring to entrap and malign Croft. Complaint (Dkt 1) at ¶¶ 81-86. There is no allegation made that Maldonado did anything with regard to, or even

knew about, Buzbee's social media posts or the Firm's letter to its clients, and no allegation that Maldonado is directly liable for the five defamation-related causes of action preceding the conspiracy cause of action. *See generally* Complaint (Dkt 1) at 56-86. Croft's conspiracy allegations only run towards coordinated actions to "entrap" Croft, but no independent tort for that "entrapment" is pleaded. *See id.* ¶¶ 81-86. Croft alleges no agreement and no particular overt act made by any defendant in furtherance of this purported conspiracy. *See id.*

**F. Buzbee's Posts Were Made in Connection with the *Garcia* case, not *Maldonado*, and Croft Does Not Explain How She Possesses Buzbee's Letter to Firm Clients**

As noted, Croft accuses Defendants of conspiring to entrap Croft in order to publicly accuse her of barratry, and that Buzbee used Maldonado as bait to entrap Croft so that they could then publicly malign her. The problem with that theory is that Buzbee's Instagram and other social media posts which form the basis of Croft's claims of defamation were posted on December 18, 2024. *See* Complaint (Dkt 1) at ¶ 32. That is the same date that the *Garcia* lawsuit was filed – not *Maldonado*, which was filed weeks later on January 3, 2025. *See* RJN, Exs. 3 and 4. At the time *Garcia* was filed, Maldonado and Croft had just begun communicating.

If nothing else, Buzbee's social media posts were based on information gleaned from and in connection with *Garcia*, not Maldonado. And as explained above, there is *no credible explanation* whatsoever for how Garcia would know Croft's identity, or how Croft would have Garcia's phone number, absent some other intermediary third parties involved in exactly the kind of conspiracy alleged in the Harris County lawsuits. Croft has blamed Maldonado because she was aware that her identity was known to Maldonado – and no other reason. Croft has attempted to hide her knowledge of Garcia's identity because she assumed there was no proof to the contrary, until she was confronted by her voicemail left on Garcia's phone. Fortney Dec., Ex. 4; Ex. 6, ¶ 6.

14

As a result, Buzbee's social media posts were prompted by information he did not receive from Maldonado – even if Maldonado acted as a Buzbee-driven honeypot intended to entrap Croft (which he did not). At minimum, Buzbee had one independent source of knowledge (Garcia) that Croft was involved in the alleged conspiracy; if Maldonado also was involved, Buzbee had two sources of such knowledge that both independently pointed to Croft.

Croft makes another allegation that only strengthens Buzbee's case against her and undermines her own. She alleges that Buzbee and the Firm defamed her in a letter sent to the Firm's former clients. *See* Complaint (Dkt 1) ¶ 52-55. That letter is dated December 19, 2024. *Id.* Croft includes an image of the letter, indicating that she is in possession of a copy of the letter. *Id.* But Croft fails to allege *how she came into possession of a confidential letter addressed to the Firm's former clients*. If *only* the Firm's former clients received that letter, Ms. Croft *must have* received it either directly from one of those former clients – indicating that she was in contact with even more of the Firm's clients than just Maldonado and Garcia – or she must have received it from another third party who was in contact with such a client. She does not allege that she received it from Maldonado (and she cannot, because she did not receive it from him). Either way, Croft *cannot* explain away her possession of the Firm's December 19, 2024 letter without admitting that Maldonado was not a "one-off, random inquiry" she received (because she has directly spoken to other Firm clients including whomever gave her the letter) or that she is, in fact, part of a group of individuals and entities who undertook the barratry conspiracy alleged in the Harris County lawsuits.

### G. All Facts Point to Croft's Participation in a Larger Group Effort

Croft attempts to paint the picture that she, a Mississippi attorney and owner of a small law firm, was contacted "out of the blue" by Maldonado because Buzbee and the Firm for some

unknown reason selected her to be a scapegoat and fall guy for the tortious actions experienced by the Firm and its clients.  In her deposition she claimed to have no knowledge of any investigation or investigators, and disclaimed contact with any Firm clients other than Maldonado.  But that picture simply doesn't make sense even given the limited facts known, and in some cases pleaded by Croft.

All of these facts set forth in the sections above indicate that Croft was and is involved in a larger effort to investigate, intimidate, and impugn Buzbee and the Firm.  It is beyond the realm of the plausible that Croft obtained the information she has (including Garcia's number or the Firm's letter to clients), or came into contact with multiple clients of the Firm (beyond only Maldonado), in the absence of her participation in such a group effort.

Beyond the implausible fact that a Mississippi lawyer was called upon to "evaluate" a Texas case against a Texas attorney by a Texas client, Croft's pleadings alone show that she seems to have done some extensive research merely for the purposes of "evaluating" a claim as would-be random to her as Maldonado's.  *See* Complaint (Dkt 1) at ¶¶ 24-30.  Her deposition also revealed that her "evaluation" went far beyond a brief phone call and cursory review of limited documents provided by Maldonado.  Fortney Dec., Ex. 1, at 16:17 – 17:8.  For a foreign-state attorney, Croft appears extraordinarily interested in Buzbee.

Of course, other current circumstances indicate that Croft is not the small-town attorney working alone that she purports to be.  She issued a press release about filing a lawsuit against Buzbee in Mississippi, despite a dearth of press releases issued by her prior to this litigation.  *See* RJN, Ex. 9.  News related to this lawsuit has appeared with regularity in hip-hop and rap-related media outlets, no doubt planted by Roc Nation.  *See, e.g.,* RJN, Ex. 10.  And this conclusion is only further bolstered by the fact that Croft is represented here, and in all three Harris County

actions, by Gibson, Dunn, & Crutcher LLP, one of the nation's premier (and most expensive) white-shoe law firms. Her lead attorney in the Harris County actions is Reed Brodsky, Gibson Dunn's head of litigation and a white-collar criminal specialist. *See* RJN, Ex. 11; *see also* RJN, Ex. 9. These are attorneys called in when the stakes are extremely high – much higher, generally, than when one is accused of civil barratry, which carries a maximum recovery of $10,000. Very few, if any, small-town attorneys can procure such top-shelf legal representation, and the obvious conclusion is that another individual or entity is footing the bill precisely because Croft is at the center of something much larger than her brief interactions with Maldonado.

## LEGAL STANDARDS

### A.  Standard for Rule 12(b)(6) Dismissal

When deciding a Rule 12(b)(6) motion, the Court must "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions . . . , in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 323 (2007). A complaint survives a motion to dismiss if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, the Court is not required to accept a plaintiff's legal conclusions. Id. Importantly, courts may infer from the factual allegations in the complaint "obvious alternative explanation[s]," which suggest conduct other than that a plaintiff would ask the court to infer. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 (2007); *Iqbal*, 556 U.S. at 682. Unless a plaintiff has "nudged [his] claims across the line from conceivable to plausible, the[] complaint must be dismissed." *Twombly*, 550 U.S. at 570. "The plausibility standard is not akin to

a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S at 678 (quoting *Twombly*, 550 U.S at 556).

### B. Standard for Summary Judgment

Rule 56 summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court "view[s] the facts in the light most favorable to the non-moving party and draw[s] all reasonable inferences in its favor.'" *Bagley v. Guillen*, 90 F.4th 799, 802 (5th Cir. 2024) (quoting *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). "'When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.'" *Id.* (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### C. Standard for *Colorado River* Abstention

"The *Colorado River* Abstention Doctrine operates to avoid duplicative litigation when parallel proceedings are pending in state and federal court." *Landmark Ins. Co. v. Esters*, No. 2:20-CV-01263, 2025 U.S. Dist. LEXIS 163674, at *5 (W.D. La. 2025) (citing *Diamond Offshore Co. v. A & B Builders*, 302 F.3d 531, 540 (5th Cir. 2002). The doctrine, which addresses situations involving the "contemporaneous exercise of concurrent jurisdictions, either by federal courts or by state and federal courts," rests "on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183 (1952)).

The doctrine allows for a federal court to decline to exercise jurisdiction and dismiss a federal suit due to the presence of a concurrent state proceeding. *Colo. River*, 424 U.S. at 818.

The Supreme Court has set out six non-exclusive factors to consider in determining whether a federal court should abstain from the exercise of its jurisdiction: "(1) assumption by either state or federal court over a res; (2) relative inconvenience of the fora; (3) avoidance of piecemeal litigation; (4) order in which jurisdiction was obtained by the concurrent fora; (5) extent federal law provides the rules of decision on the merits; and (6) adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction. *Brown v. Pac. Life Ins. Co*., 462 F.3d 384, 394-395 (5th Cir. 2006) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 15 (1983)).

## ARGUMENT

### A.  Croft's Claims Should be Dismissed Under Rule 12(b)(6) or Rule 56

Croft's claims against Buzbee, the Firm and Maldonado should be dismissed under Rule 12(b)(6), or under Rule 56 on a summary judgment basis.

### 1.  Croft's Conspiracy Claim Is Inherently Implausible and Contradicted by Evidence

Croft's conspiracy claim that Buzbee, the Firm and Maldonado worked together to "entrap" her into committing or attempting to commit barratry is simply implausible under *Twombly* and contradicted by the evidence under *Bagley*.  Unless a plaintiff has "nudged [his] claims across the line from conceivable to plausible, the[] complaint must be dismissed." *Twombly*, 550 U.S. at 570. And courts may infer from the factual allegations in the complaint "obvious alternative explanation[s]," which suggest conduct other than that a plaintiff would ask the court to infer. *Twombly*, 550 U.S. at 567; *Iqbal*, 556 U.S. at 682. On a summary judgment standard, under *Bagley*, when "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts

for purposes of ruling on a motion for summary judgment." Defendants' motion is successful under either standard.

Two competing narratives are presented here. Croft's narrative is that a former client of the Firm called her, in Mississippi, on the prompting of Buzbee, asking her to evaluate a potential case against Buzbee and the Firm, so that Buzbee and the Firm could defame and sue her by implicating her in a larger conspiracy. Defendants' narrative is that Maldonado was put in touch with Croft through an intermediary investigator, which is a much more plausible manner by which Maldonado ever would have come into contact with an attorney like Croft. Defendants' narrative is consistent with the testimony of Maldonado, other Firm clients like Garcia, and also accounts for how Croft had other information including Garcia's phone number and the Firm's client letter. *See supra* section II. Indeed, Croft's conspiracy claim *must fail* under Rule 56 when the evidence is considered that Croft had Garcia's phone number from *some source other than Garcia.* That alone implicates *Croft* in the conspiracy alleged by Buzbee and proves that Maldonado was not a one-off "honeypot" planted by Buzbee. But Defendants' narrative also *inherently* makes more sense than Buzbee and the Firm picking Croft out of a hat and setting her up to be a scapegoat, even without reference to any evidence, for Rule 12(b)(6) purposes.

Either way, **if Maldonado did not reach out to Croft, but rather was put in contact with Croft by a third party, there is no conspiracy and no "entrapment."** For this reason alone, Croft's claim of conspiracy against Defendants (and the *sole* claim against Maldonado) must fail as utterly implausible on the pleadings or as factually contradicted by the evidence.

Croft's conspiracy claim must fail for another reason, however. The basis for the "conspiracy" is Maldonado's participation with Buzbee in an attempt to "entrap" Croft, presumably into committing solicitation or barratry. Croft's claim cannot be a conspiracy to

defame her; there are no pleaded facts that Maldonado knew about or participated in any way in Buzbee's social media posts and alleged campaign of defamation against Croft. *See* Complaint (Dkt 1) at ¶¶ 81-86. However, there also is no underlying pleaded tort of "entrapment" or anything else encompassing, within a civil claim, the alleged act of Maldonado reaching out to Croft on a pretense for Buzbee's purported ulterior purposes. This is unsurprising, as that is not cognizable as a tortious act. But a conspiracy must be aimed at committing an identifiable tort, with at least an agreement and an overt act identified at achieving the tort. Croft has pleaded none of these with respect to her conspiracy claim, and it fails for this additional reason.

### 2.  Croft's Defamation Claims Fail as to Intent as Well as Damages

Croft's defamation claims against Buzbee and the Firm cannot satisfy the intent element required for those claims if Buzbee's actions and social media posts were not driven by Buzbee himself (pursuant to a conspiracy, as Croft alleges) rather than on credible evidence Buzbee received of Croft's involvement. A claim for defamation under Texas law requires that "(1) the defendant published a false statement; (2) that defamed the plaintiff; (3) with the requisite degree of fault regarding the truth of the statement (negligence if the plaintiff is a private individual); and (4) damages (unless the statement constitutes defamation per se)." *D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 434 (Tex. 2017) (citing *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015) and *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998)).

Again, two narratives are presented by the facts as set forth in section II above. Croft's narrative is that she was wrongfully targeted by Buzbee, without justification or reasonable suspicion, for purposes of defaming her and creating a scapegoat. Such a narrative might give rise to an inference of malice or at least negligence. But the competing narrative, which is not only more plausible but is also supported by coherent evidence, is that Buzbee (1) experienced a wave

of "investigators" approaching his clients and employees in order to solicit them to sue the Firm, as reported to him *by those clients and employees*, and (2) learned of evidence of Croft's participation in the "investigation" and attempts at solicitation through those clients and employees, rather than randomly picking Croft at random as a scapegoat.

On that narrative, which is both more plausible and consistent with the evidence, Buzbee acted – both in suing Croft and in making his public posts – based on information he received that credibly identified Croft as a participant in the conspiracy alleged in Harris County.  And that identification was in an entirely non-random fashion.  Originally, in early December, the Firm filed the first of the Harris County lawsuits only against Jay-Z's firm Quinn Emanuel.  *See* RJN, Ex. 1.  Had Buzbee "singled out" Croft falsely, maliciously and without evidence, Croft and the other current defendants in the Harris County lawsuits would have been named initially. Moreover, if Maldonado was a "trap" for Croft, Maldonado's lawsuit would have been the first to name Croft as a defendant.  It was not.  Croft was named a defendant on December 18, 2024 in the *Garcia* lawsuit, based on Garcia's communications with Santiago that identified Croft.  *See* Fortney Dec., Ex. 3 at pp. 3-7; Fortney Dec., Ex. 6, ¶¶ 4-5.  There is a recording and a transcript of Garcia speaking with Santiago, who identifies "Marcy Croft" as the attorney Santiago intended to refer Garcia to.  *Id.  There is no reason for any third party to specifically identify Marcy Croft in that context unless Marcy Croft is an active participant in the events complained of in the Harris County lawsuits.*  At minimum, this evidence establishes that Buzbee acted on reasonable grounds and with reliable evidence, *not* with malice or even negligence, as required for a defamation claim.

Croft's defamation claims fail for the additional independent reason that Croft has not adequately pleaded her damages.  *See* Complaint (Dkt 1) ¶¶ 56-68.  She fails to allege in any way how Buzbee's few Instagram or Facebook posts has damaged her or her reputation and,

consequently, her income or business prospects.  Croft only offers conclusory allegations, which are insufficient under Rule 12(b)(6).

    3.  <u>Croft's Claim for False Light Invasion of Privacy Is Unrecognized Under Texas Law</u>

Croft's third count is for "False Light Invasion of Privacy."  Complaint (Dkt 1) ¶¶ 69-71. However, Texas does not recognize invasion of privacy/false light as a cause of action.  *Cain v. Hearst Corp.*, 878 S.W.2d 577, 578-79 (Tex. 1994); *see also Black v. BBVA/Compass Bank*, No. H-19-1218, 2020 U.S. Dist. LEXIS 86481, at *8 (S.D. Tex. 2020) (citing *Cain*, 878 S.W.2d at 578-79, and *Doggett v. Travis Law Firm, P.C.,* 555 S.W.3d 127, 130 n.2 (Tex. App.—Houston [1st Dist.] 2018, pet. denied)).  Because Croft's claim for False Light Invasion of Privacy is not recognized as a separate tort under Texas law, and otherwise is duplicative of her claim for defamation, it must be dismissed.

    4.  <u>Croft's Claim for Intentional Infliction of Emotional Distress Fails</u>

Intentional infliction of emotional distress in Texas is a "gap-filler" tort that requires a factual basis distinguishable from a recognized claim and conduct that is extreme and outrageous. *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004) ("Where the gravamen of a plaintiff's complaint is really another tort, intentional infliction of emotional distress should not be available."); *Doe v. Cruz*, 683 S.W.3d 475, 500 (Tex. App.—San Antonio 2023, no pet.); *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993). Whether a defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery is a threshold question of law for the court to decide.  *Brewerton v. Dalrymple*, 997 S.W.2d 212, 216 (Tex. 1999).

"[L]iability for outrageous conduct should be found 'only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Twyman*, 855

S.W.2d at 621.  This burden is not met by insensitive or rude behavior.  *Haynes & Boone, L.L.P. v. Chason*, 81 S.W.3d 307, 310 (Tex. App.—Tyler 2001, pet. denied).  Indeed, "even heinous acts will rarely have merit as intentional infliction claims."  *Bryant v. May*, 2018 WL 2708531, at *3 (Tex. App.—Texarkana June 6, 2018, no pet.) (quoting *Conley v. Driver*, 175 S.W.3d 882, 888 (Tex. App.—Texarkana 2005, pet. denied).  Additionally, "[a]n action that is intentional, malicious, or even criminal does not, standing alone, mean that it is extreme or outrageous for purposes of intentional infliction of emotional distress." *Bryant*, 2018 WL 2708531, at *3.

Here, Croft pleads other possible torts against her based on the same actions underlying her IIED claim; accordingly, IIED as a "gap-filler" tort is unavailable.  But even so, Croft has not and cannot plead that Buzbee's social media posts were "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Even notwithstanding the eminently reasonable grounds Buzbee had for his belief of Croft's involvement in a conspiracy to solicit his clients to sue the Firm, Buzbee merely accused Croft of tortious behavior.  That is far from extreme or outrageous, and falls well short of heinous.  Beyond this, Croft does not plead any non-conclusory facts demonstrating that she in fact suffered severe physical or emotional distress.

5.  <u>Negligent Infliction of Emotional Distress is Not a Recognized Tort in Texas</u>

Croft's fifth count for Negligent Infliction of Emotional Distress fails, just as her claim for False Light fails, because negligent infliction of emotional distress is not a recognized tort in Texas.  *Boyles v. Kerr*, 855 S.W.2d 593, 597 (Tex. 1993); *see also Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993) (holding that no action for negligent infliction of emotional distress exists in Texas).  As a result, it too must be dismissed.

**B. Alternatively, Croft's Claims Should be Dismissed or Stayed Pursuant to the *Colorado River* Abstention Doctrine**

As an alternative to dismissing Croft's claims under Rule 12(b)(6) or Rule 56, this Court should abstain from exercising its jurisdiction over this case under the *Colorado River* abstention doctrine or stay the case until such time as the underlying Harris County lawsuits are concluded.

*Colorado River* abstention allows for a federal court to decline to exercise jurisdiction and dismiss a federal suit due to the presence of a concurrent state proceeding. *Colo. River*, 424 U.S. at 818. The Supreme Court has set out six non-exclusive factors to consider in determining whether a federal court should abstain from the exercise of its jurisdiction: "(1) assumption by either state or federal court over a res; (2) relative inconvenience of the fora; (3) avoidance of piecemeal litigation; (4) order in which jurisdiction was obtained by the concurrent fora; (5) extent federal law provides the rules of decision on the merits; and (6) adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction. *Brown v. Pac. Life Ins. Co*., 462 F.3d 384, 394-395 (5th Cir. 2006) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 15, 103 S. Ct. 927, 937 (1983)). Here, the first factor (jurisdiction over a res) is irrelevant, and the second is neutral as the Harris County lawsuits and this lawsuit are both located in the same general location. However, the remaining factors weigh in favor of abstention.

*Avoidance of piecemeal litigation*. The parties here are all parties in the Harris County cases. However, there are additional parties in the Harris County lawsuits who are not (and cannot be) parties here. Moreover, Croft's claims as alleged could be brought in state court, but whether or not Croft can prevail on her claims (particularly defamation) here depends on Croft prevailing against the claims brought against her in Harris County. That is to say, if Croft is found liable for the torts alleged in the underlying litigation, it would be entirely inconsistent for her to prevail on

a claim for defamation here.  For these reasons, abstention would be appropriate.  *See Saucier v. Aviva Life & Annuity Co*., 701 F.3d 458, 464 (5th Cir. 2012) (favoring abstention when a state court action can resolve all of the claims with respect to all of the parties involved while the federal court action may only partially do so).  Further, Croft is the party that created the possibility of piecemeal litigation, rather than Defendants.  *Moses H. Cone Mem'l Hosp*., 460 U.S. at 17 n.20 (explaining that "vexatious or reactive" litigation conduct can influence abstention).

*Order of actions*.  The Harris County cases were filed first and are more progressed than this action.  Abstention is favored "when the federal case has not proceeded past the filing of the complaint").  *Stewart v. W. Heritage Ins. Co*., 438 F.3d 488, 492-93 (5th Cir. 2006).

*No federal question involved.*  All of Croft's claims are state-law claims; none involve a federal question or rely on federal law at all.

*Adequacy of the state forum*.  The Harris County district court already has jurisdiction over Croft and will decide almost all of the underlying issues involved in this case.  There is no indication that Harris County district court is an unfavorable forum or that Croft's interests cannot adequately be protected there.

These factors all weigh in favor of abstention entirely.  However, at minimum, a stay is warranted in order to conserve judicial resources, the resources of the parties, and to avoid conflicting decisions, as Croft's claims for relief here can succeed only if Defendants' original claims against her fail in the prior-filed Harris County lawsuits.

<u>**CONCLUSION**</u>

For all of the above reasons, Plaintiff's claims against Defendants should be dismissed in their entirety, and any claims that are not dismissed should be stayed pending resolution of the underlying Harris County actions.

Respectfully submitted,

**THE BUZBEE LAW FIRM**

By: */s/: Anthony G. Buzbee*
    Anthony G. Buzbee
    *Attorney-in-Charge*
        State Bar No. 24001820
        Fed. ID No. 22679
    David C. Fortney
        State Bar No. 24068740
        Fed. ID No. 3913731
    Lionel Sims, III
        State Bar No. 24107465
    J.P. Morgan Chase Tower
    600 Travis, Suite 7300
    Houston, Texas 77002
    Phone: (713) 223-5393
    Facsimile: (713) 223-5909
    tbuzbee@txattorneys.com
    dfortney@txattorneys.com
    lsims@txattorneys.com

**ATTORNEYS FOR DEFENDANTS**

**<u>CERTIFICATE OF SERVICE</u>**

    I hereby certify that a true and correct copy of this document has been duly served on all known counsel of record and parties in accordance with the Federal Rules of Civil Procedure on January 20, 2026.

        */s/ David C. Fortney*
        David C. Fortney

27