# Exhibit 5

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

_____ X

Jane Doe,

                Plaintiff,

      v.

SEAN COMBS, DADDY'S HOUSE
RECORDINGS INC., CE OPCO, LLC d/b/a
COMBS GLOBAL f/k/a COMBS ENTERPRISES
LLC, BAD BOY ENTERTAINMENT
HOLDINGS, INC., BAD BOY PRODUCTIONS
HOLDINGS, INC., BAD BOY BOOKS
HOLDINGS, INC., BAD BOY RECORDS LLC,
BAD BOY ENTERTAINMENT LLC, BAD BOY
PRODUCTIONS LLC, ORGANIZATIONAL
DOES 1-10, INDIVIDUAL DOES 1-10, AND
SHAWN CARTER

              Defendants.

                                 **24-cv-07975-AT**

_____ X

## DEFENDANT SHAWN CARTER'S MOTION TO DENY PLAINTIFF'S REQUEST TO PROCEED ANONYMOUSLY PURSUANT TO FED. R. CIV. P. 10(a) OR TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1)

## <u>TABLE OF CONTENTS</u>

<div align="right"><u>Page</u></div>

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ....................................................................................................................... 5

PROCEDURAL HISTORY ....................................................................................................... 10

LEGAL STANDARD ............................................................................................................... 11

ARGUMENT ........................................................................................................................... 13

I.      PLAINTIFF'S MOTION SHOULD BE DENIED IN FULL AND HER
IDENTITY  DISCLOSED IMMEDIATELY AS REQUIRED BY THE
FEDERAL RULES ...................................................................................................... 13

II.     IN THE ALTERNATIVE, THE COURT SHOULD DISMISS THE
COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1). ............. 23

CONCLUSION ......................................................................................................................... 24

# TABLE OF AUTHORITIES

**Page**

## Cases

*Abdel-Razeq v. Alvarez & Marsal, Inc.*,
2015 WL 7017431 (S.D.N.Y. Nov. 12, 2015) .............................................................................15

*CTS Corp. v. Waldburger*,
573 U.S. 1 (2014) ......................................................................................................................19

*Doe 1 v. Branca USA, Inc.*,
2022 WL 2713543 (S.D.N.Y. July 13, 2022) ............................................................. 13, 15, 21

*Doe v. Berg*,
2016 WL 11597923 (S.D.N.Y. Feb. 10, 2016) .....................................................................12, 22

*Doe v. Blue Cross & Blue Shield United*,
112 F.3d 869 (7th Cir. 1997) .......................................................................................................11

*Doe v. Del Rio*,
241 F.R.D. 154 (S.D.N.Y. 2006) ...........................................................................................19, 22

*Doe v. Delta Airlines, Inc.*,
310 F.R.D. 222 (S.D.N.Y. 2015), *aff'd*, 672 F. App'x 48 (2d Cir. 2016) ........................11, 20

*Doe v. Freydin*,
2021 WL 4991731 (S.D.N.Y. Oct. 27, 2021) ..............................................................................15

*Doe v. Gong Xi Fa Cai, Inc.*,
2019 WL 3034793 (S.D.N.Y. July 10, 2019) ..............................................................................15

*Doe v. Hochul*,
2022 WL 836990 (E.D.N.Y. Mar. 12, 2022) ...............................................................................15

*Doe v. Leonelli*,
2022 WL 2003635 (S.D.N.Y. June 6, 2022) ...........................................................................13, 14

*Doe v. Shakur*,
164 F.R.D. 359 (S.D.N.Y. 1996) (Chin, J.) ......................................................13, 14, 16, 20, 21

*Doe v. Skyline Automobiles Inc.*,
375 F. Supp. 3d 401 (S.D.N.Y. 2019) ......................................11, 12, 13, 15, 16, 20, 21, 22, 23

*Doe v. Smith*,
105 F. Supp. 2d 40 (E.D.N.Y. 1999) ...........................................................................................15

*Doe v. UNUM Life Ins. Co. of Am.*,
   164 F. Supp. 3d 1140 (N.D. Cal. 2016) ....................................................................24

*Doe v. Weinstein*,
   484 F. Supp. 3d 90 (S.D.N.Y. 2020) .............................................................19, 21

*English v. Combs et al.*,
   24-cv- 5090 .....................................................................................................17

*Graves v. Combs et al.*,
   24-cv-7201 .......................................................................................................17

*Jones v. Combs et al.*,
   24-cv-1457 .......................................................................................................17

*McCrary v. Combs, et al.*,
   No. 24-cv-08054-MKV, ECF 17 (SDNY Oct. 30, 2024) ...................................10, 13

*McCrary v. Combs*,
   No. 24-cv-08054 ..............................................................................................17

*McKinney v. Combs et al.*,
   24-cv-3931 .......................................................................................................17

*N. Jersey Media Grp. Inc. v. Doe Nos. 1-5*,
   2012 WL 5899331 (S.D.N.Y. Nov. 26, 2012)...........................................................21

*Nat'l Commodity & Barter Ass'n, Nat'l Commodity Exch. v. Gibbs*,
   886 F.2d 1240 (10th Cir. 1989) ...............................................................................23

*New York Civil Liberties Union v. New York City Transit Auth.*,
   684 F.3d 286 (2d Cir. 2012) ..................................................................................17

*Publicola v. Lomenzo*,
   54 F.4th 108 (2d Cir. 2022) ..................................................................................11

*Qualls v. Rumsfeld*,
   228 F.R.D. 8 (D.D.C. 2005)...................................................................................14

*Rapp v. Fowler*,
   537 F. Supp. 3d 521 (S.D.N.Y. 2021) ................................. 13, 15, 17, 18, 19, 20, 21

*Richard v. Combs et al.*,
   24-cv-6848 .......................................................................................................17

*Roe v. Aware Woman Ctr. for Choice, Inc.*,
   253 F.3d 678 (11th Cir. 2001) ...............................................................................11

*Sealed Plaintiff v. Sealed Defendant*,
    537 F.3d 185 (2d Cir. 2008) .......................................................11, 12, 14, 16, 17, 18, 20, 22, 23

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ............................................................................................................23

*United States v. Pilcher*,
    950 F.3d 39 (2d Cir. 2020)......................................................................... 11, 21, 22

*United States v. UCB, Inc.*,
    2017 WL 838198 (S.D.N.Y. 2017) ...............................................................11

*Ventura v. Combs et al.*,
    23-cv-10098 ........................................................................................................17

## Statutes / Rules

Fed. R. Civ. P. 12(b)(1) ......................................................................... 10, 23, 24

Fed. R. Civ. P. 10(a) ........................................................................... 10, 11, 23,24

## INTRODUCTION

For months, an extortionate campaign has been targeting this named Defendant under cover of darkness. That campaign was cynical and calculated to force payment of an exorbitant sum of money—Defendant would have to pay X millions of dollars irrespective of the truth, or else . . . . When Defendant refused to pay and instead took measures to establish his innocence, this unnamed Plaintiff and her self-promoting counsel (whose name has been splashed across headlines and press conferences under auspices of representing her) went to extraordinary lengths to shut down fair defense. But those efforts, too, failed. Now, at last, the false, unfounded allegations that underlie this campaign of extortion are having judicial light shined on them—except that this Plaintiff is bringing them as a Doe, who would continue to hide under cover of darkness.

Because that tactic is inconsistent with a genuine effort to determine the truth or falsity of these allegations—as opposed to an effort to procure a quick, extortionate settlement—Defendant is respectfully seeking either dismissal of the allegations or disclosure of the Plaintiff's identity. Fair is fair. It is not consistent with justice, fairness, or the rules governing federal proceedings for the Plaintiff and her counsel to smear Defendant's good name in ways that are calculated to feed media coverage and thus inflict maximum public-relations damage while the core fact of Plaintiff's identity, revelation of which stands to discredit her entire case, remains wholly hidden from view. Whereas Doe status is reserved for truly extraordinary cases and predicated upon extraordinary justification, here a multitude of powerful considerations cut precisely the opposite direction—as other judges of this Court have ruled in cases involving the same circumstances.

Defendant Shawn Carter (a/k/a "JAY-Z") has built an impeccable reputation. He has never been accused of, let alone engaged in, any sexual misconduct. Until today, when Plaintiff—in an Amended Complaint ("Amend. Compl.") filed by Attorney Anthony Buzbee—has leveled baseless allegations and accused Mr. Carter of despicable acts while hiding behind the pseudonym

"Jane Doe." These claims are not about justice for victims. Nor are they about giving victims of sexual violence a voice. Instead, they are merely the next chapter in Attorney Buzbee's sprawling extortion saga—a saga whose aim is base and measured in dollars. Buzbee has devoted himself to the business of extracting large settlements from celebrities, high-net worth individuals, and businesses with any public ties to Sean Combs Combs (a/k/a "P. Diddy," a/k/a "Puff Daddy," a/k/a "Diddy," a/k/a "PD," and a/k/a "Love") following his indictment for sex crimes in September 2024.

References to justice or "sunlight" serve only as window-dressing. Make no mistake, this case is about retaliating against the rare target who would not pay. Attorney Buzbee has a history of targeting celebrities by making false allegations of misconduct, and Mr. Carter sought to expose Attorney Buzbee's latest extortion scheme in California lawsuit on November 18, 2024, after receiving a demand letter from Attorney Buzbee. **Exhibit 1** (Extortion Complaint). At the time, Attorney Buzbee knew who Mr. Carter was, even as Mr. Carter remained in the dark (as he does today) about the identity of Mr. Buzbee's client. Plaintiff and Attorney Buzbee now bring these claims against Mr. Carter in a clear act of retaliation—as the complaint admits on its face.

While Mr. Carter was being extorted, he could not speak out without revealing his identity and the heinous allegations made against him—which are patently false. That would be playing into Attorney Buzbee's game and the leverage he is wielding. The upshot would be highly sensational (and equally false) allegations being broadcast across social media and the press, thereby maximizing the pressure exerted against extortion targets to satisfy his monetary demands, irrespective of the truth. Because Mr. Carter called upon the courts rather than paying, he has now been sued. So be it. One way or another, Mr. Carter is entitled and positioned to exonerate himself through the legal process. In this case, he will vigorously defend himself and expose the truth:

2

that the allegations in the complaint are false.  But disclosure of Plaintiff's identity is among the most essential, basic tools that can and should enable Mr. Carter to vindicate himself.  Mr. Carter should not have to defend himself in the brightest of spotlights against an accuser who hides in complete darkness while leveling allegations that describe the purported acts occurring in the plain sight of witnesses who could refute the plaintiff's claims if only her identity was revealed.  Amend. Compl. ¶¶ 58-60.

In the American judicial system, lawsuits are public by their nature and their design; the public is meant to know the facts involved and the identities of the parties.  Indeed, federal law requires that all parties litigate using their true names.  Parties are exempted from this mandate only in exceptional cases, where, for instance, allowing the party to proceed anonymously will protect him or her from physical violence, deportation, imprisonment, or severe harassment.

Here, Plaintiff has chosen to sue Mr. Carter anonymously, using the pseudonym "Jane Doe."  Yet has not alleged any facts that would allow her to sidestep the federal mandate requiring that all parties must litigate using their true names.  Indeed, Plaintiff's allegations exhibit none of the "special circumstances" necessary to allow her to litigate anonymously.  To the contrary, her facially incredible allegations indicate that—unlike in many cases of alleged sexual misconduct— she has already been exposed, in plain sight, to countless witnesses whose truthful accounts would be helpfully and properly informed by specification of her identity.  Amend. Compl. ¶¶ 68-70. Notably, she has not claimed severe harassment, threats of violence, or any ongoing interaction with Mr. Carter beyond communications through her attorney.  Nor has Plaintiff even submitted an affidavit alleging these types of "special circumstances";  instead, she relies solely on a self-serving Declaration from Attorney Buzbee.  Attorney Buzbee's affidavit does not indicate how an attorney from Texas is competent to testify as to the mental state of Plaintiff, let alone how he has

3

personal knowledge of what happened to her in New York to supposedly cause that mental state. The declaration does little more than parrot Buzbee's own motivations and a legal standard.  That is, it does not provide any *actual facts* indicating that Plaintiff is in need of extraordinary protection.  Suffice it to say that attorney-proffered innuendo and generic accusations do not suffice to justify why Mr. Carter and the American public should be denied access to Plaintiff's identity in this highly public litigation.

If anything, this case presents an extraordinary need to follow the ordinary rules of litigation and have both parties proceed under their actual names.  Attorney Buzbee has for months taken to traditional and social media to describe how he planned to target celebrities in connection with these allegations, and he has now issued multiple social-media posts about this action. Traditional media sources have somehow been reporting—with Buzbee's express endorsement on social media—that Mr. Carter is the target of Buzbee's allegations.  Thus, the Plaintiff, through her counsel, has acted quite unlike a party who wants to minimize the amount of public attention on this matter.  Instead, Buzbee has attempted to leverage public scrutiny to taint a potential jury pool and put pressure on Mr. Carter to settle this meritless case.  In those circumstances, it would be extraordinarily unfair if the Plaintiff could continue to hide beyond the shield of anonymity while leveraging public interest in this case strategically to pressure the defendant.  Furthermore, the allegations here describe serious criminal violations.  It is fundamental in the American legal tradition that a person accused of such actions has the right to know the identity of the accuser and confront that person in open court.

Moreover, the Amended Complaint itself makes clear what this is all about—not justice, but a quick and large settlement against a celebrity.  The Amended Complaint on its face alleges that Buzbee chose to sue Mr. Carter because he fought back against Buzbee's extortionate tactics.

4

Amend. Compl. ¶ 32.   As Buzbee subsequently Tweeted, Mr. Carter's conduct in defending himself "has had the opposite impact" because, in Buzbee's words, "[Plaintiff] is emboldened." And although the complaint alleges that another celebrity ("Celebrity B") was also involved in the alleged actions, it does not reveal her identity—no doubt because Buzbee seeks to leverage his public allegations against Mr. Carter to extract a settlement from her.   None of this is consistent with a genuine effort to seek justice and truth.

This Court should not allow this strategic abuse of the judicial system to continue.   Mr. Carter deserves to know the identity of the person who is effectively accusing him—in sensationalized, publicity-hunting fashion—of criminal conduct, demanding massive financial compensation, and tarnishing a reputation earned over decades.   This Court has recognized the nearly identical claims brought by other Plaintiffs represented by Attorney Buzbee do not meet the criteria to proceed anonymously.   Here, the balance of the equities afford all the more reason why this Plaintiff should be proceeding under her true name, if she wishes to proceed at all.

## BACKGROUND

In an Amended Complaint filed on December 8, 2024, Plaintiff sued Mr. Carter anonymously, using the pseudonym "Jane Doe."   Without filing her own affidavit supporting her request for anonymity, Plaintiff instead relies solely on a Declaration submitted by Attorney Buzbee.   That Declaration effectively parrots those Attorney Buzbee has filed in other cases alleging claims of sexual assault by Sean Combs and others.   More importantly, this  Declaration makes no specific reference to "special circumstances" unique to Plaintiff's case.   Instead, it only makes broad and generalized assertions about Attorney Buzbee's other clients.   Buzbee Decl. at ¶ 5 ("Strikingly, an overwhelming number of these clients – likely in excess of eighty percent – have stated to me or attorneys at my firm, during their intake process, that Mr. Combs made threats of

violence against them (or against client's family members) if the client disclosed to anyone the facts of the sexual assaults or other acts of Mr. Combs' of which they were a victim.").

In at least two cased filed by Attorney Buzbee with this Declaration, other courts in this District have already denied his baseless motions to proceed anonymously for failure to meet the burden to show each plaintiff was entitled to the "exceptional remedy of anonymity." **Exhibit 2** (Oct. 30, 2024 Order) ("The Court concludes that the balance of interests at stake weighs strongly against granting Plaintiff's motion" where "Plaintiff, who is an adult, has now decided to file a lawsuit in which she accuses a famous person of engaging in heinous conduct approximately twenty years ago" and "Defendants have a right to defend themselves, including by investigating Plaintiff, and the people have a right to know who is using their courts."); **Exhibit 3** (Feb. 29, 2024 Order) ("While the Court does not take Plaintiff's concerns lightly, the Court cannot rely on generalized, uncorroborated claims that disclosure would harm Plaintiff to justify her anonymity."). Those cases concerned Combs—who is under indictment and detained following a raft of criminal and civil allegations against him. But Plaintiff has now sought to sully the reputation of Mr. Carter, who has never been accused of misconduct in his 37 adult years. Plaintiff has not come close to meeting her burden here, and the balance of equities that she litigate under her true name.

There is every indication that this lawsuit is not truly about Plaintiff, but about Attorney Buzbee's larger (unsavory) agenda. Despite Plaintiff's request to proceed anonymously, Plaintiff's counsel is doing everything to draw widespread attention to her. The same day the Amended Complaint was filed naming Mr. Carter, Attorney Buzbee posted on Instagram and Twitter, prominently featuring himself, addressing the Amended Complaint and making clear this

is not about his clients, but is about his personal spat with Mr. Carter. **Exhibit 4** (Dec. 8, 2024 Instagram Post); **Exhibit 5** (Dec. 8, 2024 Twitter Post).





What is more, Attorney Buzbee has made numerous social media posts and statements to the media regarding his representation of individuals with allegations against Sean Combs, including that he would target other unnamed celebrities. These statements began a couple weeks after Mr. Combs' indictment and continued after Plaintiff, through Attorney Buzbee, sent Mr. Carter unfounded demand letters in November 2024 falsely accusing him of rape. These baseless claims, unsupported by evidence, are nothing more than a calculated effort to strong-arm Mr. Carter into submission. When Mr. Carter proved unwilling to pay, Attorney Buzbee escalated his tactics and scheme further—threatening to conjure additional false accusations and manufacturing a parade of fictitious additional "victims" to emerge and further damage Mr. Carter's reputation.

To coerce Mr. Carter into compliance, Plaintiff and Attorney Buzbee imposed an arbitrary deadline in their extortionate demand letter, warning Mr. Carter that they would "take a different course" if he did not agree to a "confidential mediation" to "resolve this delicate and important matter." Without even waiting for the deadline provided by the extortionate demand letter to pass, Attorney Buzbee posted on social media that he intended to file a lawsuit naming Mr. Carter and attaching the extortionate demand letter to punish Mr. Carter for seeking redress from a court. All along, Mr. Carter refused to bow to Attorney Buzbee's scheme. Faced with a choice to either pay an exorbitant sum to silence Plaintiff's wild, false allegations of sexual assault—risking irreparable harm to his reputation, family, career, and livelihood—or face a barrage of baseless lawsuits and financial ruin, Mr. Carter stood his ground. On November 18, 2024, Mr. Carter filed a complaint against Attorney Buzbee and his law firm for his extortionate conduct.

In retaliation, Plaintiff and Attorney Buzbee filed the Amended Complaint. They did so, however, only followed a failed attempt by Attorney Buzbee to obtain a restraining order against Mr. Carter's counsel. Notably, the Amended Complaint acknowledges that Plaintiff—through her

Counsel Attorney Buzbee—is only bringing these false claims against Mr. Carter in retaliation for his failure to respond to her pre-litigation demand letter.  ECF 29 (Amend. Compl.) ¶ 32.  Plaintiff goes so far as to accuse Mr. Carter of "filing an utterly frivolous lawsuit," "orchestrating a conspiracy of harassment, bulling and intimidation against Plaintiff's lawyers, their families, employees and former associates in an attempt to silence Plaintiff from naming Jay-Z."  Rather than citing a desire for compensation for any actual harm suffered—because there was none— Plaintiff, through her counsel, apparently "chose to file this amendment as a result of the egregious conduct perpetuated by Carter" against *Attorney Buzbee*, quite different from *the Plaintiff*.

These tactics are designed to silence the other extortion victims who, like Mr. Carter, have been targeted by Attorney Buzbee—not based on the their perceived culpability, but the depth of their pockets.  Attorney Buzbee's tactics send a clear message: any individual who resists extortionate demands will face public retaliation through highly publicized lawsuits.  This strategy is designed to silence other victims of Attorney Buzbee's extortion while creating media spectacles to amplify unfounded claims and maximize monetary recoveries outside of court. That this Plaintiff is suing only now, after Attorney Buzbee has been left stinging from personal rebukes and defeats, supplies positive proof of how he elevates his own interests above those of clients.

Needless to say, this proceeding should not be driven by Attorney Buzbee's agenda or interests.  It is about finding the facts, applying the law, and fairly adjudicating what is the actual truth.  Mr. Carter now is entitled to defend himself against these allegations with benefit of all the protections and mechanisms available to defendants.  To be sure, Attorney Buzbee's game has been to prevent Mr. Carter from defending himself while punching below the belt.  Today, that game is at an end and Mr. Carter's defense has begun—starting with Plaintiff's unmasking.

## PROCEDURAL HISTORY

On November 6, 2024, before Mr. Carter was named, the Court provisionally granted the Plaintiff's motion to proceed under a pseudonym in this case. At that time, the only named individual was Mr. Combs, who was indicted and had a flood of allegations leveled at him by myriad plaintiffs at the same time. In that Order the Court clarified that, at the time it was entered "the balance of these interests may shift as this matter proceeds, and Defendants deserve to be heard on the issue." ECF 28.

On December 8, 2024, Plaintiff's counsel filed an Amended Complaint (ECF 29) naming Mr. Carter, an upstanding public figure who has never been accused of anything like this in his life. By Plaintiff's own admission, Mr. Carter was named solely because Mr. Carter refused to cede to Plaintiff's counsel's extortionate demands. Amend. Compl. at ¶ 32.

Plaintiff's counsel knows he cannot continue to proceed with these lawsuits anonymously. Indeed, another judge in this very courthouse, considering precisely the same circumstances presented by the plaintiff here, declined to permit that plaintiff to proceed anonymously. *See McCrary v. Combs, et al.*, No. 24-cv-08054-MKV, at ECF 17 (SDNY Oct. 30, 2024). Mr. Carter now brings this motion because circumstances have changed: what the Amended Complaint put at issue no longer reflects the interests of the Plaintiff—it is now a vehicle serving the singular agenda of Attorney Buzbee. Lest there be any doubt, one need only look to the social media post Attorney Buzbee made concurrent with this filing—it features no image or symbolism related to any purported victim of sexual assault. It features only Attorney Buzbee himself. Ex. 4 at 1.

Plaintiff's Amended Complaint should be dismissed, and the motion to proceed anonymously denied as moot. In the alternative, the Court should require Plaintiff to identify herself so that Mr. Carter can adequately defend himself against these baseless and spurious allegations.

10

## LEGAL STANDARD

A putative plaintiff must establish subject matter jurisdiction to proceed before the Court, and thus the Court must know who is seeking redress.  *See* Fed. R. Civ. P. 12(b)(1).  And Rule 10(a) of the Federal Rules of Civil Procedure thus provides that, "[t]he title of the complaint must name all the parties."  Fed. R. Civ. P. 10(a); *see also Publicola v. Lomenzo*, 54 F.4th 108, 112 (2d Cir. 2022); *United States v. Pilcher*, 950 F.3d 39, 45 (2d Cir. 2020).  This Rule, which "cannot be set aside lightly" "serves the vital purpose of facilitating public scrutiny of judicial proceedings."  *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188-89 (2d Cir. 2008).  As the Second Circuit has explained, "The people have a right to know who is using their courts."  *Id.* (quoting *Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869, 872 (7th Cir. 1997)).  Indeed, this "right is 'supported by the First Amendment.'"  *Doe v. Skyline Automobiles Inc.*, 375 F. Supp. 3d 401, 404 (S.D.N.Y. 2019) (quoting *Doe v. Delta Airlines, Inc.*, 310 F.R.D. 222, 224 (S.D.N.Y. 2015), *aff'd*, 672 F. App'x 48 (2d Cir. 2016)).

A district court can grant an exception to this rule, but only in exceptional circumstances where the plaintiff has a "substantial privacy" interest that "outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings."  *See Sealed Plaintiff*, 537 F.3d at 189 (quoting *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 685 (11th Cir. 2001)).  Critically, a plaintiff "seeking anonymity" must offer the court "more than just 'mere speculation'" to support their request.  *Skyline Automobiles Inc.*, 375 F. Supp. 3d at 405 (quoting *United States v. UCB, Inc.*, 2017 WL 838198, at *3 (S.D.N.Y. 2017)). And, the court must also consider the interests of the opposing party when making this determination.  *Id.*  ("the interests of both the public and the opposing party should be considered.").

The Second Circuit has enumerated a "non-exhaustive" list of factors to determine whether a plaintiff's interest in anonymity outweighs the interests of both the public and the

11

defendant.  *Sealed Plaintiff*, 537 F.3d at 189.  These factors are:

1) whether the litigation involves matters that are highly sensitive and of a personal nature;

2) whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties;

3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity;

4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of her age;

5) whether the suit is challenging the actions of the government or that of private parties;

6) whether the defendant is prejudiced by allowing the plaintiff to press her claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court;

7) whether the plaintiff's identity has thus far been kept confidential;

8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose her identity;

9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and

10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Id.* at 190 (internal quotation marks and citations omitted) (alterations adopted).

A district court is not required to discuss every factor or "use any particular formulation" provided that it "balance[s] the interests at stake."  *Id.* at 191 n.4.  Plaintiff must bear the burden of rebutting the presumption of open records and establishing that the balance of factors weigh in favor of proceeding pseudonymously.  *See Doe v. Skyline Automobiles Inc.*, 375 F. Supp. 3d 401, 408 (S.D.N.Y. 2019); *Doe v. Berg*, 2016 WL 11597923, at *1 (S.D.N.Y. Feb. 10, 2016).  Here, the balance of interests favors disclosure.

## ARGUMENT

### I. PLAINTIFF'S MOTION SHOULD BE DENIED IN FULL AND HER IDENTITY DISCLOSED IMMEDIATELY AS REQUIRED BY THE FEDERAL RULES

The allegations in this lawsuit are not unique, nor are the circumstances exceptional so as to warrant the extreme accommodation of proceeding anonymously. Multiple judges in this very District to consider these issues have concluded as much and required the plaintiffs to provide the Court, the Defendants, and the public with their true names, even where the facts and circumstances were more supportive of relief (e.g., where Combs had made a threat, *see McCrary v. Combs, et al.*, No.24-cv-08054-MKV (SDNY)). Because there is even less reason to support anonymity here, the Court should require the Plaintiff to reveal her identity or dismiss her suit against Mr. Carter.

#### *Highly Sensitive and Personal Allegations*

Plaintiff's allegations, as pleaded, are highly sensitive and personal in that they describe a sexual assault (to be sure, one that Mr. Carter was not involved in). However, "allegations of sexual assault, by themselves, are not sufficient to entitle a plaintiff to proceed under a pseudonym." *Skyline Automobiles Inc.*, 375 F. Supp. 3d at 405 (citing *Doe v. Shakur*, 164 F.R.D. 359, 361–62 (S.D.N.Y. 1996) (Chin, J.) (collecting cases)). Courts in this District have denied motions to proceed under a pseudonym despite concluding that the plaintiff's allegations were highly sensitive and personal. *See id.*; *Shakur*, 164 F.R.D. at 361 (denying motion despite concluding that "[i]f the allegations of the complaint are true, plaintiff was the victim of a brutal sexual assault" and "has very legitimate privacy concerns"); *Rapp v. Fowler*, 537 F. Supp. 3d 521, 528 (S.D.N.Y. 2021); *Doe v. Leonelli*, 2022 WL 2003635, at *2 (S.D.N.Y. June 6, 2022); *Doe 1 v. Branca USA, Inc.*, 2022 WL 2713543, at *2 (S.D.N.Y. July 13, 2022); *Townes*, 2020 WL 2395159, at *3, 6, 7.

### *Risk of Harm to Plaintiff or Third Parties*

The second factor is "whether identification poses a risk of retaliatory physical or mental harm to the [plaintiff] or even more critically, to innocent non-parties." *Sealed Plaintiff*, 537 F.3d at 190. The Plaintiff offers no evidence of any actual risk of harm to her whatsoever. Instead, Attorney Buzbee makes the speculative and conclusory allegations that appear to pertain primarily to other clients of her counsel, not to her. Pl. Mem. at 4. Courts have routinely rejected attempts by litigants to shoehorn themselves into the narrow exception to the names-disclosed rule through such conclusory, second-hand "declarations." *See Doe v. Shakur*, 164 F.R.D. 359 (S.D.N.Y. 1996); *Qualls v. Rumsfeld*, 228 F.R.D. 8 (D.D.C. 2005).

Mr. Carter vehemently denies the allegations, has no idea who Plaintiff is, or who she could possibly be, and thus has had no known contact with Plaintiff for the approximately twenty years since the alleged incident—which, even if it occurred, did not involve Mr. Carter—and there is no allegation of any threat to Plaintiff in the Complaint. *See* Pl. Mem. at 5; Cmpl. ¶ 23. Mr. Carter is a well-regarded public figure represented by competent counsel who, in contrast to Plaintiff's counsel, intend to litigate this case through the court system, rather than social media. In any event, Counsel has not identified any present threat of physical harm to Plaintiff from anyone. *See Leonelli*, 2022 WL 2003635, at *2.

Plaintiff's counsel stresses that *other* alleged victims he represents "have stated . . . that *Mr. Combs* made threats of violence against them (or against the client's family members) if the client disclosed to anyone the facts of the sexual assaults." Buzbee Decl. ¶ 6 ; *see* Pl. Mem. at 5, 10. But there is certainly no allegation that Carter ever threatened to harm Plaintiff, nor could he, as he has no idea who she is.

Plaintiff's counsel asserts, without offering any evidence, that Plaintiff would "certainly

14

experience" mental harm "if she is forced to reveal her identity to the public."  Pl. Mem. at 5.

In this context, "public humiliation" is not enough.  *Leonelli*, 2022 WL 2003635, at *3 (quoting

*Doe v. Hochul*, 2022 WL 836990, at *7 (E.D.N.Y. Mar. 12, 2022)); *see Rapp*, 537 F. Supp. 3d at

528 & n.38; *Abdel-Razeq v. Alvarez & Marsal, Inc.*, 2015 WL 7017431, at *3 (S.D.N.Y. Nov.

12, 2015).  Nor is it sufficient for Plaintiff to put forth a "generalized" argument that revealing

the identity of a victim of sexual assault would "further victimize" her.  *Skyline Automobiles*

*Inc.*, 375 F. Supp. 3d at 406.  Accepting such an argument "would be to hold that nearly any

plaintiff alleging sexual. . . assault could proceed anonymously," which simply is not the law in

this Circuit.  *Townes*, 2020 WL 2395159, at *4.

> Rather, courts require "direct evidence linking disclosure of [plaintiff's] name to a specific
> . . . injury."  *Doe v. Gong Xi Fa Cai, Inc.*, 2019 WL 3034793, at *2 (S.D.N.Y. July 10, 2019).
> One court in this Circuit allowed a plaintiff to proceed anonymously where she submitted
> evidence from a medical professional who predicted that requiring disclosure of her name would
> cause "psychological and emotional pain so intense that it would threaten her stability, her
> safety, and even her life."  *Doe v. Smith*, 105 F. Supp. 2d 40, 43 (E.D.N.Y. 1999).  Even where
> such medical evidence is present, other factors may still tip the balance against permitting a
> plaintiff to proceed anonymously.  *See Rapp*, 537 F. Supp. 3d at 529.

> Regardless of what types of direct evidence might support such a finding, it is well-
> established that counsel's "conclusory statements and speculation" about mental harm to
> Plaintiff is insufficient.  *Skyline Automobiles Inc.*, 375 F. Supp. 3d at 406; *see Branca USA, Inc.*,
> 2022 WL 2713543, at *4; *Doe v. Freydin*, 2021 WL 4991731, at *2 (S.D.N.Y. Oct. 27, 2021)
> (ruling that plaintiff's "own affidavit" about her risk of mental harm, without more, was
> "insufficient").  Indeed, Plaintiff's own brief makes clear that courts require evidence.  *See* Pl.

Mem. at 4 (citing *Smith* and a Connecticut state court case and acknowledging that the plaintiffs in those cases submitted evidence from a "doctor" and "therapist," respectively). But as discussed above, there is no such "evidence," just the Motion's say-so. *See Skyline Automobiles*, 375 F. Supp. 3d at 406 (rejecting request for anonymity based "exclusively o[n] conclusory statements and speculation"). Plaintiff's counsel has failed to provide any evidence—no statement from a mental health professional, no affidavit from Plaintiff herself, nor any corroborating proof—to support the bare claim that disclosing Plaintiff's identity would harm her mental health. Counsel's unsupported assertions are insufficient. Plaintiff must offer the Court "more than just 'mere speculation'" to justify proceeding anonymously. *Skyline Automobiles Inc.*, 375 F. Supp. 3d at 405.

While Mr. Carter is a public figure, this does not outweigh his and the public's right to "the customary and constitutionally-embedded presumption of openness in judicial proceedings." *Sealed Plaintiff*, 537 F.3d at 189. Plaintiff "has chosen to bring this lawsuit," leveling "serious charges" and, as such, she "has put her credibility in issue." *Shakur*, 164 F.R.D. at 361. Moreover, her counsel has expended considerable time and energy publicizing this case, dragging Mr. Carter—and countless other public figures—into baseless litigation for his own pecuniary gain. Indeed, when Mr. Carter refused to succumb to the outrageous demands that Mr. Carter pay up, Attorney Buzbee immediately escalated. Within minutes of filing the Amended Complaint naming Mr. Carter, he posted about it on social media (prominently featuring himself), weaponizing the judicial process to amplify his unfounded accusations. The motivation for naming Mr. Carter here could not be more clear—it has nothing to do with justice for victims—it is all about Attorney Buzbee. As Plaintiff's counsel has repeatedly claimed, "[s]unlight is the best disinfectant." Mr. Carter is entitled to investigate the Plaintiff's

background and challenge her allegations and her credibility in order to defend himself against these false accusations. *See id.* Moreover, media outlets have a constitutional right to publish stories about this case. *See New York Civil Liberties Union v. New York City Transit Auth.*, 684 F.3d 286, 298 (2d Cir. 2012).

Further, many individuals who have made serious allegations against Combs have filed lawsuits in this District in their own names. *See Ventura v. Combs et al.*, 23-cv-10098; *Jones v. Combs et al.*, 24-cv-1457; *McKinney v. Combs et al.*, 24-cv-3931; *English v. Combs et al.*, 24-cv-5090; *Richard v. Combs et al.*, 24-cv-6848; *Graves v. Combs et al.*, 24-cv-7201; *McCrary v. Combs*, No. 24-cv-08054. All of these lawsuits involve sensitive allegations and that could expose the plaintiffs to scrutiny and embarrassment. Plaintiff has not shown that she is entitled to "the exceptional remedy of anonymity" where these are not. *Rapp*, 537 F. Supp. 3d at 527–28.

Plaintiff does not contend that disclosure of her identity poses a risk of harm to any innocent non-parties so this factor favors revelation of the Plaintiff's identity.[1]

### Other Harm

Plaintiff does not argue that she faces "other" severe harms for which the second factor does not account. Accordingly, the Court finds that Plaintiff's assertions of potential harms are speculative, unsupported by evidence, and insufficient to justify anonymity in this case.

---

[1] Allegations by Plaintiff's counsel that routine investigative activities related to pending legal claims in other fora are "harassing" should be disregarded. Plaintiff's counsel tried to prevent Quinn Emanuel from investigating Mr. Carter's claims of extortion by trying to enjoin the firm from contacting anyone related to the Buzbee law firm. That request was denied two days before the Amended Complaint was filed in this case—further evidencing Attorney Buzbee's retaliatory behavior.

### *Plaintiff's Age Weighs Against Anonymity*

Plaintiff is not especially vulnerable, "particularly in light of [her] age." *Sealed Plaintiff*, 537 F.3d at 190. Plaintiff is an adult now, 37 years old, and she has not identified any reason for the Court to treat her as more vulnerable than the great run of adult plaintiffs who bring allegations of sexual assault in their own names. Thus, the fourth factor weighs against Plaintiff's request to proceed under a pseudonym. *See Townes*, 2020 WL 2395159, at *5.

### *Defendants' Status as Private Parties Weighs Against Anonymity*

Courts are loath to grant a motion to proceed anonymously against private parties. *See Townes*, 2020 WL 2395159, at *5; *Rapp*, 537 F. Supp. 3d at 532. Mr. Carter and all of the other defendants are private parties. As such, factor five weighs against Plaintiff.

### *Prejudice to Defendants Weighs Against Anonymity.*

The sixth *Sealed Plaintiff* factor is "whether the defendant is prejudiced by allowing the plaintiff to press [her] claims anonymously." *Sealed Plaintiff*, 537 F.3d at 190. Relevant to this inquiry is whether defendants would experience "difficulties in conducting discovery," the "reputational damage," and the "fundamental fairness of proceeding anonymously." *Rapp*, 537 F. Supp. 3d at 531 (quoting *Townes*, 2020 WL 2395159, at *5). Mr. Carter would be prejudiced in all of these respects.

Counsel's assertions that Mr. Carter or other defendants need not know Plaintiff's identity to file an answer and conduct discovery strain credulity. Plaintiff asserts that Defendants "will still have the right to depose or confer with any and all witnesses." Pl. Mem. at 7. Clearly, Mr. Carter needs to know Plaintiff's identity to depose her and to prepare to depose her—that much is given. But if Mr. Carter does not know who is falsely accusing him, he cannot thoroughly investigate her allegations and her background and otherwise prepare a defense to

her claims. *See Rapp*, 537 F. Supp. 3d at 531. Plaintiff is bringing a lawsuit about an incident that allegedly occurred more than twenty-four years ago, which may be difficult to defend given the passage of time even with information about Plaintiff's identity—hamstringing Mr. Carter by preventing him from even knowing where to begin his investigation. That cannot be permitted. *See CTS Corp. v. Waldburger*, 573 U.S. 1, 8 (2014) (discussing the need to prevent injustice in connection with "revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared").

Plaintiff's counsel "confidentially" disclosing Plaintiff's name to defense counsel would not obviate the potential prejudice. Pl. Mem. at 1. "Highly publicized cases can cause unknown witnesses to surface." *Rapp*, 537 F. Supp. 3d at 531. However, if Plaintiff's name is kept from the public, "information about only one side may thus come to light." *Id.* (quoting *Doe v. Del Rio*, 241 F.R.D. 154, 159 (S.D.N.Y. 2006)). In particular, "persons with information about [Plaintiff] or [her] allegations that would be helpful to [the] defense likely would have no way of knowing" to come forward. *Id.* This "asymmetry" between the parties "not only would prejudice [Defendants], but would hinder 'the judicial interest in accurate fact-finding and fair adjudication.'" *Id.* (quoting *Doe v. Weinstein*, 484 F. Supp. 3d 90, 98 (S.D.N.Y. 2020)). This is especially true for a two-decade old case where Mr. Carter is already prejudiced and at a disadvantage to defend himself and find witnesses and evidence to disprove the false allegations.

Indeed, the potential prejudice to Mr. Carter with respect to discovery is inseparable from the potential prejudice to his reputation and fundamental fairness. Plaintiff alleges that myriad named and as yet unnamed individuals and entities engaged in or facilitated heinous conduct with Mr. Combs or were complicit in the same.[2] If damaging information about only one side is aired

---

[2] Mr. Carter adamantly denies the allegations with respect to his involvement.

19

through the litigation, Mr. Carter cannot mitigate the damage to his reputation from being included in these false claims. *See id.* Thus, courts in this Circuit have long stressed the fundamental unfairness of allowing a plaintiff to "make her accusations from behind a cloak of anonymity." *Delta Airlines, Inc.*, 310 F.R.D. at 225 (quoting *Shakur*, 164 F.R.D. at 361). This factor accordingly weighs against anonymity

### Confidentiality of Plaintiff's Identity To Date

The seventh *Sealed Plaintiff* factor is "whether the plaintiff's identity has thus far been kept confidential." *Sealed Plaintiff*, 537 F.3d at 190. If confidentiality has not been maintained, courts typically reject a motion to proceed under a pseudonym. *See, e.g.*, *Skyline Automobiles Inc.*, 375 F. Supp. 3d at 407; *Rapp*, 537 F. Supp. 3d at 529. Plaintiff's counsel represents that Plaintiff "has not spoken *publicly* about the incidents" she alleges in the Complaint. Buzbee Decl. ¶ 7 (emphasis added). Plaintiff may have spoken privately to "an unknown number of people" without having ever "received assurances of confidentiality from any of them." *Rapp*, 537 F. Supp. 3d at 529. Plaintiff's counsel has broadcasted the cases against Combs widely in the news media where he has threatened to name countless other celebrities and high profile individuals as defendants. And, within minutes of filing the amended complaint in this case, he has already blasted it across his social media. Quite clearly, the confidentiality of this proceeding is not paramount to Plaintiff or her counsel acting on her behalf. Plaintiff and her counsel cannot be permitted to wage a public smear campaign against Mr. Carter and his counsel while hiding behind a veil of anonymity.

### The Public Interest Weighs Against Anonymity

The eighth *Sealed Plaintiff* factor is "whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose [her] identity." *Sealed Plaintiff*, 537 F.3d at 190.

The ninth factor is "whether, because of the purely legal nature of the issues presented . . . , there is an atypically weak public interest in knowing the litigants' identities." *Id.* These factors clearly weigh against granting Plaintiff's motion to proceed under a pseudonym.

As a rule, "lawsuits are public events and the public has a legitimate interest in knowing the facts involved in them.  Among those facts is the identity of the parties." *Shakur*, 164 F.R.D. at 361.  There is undeniable public interest in the allegations against Mr. Carter and the identities of his accuser.  This is not a case that involves "abstract challenges to public policies, but rather . . .particular actions and incidents." *N. Jersey Media Grp. Inc. v. Doe Nos. 1-5*, 2012 WL 5899331, at *8 (S.D.N.Y. Nov. 26, 2012).  Thus, "open proceedings . . . benefit the public as well as the parties." *Id.*  Indeed, this is the kind of case that "further[s] the public's interest in enforcing legal and social norms." *Id.*; *see also Skyline Automobiles Inc.*, 375 F. Supp. 3d at 408.

Plaintiff contends that the public interest favors granting her motion to proceed under a pseudonym so that victims of sexual assault will not be deterred from vindicating their rights. Pl. Mem. at 6.  However, as noted above, a number of other alleged victims have already sued Combs in their own names in this District.  *See supra* at 7.  As such, those plaintiffs obviously were not deterred by the long line of previous cases in which courts in this District have rejected motions to proceed under a pseudonym brought by alleged victims of sexual assault who have made the same argument about the public interest and possibility of deterrence.  *See Shakur*, 164 F.R.D. at 362; *Weinstein*, 484 F. Supp. 3d at 98; *Rapp*, 537 F. Supp. 3d at 532–33.

Moreover, there is a critical public interest in allowing "the accused publicly to confront the accuser." *Branca USA, Inc.*, 2022 WL 2713543, at *2.  If, notwithstanding that a number of other alleged victims have already sued in their own names, other potential plaintiffs are deterred

by this decision from filing their own lawsuits, that is "an unfortunate result" of the fundamental, countervailing interests that generally require "plaintiff and others like her [to] seek vindication of their rights publicly." *Shakur*, 164 F.R.D. at 362; *see Pilcher*, 950 F.3d at 45 ("pseudonyms are the exception and not the rule").

### *The Availability of Alternative Mechanisms Weigh Against Anonymity.*

The final *Sealed Plaintiff* factor is whether any alternative mechanisms short of proceeding under a pseudonym could protect Plaintiff's interest in confidentiality. *Sealed Plaintiff*, 537 F.3d at 190. Plaintiff can seek less drastic remedies than blanket anonymity, such as redactions to protect particularly sensitive information or a protective order (though she has not yet done so). *See, e.g.*, *Doe v. Berg*, 2016 WL 11597923, at *3 (S.D.N.Y. Feb. 10, 2016); *Skyline Automobiles Inc.*, 375 F. Supp. 3d at 408. Thus, factor ten weighs against Plaintiff's motion.

### *The Balance of Interests Weighs Against Anonymity*

The balance of interests at stake weighs strongly against granting Plaintiff's motion to proceed under a pseudonym. The "fundamental question" is whether Plaintiff has a "substantial privacy" interest that "outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings." *Sealed Plaintiff*, 537 F.3d at 189. Plaintiff, who is an adult, has now decided to file a lawsuit in which she accuses Mr. Carter of engaging in heinous conduct more than twenty years ago. And she has chosen to have her counsel loudly try this case in the media and the court of public opinion. Moreover, there is no evidence of "exceptional circumstances that in and of themselves justify overriding the constitutional presumption of openness." *Del Rio*, 241 F.R.D. at 158. Mr. Carter has a right to defend himself, including by investigating Plaintiff, and the people have a right to know who is using their courts. *See id.*; *Pilcher*, 950 F.3d at 42. Plaintiff has not carried her burden to show that she is entitled to any

exceptional remedy here.

## II.   IN THE ALTERNATIVE, THE COURT SHOULD DISMISS THE COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1).

A complaint that fails to adhere to Rule 10(a) is subject to dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction due to the plaintiff's lack of standing.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998) (If the plaintiff lacks standing under Article III of the U.S. Constitution, then the court lacks subject matter jurisdiction, and the case must be dismissed.); *see also Nat'l Commodity & Barter Ass'n, Nat'l Commodity Exch. v. Gibbs,* 886 F.2d 1240, 1245 (10th Cir. 1989) ("[F]ederal courts lack jurisdiction over [] unnamed parties, as a case has not been commenced with respect to them.").

As detailed above, Plaintiff's motion fails to meet the stringent requirements for the narrow exception to the Rules. Numerous courts have rejected similarly vague and unsupported assertions at the pleading stage.  Plaintiff has provided no evidence—no affidavit, declaration, or specific factual support—to establish the kind of severe harm necessary to justify pseudonymity. Her vague assertions of potential harm fall far short of the stringent requirements established by the Second Circuit and other federal courts.  See *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008); *Skyline Automobiles Inc. v. Ambrocio*, 375 F. Supp. 3d 401, 408 (S.D.N.Y. 2019). The lack of specificity in Plaintiff's motion, combined with her counsel's public actions drawing attention to this litigation, undermines any claim that anonymity is necessary to protect her privacy or safety.

Moreover, Plaintiff's failure to comply with Rule 10(a) deprives this Court of subject matter jurisdiction. Federal courts lack jurisdiction over unnamed parties because such cases are not properly commenced. See *Nat'l Commodity & Barter Ass'n*, 886 F.2d at 1245. Without Plaintiff's true identity, there is no justiciable controversy, and the Court cannot adjudicate the

case. *See Doe v. UNUM Life Ins. Co. of Am.*, 164 F. Supp. 3d 1140, 1142 (N.D. Cal. 2016) *(*dismissing complaint under Rules 12(b)(1) and 10(a)).

Plaintiff makes no effort to explain how litigation will work, in practice, without Mr. Carter knowing who Plaintiff is. Accordingly, because Plaintiff fails to meet the requirements for pseudonymity and has not properly commenced this action, the Court should deny her motion and dismiss the Amended Complaint under Rule 12(b)(1).

## **CONCLUSION**

Mr. Carter would request this Court revisit its provisional order permitting the Plaintiff to proceed anonymously, and require the Plaintiff to refile her complaint with her true name. To the extent she fails to do so, Mr. Carter would request the Court then dismiss the Complaint for failing to satisfy Fed. R. Civ. P. 10(a) and for therefore failing to establish subject matter jurisdiction pursuant to Rule 12(b)(1).

DATED:    December 9, 2024

<div style="margin-left:40%">

QUINN EMANUEL URQUHART &
SULLIVAN, LLP


By: */s/ Alex Spiro*
_____


Alex Spiro
Quinn Emanuel Urquhart & Sullivan, LLP
295 5th Avenue
New York, New York 10016-7103
(212) 849-7000

Attorney for Shawn Carter

</div>