# Exhibit 1

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

THE BUZBEE LAW FIRM
          Plaintiff,

          V.          CASE NO.:  4:25-CV-00385

MARCY BRYAN CROFT, ROC NATION,
LLC, MJ LEGAL, P.A., JESSICA
SANTIAGO, QUINN EMANUEL
URQUHART & SULLIVAN, LLP
          Defendants.


JOSE MALDONADO,
          Plaintiff,

          V.          CASE NO.:  4:25-CV-00345

MARCY BRYAN CROFT, ROC NATION,
LLC, MJ LEGAL, P.A., JESSICA
SANTIAGO, QUINN EMANUEL
URQUHART & SULLIVAN, LLC
          Defendants.

GERARDO GARCIA,
          Plaintiff,

          V.          CASE NO.:  4:25-CV-00353

MARCY BRYAN CROFT, ROC NATION,
LLC, MJ LEGAL, P.A., JESSICA
SANTIAGO, QUINN EMANUEL
URQUHART & SULLIVAN, LLP.
          Defendants.
*************************************************
      VIDEOTAPED DEPOSITION OF MARCY CROFT
*************************************************

HELD AT THE LAW OFFICES OF
BRADLEY ARANT BOULT CUMMINGS
188 EAST CAPITOL STREET, SUITE 1000
JACKSON, MISSISSIPPI

MAY 19, 2025,
BEGINNING AT APPROXIMATELY 2:18 P.M.

APPEARANCES NOTED HEREIN

REPORTED BY:

EMM, INC. REPORTING
ELISA M. McKINION, BCR, CCR #1670
POST OFFICE BOX 1439
BRANDON, MISSISSIPPI  39043
EMMREPORTING@GMAIL.COM

APPEARANCES:

HONORABLE GEORGE C. HANKS, JR. (VIA ZOOM)
UNITED STATES DISTRICT JUDGE
515 RUSK ST., ROOM 6202
HOUSTON, TEXAS  77002
713.250.5757

DAVID FORTNEY, ESQUIRE
THE BUZBEE LAW FIRM
J.P. MORGAN CHASE TOWER
600 TRAVIS, SUITE 7300
HOUSTON, TEXAS  77002
DFORTNEY@TXATTORNEYS.COM
713.223.5393

C. LANDON KIDD, ESQUIRE
COPELAND COOK TAYLOR & BUSH
600 CONCOURSE, SUITE 100
1076 HIGHLAND COLONY PARKWAY
RIDGELAND, MISSISSIPPI  39158
LKIDD@CCTB.COM
601.856.7200
        COUNSEL FOR THE PLAINTIFFS

GREGG COSTA, ESQUIRE
SYDNEY A. SCOTT, ESQUIRE (VIA ZOOM)
GIBSON DUNN CRUTCHER
811 MAIN STREET, SUITE 3000
HOUSTON, TEXAS  77002
GCOSTA@GIBSONDUNN.COM
SASCOTT@GIBSONDUNN.COM
346.718.6600

REED M. BRODSKY, ESQUIRE
GIBSON DUNN CRUTCHER
200 PARK AVENUE
NEW YORK, NEW YORK  10166
RBRODSY@GIBSONDUNN.COM
212.351.5334
        COUNSEL FOR MARCY BRYAN CROFT AND

APPEARANCES (CONTINUED):

ROBERT FORD, ESQUIRE
MICHAEL C. WILLIAMS, ESQUIRE
BRADLEY ARANT BOULT CUMMINGS
600 TRAVIS STREET, SUITE 4800
HOUSTON, TEXAS  77002
RFORD@BRADLEY.COM
MCWILLIAMS@BRADLEY.COM
713.576.0356
     COUNSEL FOR QUINN EMANUEL URQUHART
          & SULLIVAN, LLP

L. BRADLEY HANCOCK, ESQUIRE (VIA ZOOM)
HOLLAND & KNIGHT LLP
811 MAIN STREET, SUITE 2500
HOUSTON, TX  77002
713.244.6868
BRAD.HANCOCK@HKLAW.COM
     COUNSEL FOR ROC NATION, LLC


MATTHEW MAGEE,
  LEGAL MEDIA PRODUCTIONS VIDEO, LLC
  (601)540-5092

I N D E X

Style and Appearances........................ 1-2

Index......................................... 3

Exhibits...................................... 4

Examination by:

    Mr. Fortney............................. 5

Certificate of Reporter..................... 66

Witness Signature Sheet..................... 67

The formality of READING AND SIGNING is specifically NOT WAIVED.

REPORTER'S NOTE: Material read into the record is transcribed verbatim and therefore may not reflect an exact quote from documents or exhibits.

E X H I B I T S

Exhibit 1................................ 10

Exhibit 2................................ 19

Exhibit 3................................ 33

Exhibit 4................................ 43

Exhibit 5................................ 59

THE VIDEOGRAPHER:  Good afternoon. This is the videotaped deposition of Ms. Marcy Bryan Croft taken by counsel in the matter of the Buzbee Law Firm versus Marcy Bryan Croft, et al.

Today's date is May the 19th, 2025. The time is now 2:18 p.m.

Counsel may now introduce themselves on record, and everyone on the Zoom, accordingly, may introduce themselves as well.

MR. FORTNEY:  Good afternoon.  I'm David Fortney of the Buzbee Law Firm on behalf of Plaintiff, the Buzbee Law Firm, as well as Plaintiffs Gerardo Garcia and Jose Maldonado in related cases.

MR. COSTA:  Gregg Costa from Gibson Dunn along with Reed Brodsky on behalf of Marcy Croft and MJ Legal in all three cases.

MR. FORD:  Robert Ford and Michael Williams on behalf of Quinn Emanuel Urquhart & Sullivan, LLP, in all three cases.

MR. HANCOCK:  Brad Hancock on behalf

of Roc Nation in all three cases.

We cannot see the witness, though. It's in black.

**THE WITNESS:**  Whoo, that's it. Amazing angle right there.  Thank you, gentlemen, for that.  I just really want to thank you all.  Okay.

**THE STENOGRAPHIC REPORTER:**  Okay. Everyone on Zoom did not introduce themselves.

**MS. SCOTT:**  Good afternoon.  Sydney Scott with Gibson Dunn on behalf the Defendant, Marcy Croft.

MARCY CROFT,

having first been duly sworn, was examined and testified, as follows:

EXAMINATION

BY MR. FORTNEY:

Q.  Good afternoon, Ms. Croft.  My name is David Fortney, and I represent the Plaintiffs in all three actions.  I'll start by asking you if you've ever had your deposition taken before.

A.  Yes.

Q.  Yes.

Do you need me to go over the usual

admonitions, or are you comfortable proceeding?

A. I'm comfortable if you're comfortable.

Q. Okay. We can go ahead and go over them. Just as a reminder, you're under oath. The testimony that you give here will have the same effect as if you give it in a court of law.

Your counsel may or may not make objections, and other counsel may make objections. Those are for the record, but you are to answer my question unless they object on the basis of privilege.

After this deposition is done, you'll receive a transcript which you can review and make corrections to, but if you make corrections to that, I will have the right to use that -- those corrections to impeach your testimony at trial.

We will try not to talk over each other for a clear record. I'll try my best if you do.

We can take breaks whenever you want, but all I would ask is that you answer any question pending.

And throughout this deposition, I am entitled to your best estimate, but I don't want

you to guess at any particular answer.

Are those rules clear?

**A.** Yes.

**Q.** Okay.

**MR. COSTA:** I would just add, David, that in addition to privilege, given the limited scope, I may instruct her not to answer on the ba- -- you know, beyond the scope, in which case we obviously have the judge on the line to resolve that.

**MR. FORTNEY:** Understood. Thanks, Gregg.

BY MR. FORTNEY:

**Q.** Can you give me a brief educational and professional background. Just walk me through your professional career.

**A.** Professional and educational?

**Q.** And educational.

**A.** Okay. I graduated from Rhodes College with a double major in economics and business, went to the University of Mississippi for law school, and after which I worked in litigation at various firms for 27 years now.

**Q.** Okay. Is the last of those firms MJ Legal?

A. Yes.

Q. What was the firm before you started MJ Legal?

A. Maron Marvel.

Q. Okay. And when did you start MJ Legal?

A. January 2021.

Q. Okay. Are you the sole member of MJ Legal?

A. Yes.

Q. Okay. Do you have any other attorneys that work with you on a contract basis?

A. No.

Q. Okay. Do you have any other current legal employment other than MJ Legal?

A. Legal employment other than MJ Legal, no.

Q. Okay.

MR. FORTNEY: I'll introduce Exhibit 1.

(Exhibit 1 was marked for identification.)

MR. FORTNEY: Got one for Gregg.

(Off the record.)

MR. FORTNEY: Okay. This is just the

Notice of Deposition, and I just want to note for the record that this deposition is being taken in three cases:  The Buzbee Law Firm, Jose Maldonado, and Gerardo Garcia as Plaintiffs against Marcy Croft, MJ Legal, and a variety of other Defendants.

BY MR. FORTNEY:

Q.   Do you see that?

A.   Yes.

Q.   And do you understand that this deposition is -- is taken in all three of these cases?

A.   Yes.

Q.   Are you generally familiar with the allegations in the complaints in each of those cases?

A.   Yes.

Q.   Okay.  Did you or MJ Legal hire any investigators or individuals or entities relating to asking questions or finding out information about Tony Buzbee or the Buzbee Law Firm?

MR. COSTA:  I'll object that -- I mean, my understanding is the deposition's limited to her knowledge of the person

claiming to be Jessica Santiago, that person's residence, and not a general discovery deposition into all these potential facets of the case.

MR. FORTNEY: I agree, and I understand that, but I'm looking for the identity of an investigator, and so I'm just trying to ask some basic foundational questions about what she may have done in terms of any investigation.

MR. COSTA: Well, again, that's -- that seems like we're getting into discovery for the whole case. I mean, there's a straightforward way to see if she knows the person claiming to be Santiago, a female Texas in- -- investigator speaking Spanish, etc., so...

MR. FORTNEY: Are you instructing her not to answer?

MR. COSTA: To that -- that broad a question, yes.

MR. FORTNEY: Okay.

BY MR. FORTNEY:

Q. Let me just ask you. Are you aware of the identity of a woman named Jessica Santiago

who is referenced in the pleadings in each of these cases?

A. No.

Q. Okay. So you -- neither you nor your firm has spoken with any investigator referencing themselves as Jessica Santiago; is that correct?

A. That's correct.

Q. Okay. In December of 2024, to get a little bit more specific for Mr. Costa's objection, did you perform any investigation into Tony Buzbee or the Buzbee Law Firm?

MR. COSTA: Same objection about the scope of what Ms. Croft did.

MR. FORTNEY: Instruction not to answer?

MR. COSTA: Yes.

MR. FORTNEY: Okay.

BY MR. FORTNEY:

Q. How did you come -- are you familiar with Jose Maldonado?

A. Yes.

Q. How did you come to know Jose Maldonado?

A. How did I come to know Jose Maldonado?

He hired me to advise him in his investigation of potential claims against Mr. Buzbee.

Q. Okay. And when was that?

A. December -- mid December 2024.

Q. Okay.

A. I don't -- I don't know the exact day.

Q. December 2024?

A. That sounds right.

Q. Okay. Did you meet Mr. Jos- -- Mr. Maldonado, or did you just speak with him?

A. I did not meet him in person.

Q. Okay. How many times did you speak to him?

A. Two or three.

Q. Okay. Did he sign an engagement with -- letter with you?

A. Yes.

Q. Okay. How long was he your client?

MR. COSTA: I'll object on -- I mean, it's not focused on the jurisdictional issue that's the purpose of the -- the deposition, so I'd instruct Ms. Croft not to answer.

MR. FORTNEY: Okay.

BY MR. FORTNEY:

Q. How did he find you for purposes of retaining your services, if you know?

A. He called me.

Q. He called you out of the blue?

A. Called me out of the -- I mean, you'd have -- can you re- --

MR. COSTA: Objection. Form.

A. Like, can you re- --

BY MR. FORTNEY:

Q. Sure. When you were first contacted by Mr. Maldonado, was anyone else on the phone with him?

A. Was anyone else on the phone with him? No.

Q. Did anyone else call you and hand the phone to Mr. Maldonado?

A. Not that I'm aware of.

Q. Were you surprised to get a call from a random Texas resident about investigations into Mr. Buzbee?

MR. COSTA: Object to the form. And al- -- also, I'll object as beyond the scope of establishing the identity of -- if -- or existence of the person who claims to be Jessica Santiago.

**MR. FORTNEY:** Oh, well, we'll get there.

A. I'm sorry. What was the question?

BY MR. FORTNEY:

Q. What was your reaction when Mr. Maldonado called you?

A. What was my reaction? I -- I don't know, and I don't know that I had a reaction.

Q. The first call, did you agree to take his case?

A. No.

Q. Okay. Why not?

A. Because I don't agree to take cases. I agreed I would talk to him, and I would look at -- he asked me if I would look at his -- what he had, and I said I would.

Q. Okay. And what was it that he -- what subject matter did he want you to investigate?

A. He was -- I -- I guess claims against Mr. Buzbee would be the easiest way to put it.

Q. For what?

A. For fraudulently signing checks written to Mr. Maldonado and depositing them into an expense account rather than a trust account for --

THE WITNESS: I mean, do I keep --

MR. COSTA: (Nods head affirmatively.)

A. For -- for fraudulently drumming up medical expenses, for sending him to pre-selected doctors, for using finance companies, for loaning money at a usurious rate to his own clients. There are -- there were a lot of issues.

BY MR. FORTNEY:

Q. Okay. Were you a- -- had you been informed by anyone else that Mr. Maldonado or persons like him would be contacting you?

MR. COSTA: I'll -- I'll object as beyond the scope. I mean, I haven't objected every time, but it -- it's just not related to my understanding of this deposition about the identity, existence, and location of the supposed Jessica Santiago.

MR. FORTNEY: I'm entitled to a handful of foundational questions, and this is as specific as I can get. These are the two Plaintiffs in these two cases, and I'm entitled to know how they met Ms. Croft and what Ms. Croft might have known about them

before she spoke with them.

MR. COSTA: Well, I -- again, I -- it may be of interest to the case generally. I don't think it's of interest -- or relevant to the jurisdictional question before the Court that was the basis for the -- the deposition.

I don't know if we need to -- maybe we need to request a ruling from the Court.

MR. FORTNEY: Your Honor, are you there?

BY MR. FORTNEY:

Q. Okay. I'll move on briefly and come back to that.

Were you surprised to receive Mr. Maldonado's call?

MR. COSTA: Objection. Form.

You can answer.

A. No.

BY MR. FORTNEY:

Q. Why not?

A. I'm just not surprised to receive any call I get.

Q. Okay. From a random Texan to a Mississippi attorney about a Texas matter, you

weren't surprised about that at all?

A. No.

MR. COSTA: Objection. Form.

BY MR. FORTNEY:

Q. Okay. After he had an initial consultation with you that first call, what did you do? Did you research his claims?

MR. COSTA: I'll -- I'll object as beyond the -- now -- I mean, now we're really beyond the scope of -- of any jurisdictional inquiry relevant to Santiago.

MR. FORTNEY: Okay. Let's -- let's do it this way.

Okay. This will be 2.

(Exhibit No. 2 was marked for identification.)

BY MR. FORTNEY:

Q. Okay. If you can just review this and let me know when you've had a chance.

MR. FORD: I'm sorry, Counsel. What is Exhibit 2?

MR. FORTNEY: Exhibit 2 is an affidavit of Jose Maldonado. It's dated April 1st, 2025.

MR. FORD: Thank you very much.

MR. FORTNEY: You're welcome. I have an extra copy, Rob.

MR. WILLIAMS: Slide it. Thank you, sir.

BY MR. FORTNEY:

Q. Okay. Have you read it?

A. Yeah.

Q. Okay. Exhibit 2, as I just said, is an affidavit of Jose Maldonado dated April 1st, 2025. I'll direct your attention to Paragraph 2 where it says, In December 2024, I lived with my parents in Pasadena, Texas. My father is also named Jose Maldonado. Early in the week of December 16th, 2024, two individuals, a man and a woman, went to my house and asked to speak to Jose Maldonado. My father spoke with them before realizing that they wanted to speak with me.

Paragraph 3, I won't read it all, but his father gave him a number to call to contact the investigators.

No. 4, he called the number for the investigators the next day, and the investigators asked if he had been represented

by the Buzbee Law Firm in a lawsuit against Callan Marine.

Do you see that?

A.   Yes.

Q.   Was his call to you regarding a lawsuit about Callan Marine -- against Callan Marine?

MR. COSTA:  Objection.  Form.  And objection.  Beyond the scope of the identity of Santiago.

MR. FORTNEY:  Just asking.

MR. COSTA:  I'll -- I'll instruct her not to answer.

MR. FORTNEY:  Okay.

BY MR. FORTNEY:

Q.   What --

MR. FORTNEY:  We are going to have to get the judge on the phone at some point soon if I'm not even allowed to ask if the initial call to Ms. Croft was about Callan Marine, all right, or his lawsuit against Callan Marine.  I mean, these are -- these are the Plaintiffs, and this woman -- a man and a woman -- that woman is who we contend is Jessica Santiago, so --

MR. COSTA: Right. And -- and I think you can ask any questions you want about any knowledge of that woman, but I don't -- I don't see what the -- the subject matter of the discussions between Maldonado and Croft have to do with whether Ms. Croft knows Santiago, knows where she lives, knows if she's a real person, etc.

BY MR. FORTNEY:

Q. Paragraph 6, directing your attention to that, Mr. Maldonado signed a contract for le- -- which I understood to be for legal representation.

Is that the contract with you, if you know?

MR. COSTA: Objection. Form.

A. He signed an engagement letter with me.

BY MR. FORTNEY:

Q. Okay. How did he get the engagement letter?

A. I sent it.

Q. Okay. By e-mail?

A. I don't know.

Q. Okay. So if I were to get your

e-mails from this time period to Jose Maldonado, would an engagement letter appear in them?

A.   I don't know.

Q.   Did you perhaps e-mail it to someone else --

MR. COSTA:  I'll --

BY MR. FORTNEY:

Q.   -- to give to --

MR. COSTA:  I'll --

BY MR. FORTNEY:

Q.   -- Jose Maldonado?

MR. COSTA:  I'll object to the scope. I mean, I just -- I just don't see what -- it's -- it's like fishing for -- for general discovery.  I don't see what this has to do with the remand motion that the Court is trying to decide and wanting very limited discovery to -- to help it decide.

BY MR. FORTNEY:

Q.   Let's go on to the next --

MR. FORTNEY:  Well, she's already stated twice, I believe, that she doesn't know who Jessica Santiago is.

MR. COSTA:  Right.

MR. FORTNEY:  And I'm entitled to ask

questions because I don't believe her, so --

MR. COSTA: Well --

MR. FORTNEY: -- you know --

THE COURT: Well, Counsel, I think -- can you-all hear me?

THE WITNESS: Yes, sir.

MR. FORTNEY: Yes, Your Honor.

MR. COSTA: Yes, very well.

THE COURT: Okay. Okay. I -- I'm going to let you -- I have an -- I have an opinion on what's going on, but I'd like -- I'll let you see if you can resolve it, and if you need my help, ask for it.

MR. FORTNEY: Thank you, Your Honor.

BY MR. FORTNEY:

Q. Let's go further down in Paragraph 6. After he had signed the engagement agreement which was presented to him, they handed the phone -- they -- after I signed the contract -- this is what he says: After I signed the contract, they called Mar- -- they, referring to the two investigators, the man and the woman, called Marcy Croft and told her that I had signed up.

Now, do you recall receiving that call?

A. No.

Q. If I were to check your phone records on December the 16th, 2024, I wouldn't necessarily find a call after 7 p.m. from some unknown number that's not Jose Maldonado's?

A. I'm sorry. If you checked my phone records from December 16th --

Q. -- 16th --

A. -- would there be a call --

Q. 2024.

A. -- from an unknown number after 7 p.m.?

Q. Well --

A. No.

Q. -- not from Jose Maldonado.

MR. COSTA: Object to the form.

A. I -- I don't know.

BY MR. FORTNEY:

Q. Okay. You have no recollection of answering the phone and speaking to investigators before being handed over to Jose Maldonado.

Is that your testimony?

MR. COSTA: Objection. Form. Asked and answered.

You can go ahead.

A.   Can you ask it again?  I'm sorry.

BY MR. FORTNEY:

Q.   You have no recollection of receiving a phone call from two investigators and then being handed over to Jose Maldonado?

A.   No.

Q.   So your testimony is that Jose Maldonado called you directly?

MR. COSTA: Objection.  Form.

A.   I -- I don't -- I don't remember.  I mean, you're -- you're asking me for something that I just don't -- I don't know.

BY MR. FORTNEY:

Q.   Okay.

A.   I -- I mean, I don't know.

MR. FORTNEY:  Can I have ask a very general question that...

BY MR. FORTNEY:

Q.   How many -- how many people like Jose Maldonado with claims against Mr. Buzbee have called you out of the blue?

MR. COSTA:  I'll object to that.

Beyond the scope of determining Santiago's existence, identity, or residence. And instruct not to answer.

BY MR. FORTNEY:

Q. So when he says, They handed the phone to me, and I spoke with Ms. Croft, answering many of the same questions about my case that the investigators had asked me, you don't recall that, or is that just because you thought Jose was calling you directly?

A. I don't -- I don't recall what -- what are you asking me?

Q. Asking many of the same questions -- strike -- strike all that.

He says in the last sentence of Paragraph 6, Ms. Croft also made it seem as if Mr. Buzbee had stolen money from me.

Do you recall telling Mr. Mal- -- Maldonado that?

A. No. I wouldn't have -- no.

Q. Do you recall telling him, Welcome to my law firm, or, Welcome to the case?

A. No.

Q. Do you recall telling him that you were assembling a larger case of clients with

claims against Mr. Buzbee?

A. No.

Q. So when he says that two investigators called you and handed him the phone, your testimony today is that you have no idea what he's talking about; is that correct?

MR. COSTA: Objection. Form.

A. That -- is my testimony I have no idea what he's talking about?

BY MR. FORTNEY:

Q. Yes.

A. My testimony is what it is. Like, I -- I've tried to answer every question you've, you've asked.

Q. Is your testimony that you do not recall speaking to investigators or that you did not speak to investigators?

MR. COSTA: Objection. Form.

A. When?

BY MR. FORTNEY:

Q. In connection with Jose Maldonado's first call to you.

A. In connection --

MR. COSTA: Objection. Form. Is there a date for the call or --

A. -- with Jose Maldonado's --

MR. FORTNEY: December 16th.

A. -- first call -- I -- my testimony -- I think this is where you're go- -- my testimony is that this recitation in Paragraph 6 does not -- I do not remember that. That is not my recollection. That is not my recollection of my conversations with him.

BY MR. FORTNEY:

Q. Okay. In what way does this not comport with your recollection of your conversation -- your initial conversation with Mr. Maldonado?

A. I mean, I would not have used the language that's in that last sentence. That's not anything I would have ever said.

Q. Okay.

A. It does not match my recollection of these events at all.

Q. Okay. And you -- you deny that you -- okay. Hold on a second.

Did you have any conversations with any person prior to Jose Maldonado's call to you about Mr. Maldonado?

MR. COSTA: And I'll -- I'll object to

that as beyond the scope of determining the identity, existence, residence of the person claiming to be Jessica Santiago on the transcript or the video and instruct her not to answer.

BY MR. FORTNEY:

Q. Do you recall receiving -- how many times did you speak to Mr. Maldonado?

A. Two or three.

Q. Okay. Over the course of how many days?

A. Four, maybe.

Q. Okay. Did you have any text strings with him, text messages back and forth?

A. I don't know.

Q. Okay. Did you receive any e-mails from him?

A. I don't -- maybe.

Q. Okay. Did you send him any e-mails?

A. I don't know.

Q. Okay. How would you normally get an engagement letter to Mr. Maldonado?

A. How would I --

MR. COSTA: Objection. Form.

BY MR. FORTNEY:

Q.   You have a copy of the engagement letter; is that correct?

A.   Yes, I assume.

Q.   Okay.

A.   Yeah.

Q.   Do you recall whether or not Mr. Maldonado and you first spoke on December the 16th or not?

A.   I don't know.

Q.   Okay.  Do you recall seeing a message from Mr. Maldonado that he no longer wanted to pursue a case against Mr. Buzbee?

A.   I got a message that he sent to my general e-mail that said that he no longer wanted to retain my services.

Q.   Okay.  And that, to your general e-mail, would have -- would that have come through your website?

A.   I don't know.

Q.   Okay.  Did you ever get a list from any investigative agency or service of clients of Mr. Buzbee's with Mr. Maldonado's name on it as having potential claims against Mr. Buzbee?

MR. COSTA:  I'll object as beyond the scope, again, of who Santiago is, where she

resides, etc., and instruct not to answer.

BY MR. FORTNEY:

Q.   Did Mr. Maldonado tell you how he decided to reach out to you?

A.   I don't know.

Q.   Did he tell you --

A.   I don't remember.

Q.   -- that he was referred by anyone in particular?

A.   That he was ref- -- no.

Q.   And earlier, I know that you said that you weren't surprised by any call you receive.

A.   (Nods head affirmatively.)

Q.   But were you curious at all as to why Mr. Maldonado had chosen you to provide services to him?

A.   No.

Q.   Okay.  You didn't ask him?

A.   No.

Q.   Let's see.  Are you familiar with Gerardo Garcia?

A.   I know the name.

Q.   Okay.  How do you know the name?

A.   He sued me.

Q.   Okay.  Have you -- at any point prior

to that lawsuit, had you spoken with Mr. Garcia?

A. No.

Q. At any point prior to that lawsuit, had you reached out to Mr. Garcia?

A. No.

Q. Okay. So you had -- when he sued you, was that the first time that you knew who Mr. Garcia was, heard of Mr. Garcia?

MR. COSTA: I'll -- I'll object to the scope. I mean, we went through all these questions about her and her interactions with Maldonado, and now we're getting into Garcia, who she didn't interact with, and, again, I just don't see the relevance to the questions about Santiago that this is supposed to be focused on, so I'll instruct her not to answer.

MR. FORTNEY: Okay. Let's see. Let's do this as Exhibit 3.

(Exhibit No. 3 was marked for identification.)

BY MR. FORTNEY:

Q. If you could review this, Ms. Croft, and let me know when you're finished.

MR. COSTA: I've never seen a date for

the call being recorded on the first page.
Do you have that? I mean --

MR. FORTNEY: I --

MR. COSTA: -- the tran- -- there's a
date for when it was transcribed, but I
don't see a date for when the recording
took place.

MR. FORTNEY: I don't, but I can try
to get that. Let me see. (Doing same.)

BY MR. FORTNEY:

Q. Have you reviewed that?

A. Uh-huh (affirmative).

Q. Okay. I will say I have the video for
this call if you would like to see it, and it's
in Spanish. I don't know if you know Spanish,
but I'm -- I'm happy to show the video if you'd
like.

Okay. At the end of this recording,
on page 7, lines 15 through 18, do you see that
the person on the other line with Mr. Gerardo
Garcia identifies herself as Jessica Santiago?

MR. COSTA: And I'll just state, you
know, we've received the video finally.
It -- the video cuts off the beginning of
this. There's no date for when this video

was taken.  The video of the person claiming -- the number of the person claiming to be Santiago, the video shows, is from California area code, which raises issues about consent.  So, you know, we have a lot of concerns about the authenticity, legality of the recording, etc., but she can answer those -- the question you just posed.

A.   What was the question?

BY MR. FORTNEY:

Q.   Do you see that on page 17 -- 7, lines 15 through 18, the caller identifies herself -- the caller on the line with Gerardo Garcia identifies herself as Jessica Santiago?

A.   Lines 15 through 18 on page 7 indicate that.

Q.   Okay.  The beginning portion of this transcript refers a lot to a lawyer, right, doing an investigation of what Buzbee's doing.  And then page 5, line 1 -- well, no, let's start page 4, line 22, the woman who identifies herself as Santiago says, Uh, I'm going to show you a document from the lawyer that shows her firm, where it is located, and everything is

going to be explained in that document. You'll be able to read it, and then I'll be able to contact the lawyer. Her name is Marcy Croft from MGT Legal, which I assume is MJ Legal, and she'll explain more to you over the phone.

Reading that, do you have any idea who the woman talking to Gerardo Garcia is?

A. No.

Q. Do you have any clue why a woman talking to Gerardo Garcia would identify you and your law firm as a lawyer that can help Mr. Garcia with a claim that he has against Mr. Buzbee?

A. No.

Q. Okay. Your -- is it your testimony that you never received any calls from this woman who identifies herself as Jessica Santiago?

A. Is my testimony I never -- I -- that's correct.

Q. Okay. Did you ever receive any communications from anybody about Mr. Garcia before he filed the lawsuit against you?

MR. COSTA: And I'll object to that as beyond the scope of Santiago's identity and

citizenship and instruct not to answer.

MR. FORTNEY: I think we need the judge on that one.

Your Honor?

The date of if call, by the way, was December 17th, 2024.

MR. COSTA: Thanks.

MR. FORTNEY: Sure.

MR. FORD: While we're waiting for the -- for His Honor, could I trouble you to read back that last question?

THE STENOGRAPHIC REPORTER: Uh-huh (affirmative).

(THE REPORTER READ THE REQUESTED MATERIAL).

MR. FORD: Thank you so much.

THE STENOGRAPHIC REPORTER: You're welcome.

THE COURT: Sorry, Counsel. I'm having problems with my headset. Can you guys all hear me?

MR. FORTNEY: Yes, Your Honor.

MR. COSTA: Yes, Your Honor.

THE COURT: Okay. Great. So I need a -- a motion, and I will -- or a specific

request for relief, and then I'll roll on that request for belief -- for -- for relief.

**MR. FORTNEY:** Okay.

**THE COURT:** Because I don't want to interfere with your deposition.

**MR. FORTNEY:** Understood, Your Honor. Understood, Your Honor.

I guess it's my request.

Your Honor, I am asking Ms. Croft about a transcript of a phone call made to Gerardo Garcia on December the 17th, 2024, by a woman who identified herself as Jessica Santiago.

**THE COURT:** Okay.

**MR. FORTNEY:** And in that call, as reflected in the transcript, she indicates that she's going to show Mr. Garcia a document about, it seems like, potential representation, and then he'll be able to contact the lawyer. Her name is Marcy Croft from -- it says, MGT Legal, but I'm assuming that's a typo and that it's MJ Legal, and, quote, She'll explain more to you over the phone.

And I am asking Ms. Croft if she -- she denies receiving any call from a woman identifying as Jessica Santiago, and I'm asking her if she had received any communications regarding Gerardo Garcia prior to the date that Mr. Garcia filed suit because Ms. Croft recently testified that she did not know who Mr. Garcia was until he sued her.

**THE COURT:** Okay.

And, Counsel, response?

**MR. COSTA:** Yes, Your Honor. So he's used this transcript, which, like I said, we have a lot of concerns about the authenticity and accuracy of the transcript. For example, I mean, it says -- its own words say, Marcy Cross, MGT Legal, neither her name nor her law firm's name.

But on the scope of the question, he asked a number of questions. Did she know Santiago? Did he [sic] know a female investigator? She answered all of these those. I see the relevance of all those to the Court's inquiry about Jessica Santiago

and how that affects the remand motion.  Is this Defendant who is named in the suit a real person?  Is she a Texan, which would obviously affect the jurisdictional issue?  And whether the -- Ms. Croft has had discussions with anyone else about Mr. Garcia has no relevance to who Jessica Santiago is and whether she resides in Texas, which are really the only issues that are relevant to the remand motion.

**THE COURT:**  Okay.  So what I was trying to figure out is how the answer to that question gets to whether this person is or is not real and -- and/or whether the person resides in Texas.  I'm not sure I get the connection between the que- -- that question as to who she talked to related -- how that question relates to the jurisdictional question.

So can you kind of walk me through what you expect her answer to be and how it relates?  Because that was the disconnect for me.

**MR. FORTNEY:**  Sure, Your Honor.  And I -- I suppose that one of the issues is

that we don't know if Jessica Santiago is simply a false name for someone else, right, who might have contacted Ms. Croft in a -- in an -- in another name, in a real name, right? But we have no doubt that -- that the -- there was a woman speaking on the other end of this telephone and that she knew Ms. Croft's name and law firm. And I -- I think we're -- we're simply entitled to know whether or not any information about Mr. Garcia was given to Ms. Cross -- Croft at any -- at any point in time in December because tracing the source could help us identify the person if, in fact, Ms. Santiago is going by a false name or, you know, Ms. Santiago is working with someone else. You know, we're en- -- we're entitled to see who else might have been involved in this -- in this conversation, I believe.

THE COURT: But -- but the question you asked is, did you have any conversations anyone else, and -- and I'm just trying to figure out how conversations with anyone else tells you anything about

Ms. Santiago.

MR. FORTNEY: Well, I suppose I phrased it that broadly only because Ms. Croft denied having any knowledge whatsoever of Mr. Garcia prior to being sued by him, and --

THE COURT: Okay.

MR. FORTNEY: -- and, you know, maybe -- why don't I just introduce another --

MR. COSTA: Your -- your Honor, I would -- I would just add, I mean, we -- I think he asked a question we didn't object to, do you know any female investigator, right. I mean, he could ask, do you know a Spanish-speaking female investigator from Texas? I mean, all those I -- I understand how those could be relevant to the identity of the person claiming to be Santiago, but I think as -- as broadly as it's being worded now and as a number of the questions have been, it's -- it's really just trying to get discovery into the merits of the case about what Ms. Croft told, you know, Mr. Maldonado, whether she had interactions

with Mr. Garcia, etc.  It's just -- I mean, the whole case is -- is becoming fodder for the questions.

**THE COURT:** Okay.  Yeah, I'm -- I'm -- respectfully, I agree with counsel.  I just don't see how finding out who she spoke with gets you information -- jurisdictional information.  I -- I'm just trying to figure out -- well, I'm -- I'm going to listen some more --

**MR. FORTNEY:** Well --

**THE COURT:** -- but respectfully, I'm not -- okay.  Can you walk me through it?

**MR. FORTNEY:** Sure.  Why don't I introduce one more exhibit, and we'll just see what Ms. Croft's answer is, and maybe that will --

**THE COURT:** Okay.

**MR. FORTNEY:** -- lead me to something here.

This will be Exhibit 4.

(Exhibit No. 4 was marked for identification.)

**A.** Thank you.

**THE COURT:** I mean, I clearly see why

you want to get an answer to that question. I'm just trying to figure out how the answer to that question -- I mean, in the bigger scheme of things, I mean, in terms of the case, yes, but how the answer to this question relates to the jurisdictional issues that I kind of said that would be the subject of the -- the deposition -- so...

**MR. FORTNEY:** No. And I understand, Your Honor. I'm just trying to find out why someone on the phone with Ms. Croft -- I mean, with Gerardo Garcia knew who Ms. Croft was, and, you know, that's -- we -- we don't know anything about her other than this name that may or may not be true.

**THE COURT:** Okay.

BY MR. FORTNEY:

**Q.** Ms. -- Ms. Croft, let me ask you -- this is Exhibit 4. This is a screen shot of a transcribed voice mail.

Is that your phone number, (601)259-500- -- 5708?

**A.** Yes.

Q. Okay. And do you recall leaving a voice mail on or around December 19th for Gerardo Garcia?

A. For Mr. Garcia?

Q. Yes.

A. No.

Q. Okay. This -- this screen shot is from Mr. Garcia's phone.

A. That's Mr. Martin, it says?

Q. No. It -- it actually says, Ma- -- Maldonado. You -- you were intending to leave a message for Mr. Maldonado, I believe, but this came from Mr. Garcia's phone, and I'm wondering how you got Mr. Garcia's number.

MR. COSTA: Objection to the form. I mean, it's not been established whose number it is or -- the voice mail says, Mr. Martin.

BY MR. FORTNEY:

Q. So you -- you do not --

A. So it's --

Q. What's that?

A. Go ahead.

Q. You do not have any recollection of calling Mr. Garcia?

A.   No.

Q.   Okay.  You have no recollection of texting Mr. Garcia?

A.   Texting Mr. Garcia?

Q.   Uh-huh (affirmative).

A.   No.  Do you know his number?

Q.   I do.

A.   No, I do not.

Q.   Let's see.  So you don't recall from whom you would have received his contact information at all?

A.   Whose --

MR. COSTA:  I'll object based on the -- the same objection, that it's not directly related to the existence, identity, or residence of the supposed Jessica Santiago.

MR. FORTNEY:  Okay.

Your Honor, I would like to, if I could --

THE COURT:  I'm sorry.  I'm still here.

MR. FORTNEY:  Sure.  Okay.  I would like to revisit a -- a question that I had asked at the very beginning on foundational

matters to which Mr. Costa objected, and I agreed to just come back to it later, but I would -- I would like to ask Ms. Croft two just basic foundational questions as to whether or not she's been involved with any investigation of claims against Mr. Buzbee.

THE COURT: Okay. That's way too broad. I mean, way too broad. I'm -- I -- I heard that discussion. I mean, what we're trying to find out is, you know, the jurisdictional issues as set out in the last hearing. I'm still struggling to figure out how -- what Ms. Croft -- who Ms. Croft ever talked to about Mr. Garcia is relevant to the existence of the Defendant in this -- I mean, the purported Defendant in this case. I'm still -- I don't -- I don't get that yet, and -- and I thought it would be more clear by listening, but I -- I'm -- can you kind of walk me -- kind of explain to me why anything that anyone that Ms. Croft talked to about Mr. Garcia is relevant to the jurisdictional issues in this case. Just kind of break it down for me because I want

to understand.

MR. FORTNEY: Well, on one -- on one hand, it's because if -- if Ms. Croft does not know the -- the identity of Ms. Santiago, then perhaps other people who have been in contact with Ms. -- Ms. Croft about these two particular Plaintiffs would because these two particular Plaintiffs met a woman, right, a -- a -- a -- a short woman who spoke Spanish and went by the name of Jessica Santiago who knew Marcy Croft's name and gave that name to both of the Plaintiffs. And --

THE COURT: Okay.

MR. FORTNEY: And that's -- that's the real issue is why would two random Texas citizens be approached by a woman going by Jessica Santiago who would thereafter refer to Ms. Croft? That's -- and -- and -- and, you know -- and -- and -- but since, she has vanished into the either, right? So I don't -- I don't know exactly how else to proceed here except by either asking about who else might be in this, you know, web of communication or chain of communication, or

I can, you know -- I -- I -- I guess I could make a -- a discrete request for phone records and e-mails from those days, but -- there's only, like, a five-day period here that we're talking about, but, you know...

**THE COURT:** Okay.

**MR. FORTNEY:** I can tell -- I can tell Mr. Costa that the 707 number is a burner phone, so, you know --

**MR. COSTA:** The --

**MR. FORTNEY:** -- that --

**MR. COSTA:** The --

**MR. FORTNEY:** -- that -- that does not do us any good.

**MR. COSTA:** The California area code?

**MR. FORTNEY:** The California area code.

**MR. COSTA:** Right. Uh-huh (affirmative). Which we didn't know it was a California area code until we got the -- the recording, but --

**MR. FORTNEY:** Napa, yeah.

**MR. COSTA:** Your Honor, I think this just sho- -- I mean, first of all, it shows

that they really have no idea about Jessica Santiago's identity, existence, residence, but it also -- I mean, it's just -- it's just asking for discovery and then more discovery. I mean, this is -- this, you know -- they -- are they going to ask other people, other parties in the case about Jessica Santiago or whether they know someone who might know her? It's just -- it's just, I think, spiraling well beyond what at least I understood the Court's very narrow discovery in this discovery in this deposition to be.

**MR. FORTNEY:** Well, and, again, the reason why Ms. Croft is sitting here is because she was the i- -- i- -- i- -- individual identified by Jessica Santiago on two separate occasions. That's why. So obvious- --

**THE COURT:** And I -- I get -- I get that. I'm -- I'm just trying to figure out how -- based on the answers you were -- have been given, how you can get the information that you're trying to get, which is whether or not Jessica Santiago's

a real person and where she lives, and I'm just trying to figure how --

MR. FORTNEY: I mean, we would request phone records for five days to see if any of these phone numbers called Ms. Croft.

MR. COSTA: And -- and --

THE COURT: Okay.

MR. COSTA: -- you know, we would obviously object to -- this is narrow discovery. You know, each request is just going to lead to one more discovery request when we're in a motion to remand situation, full discovery hasn't started, and they've done -- they've done -- they have to make a showing of Jessica Santiago, that she's real, that she resides in Texas. They've done nothing to refute our declaration from a separate person that there is no Jessica Santiago registered as an investigator in Texas. We now know the phone this Jessica Santiago was using has a California area code, which we did not even know before, which further refutes the notion that she's a Texas -- or even, they said, Harris County resident. So --

**MR. FORTNEY:** That's a -- that's a burner phone, and it's no longer in service, and a burner phone can be with any area code. That doesn't show anything of the sort, but --

**MR. COSTA:** Well, it certain- -- it certainly doesn't show she's a Texan, but...

**MR. FORTNEY:** No, it doesn't. We have -- we have reason to believe that she is not, you know, necessarily using her true name, but we also have plenty of reasons to believe that she contacted Ms. Croft. So Ms. Croft has denied receiving any calls from any investigators named Jessica Santiago or otherwise with regard to Mr. Garcia or Mr. Maldonado, and I would just submit that from December the 16th through December the 20th, in the time period when this would have happened, if we see her phone records and compare those to phone numbers that we know might be associated with the investigators, that would -- that would answer the question, and we adjourn the deposition until I can

ask two more questions after those records.

THE COURT: Okay. But -- but all that tells you is which investigators she spoke with. It doesn't tell you anything about Jessica Santiago. I mean, you know, it -- who she -- well, other investigators she spoke with isn't the subject of this dep- -- deposition. I mean, she could have talked to a whole bunch of people. I mean, that's discovery for the -- the case in chief. It doesn't have anything to do about -- with whether or not Jessica Santiago exists unless you had a number that you knew belonged to Jessica Santiago and you wanted to see if that number appeared on her list. If you've got that information, then I will consider it. If you have a number that you believe is -- that belongs to Jessica Santiago, I will order Ms. Croft or Mr. Costa to check their records and see if that number appears in their phone records. If it does, then -- then they need to turn that over for you --

MR. FORTNEY: Okay.

THE COURT: -- because that's relevant

to finding out who she is and whether or not she exists or what -- what's going on here. But just to get all of her records just to look and see who she's been talking to about Mr. Garcia, that doesn't get -- that doesn't get you what you need. It -- it's more in line with what the discovery would be for the case in chief.

So, I mean, if you -- do you have a number that you believe that she was using?

**MR. FORTNEY:** Yes, I do.

**THE COURT:** Okay. And, Mr. Costa, is it possible -- I -- it seems like it would be possible for you to check and see if that number appears in your client's phone records, and if it does, then you need to figure out who that number belonged to, and then after that, then we can go -- take the next step. We can determine whether or not that belonged to, you know, Jessica Santiago --

**MR. COSTA:** Right.

**THE COURT:** -- or somebody else.

**MR. COSTA:** Right. Your Honor, I -- what they're claiming, I think --

Mr. Fortney can correct me if I'm wrong. What they're claiming is Santiago's number is what he just acknowledged is a burner phone with a California area code on it. So I don't think this is any phone registered to Jessica Santiago. If -- different people are probably using that burner phone. So I'm not -- I wouldn't call what we've heard so far Jessica Santiago's phone number.

MR. FORTNEY: No. That's --

THE COURT: Okay.

MR. FORTNEY: Well, that -- that may be true. I'll introduce Exhibit 5, which is a text to Gerardo Garcia from -- from Jessica Santiago with the 707 number just so that the record can reflect the number that we believe she is u- -- she was using.

The -- the point of seeing whether or not there was a call from that number to Ms. Croft is that, you know, maybe that would help Ms. Croft recall any other details about Ms. Santiago since Sin- -- Ms. Santiago, I believe --

THE COURT: Okay.

MR. FORTNEY: -- spoke with Ms. --
Ms. Croft numerous times, but --

THE COURT: Okay.

MR. FORTNEY: -- that's -- that's it.

THE COURT: Well, that number that
you're submitting, who -- where did you get
the number, and -- where did you get that
number from?

MR. FORTNEY: Sure.

THE COURT: I mean, where did the --
from a -- who do you think it belongs to?

MR. FORTNEY: I think it belong -- I
think that was the burner phone associated
with Jessica Santiago, and that was a text
to Gerardo Garcia asking him if he was
still --

THE COURT: Okay.

MR. FORTNEY: -- interested in moving
along with the case. And I actually -- I
have a -- I have a transcription of that,
too, which we can...

MR. COSTA: With the area code of the
California wine country, which further
shows why we're -- I mean, this -- the lack
of any plausible support for them claiming

this woman purporting to be Santiago is a Texas citizen, which, of course, is the sole jurisdictional issue.

**MR. FORTNEY:** Mr. Costa, my cell phone is a 415 area code from the Bay area. Like, it doesn't matter where --

**MR. COSTA:** But you used to --

**MR. FORTNEY:** I --

**MR. COSTA:** -- work in California, I believe.

**MR. FORTNEY:** I -- I -- I -- I certainly did, but that --

**MR. COSTA:** Right.

**MR. FORTNEY:** -- doesn't mean that she isn't a Harris County resident now, right? And it --

**MR. COSTA:** Yes. But --

**MR. FORTNEY:** It's also a --

**THE COURT:** I -- I --

**MR. FORTNEY:** -- a burner phone as we understand it.

**MR. COSTA:** But a burner would be --

**THE COURT:** I --

**MR. COSTA:** Go ahead. Go ahead, Judge.

THE COURT: Oh, no. I -- I get that. I mean, you can have an area code from anywhere, but I'm just trying to figure out what -- well, I'm -- let's just take a brief recess. I don't want to extend this too long, but give me about five minutes. I want to think this through because I want, Mr. Fortney, to get the information you need. I'm just trying to figure out how you get that because your questions don't seem to me to get you that information. I mean, finding out everybody that Ms. Croft talked to about Mr. Garcia, that's not the subject of the -- the jurisdictional discovery, I mean, and I'm trying to figure out how that would -- I mean, how that gets you what you need with respect to Ms. Santiago. I -- I just don't see it. I mean, your argument is, if we figure out everybody she's talked to, then maybe we can find other people who know Ms. Santiago. That -- that's like saying if I can talk -- find out everything that -- everyone that I ever talked to in the last, you know, five days, I might be

able to find, you know, a particular person. I mean, that seems way too broad to me, so let me think about it.

Ms. Croft, I know it's been a long afternoon for you. If you can just hold on --

**THE WITNESS:** Yes, sir.

**MR. COSTA:** -- just a little bit.

**THE WITNESS:** Yes, sir.

**THE COURT:** And I'll -- and I'll be right back.

**THE WITNESS:** Yes, sir.

**THE VIDEOGRAPHER:** Off the record. The time is 3:18.

(Exhibit No. 5 was marked for identification.)

(A recess was taken.)

**THE VIDEOGRAPHER:** Back on the record. The time is 3:59.

**THE COURT:** Okay. So I thought this through, and I'm sorry, I had another matter I needed to address just briefly during the break, but the question, I think, Ms. Croft that -- if you can answer that'll put an end to this discussion one

way or the other is: Did you -- between -- between the 16th and the 20th, did you have any conversations with a private investigator regarding Mr. Garcia? If you can answer that question, then I'll know where to go next.

THE WITNESS: Between the 16th and the 20th?

THE COURT: And the 20th.

THE WITNESS: Regarding --

THE COURT: And I think so --

THE WITNESS: -- Mr. Garcia?

THE COURT: Regarding Mr. -- regarding Mr. Garcia. I mean, are you -- do you know or --

THE WITNESS: I -- I don't know, Your Honor. I -- I mean, I -- I -- I -- I don't know. It --

THE COURT: Okay.

THE WITNESS: It's -- I don't know.

THE COURT: Well, I mean -- I mean -- I say, conversations. Did you have any telephone calls? I'm sorry.

THE WITNESS: Oh. Oh, okay.

THE COURT: Yeah, I'm sorry. That's

what I was trying to get at because Mr. Fortney is implying that -- that Ms. Santiago -- you spoke with Ms. Santiago between the 16th and the 20th --

THE WITNESS: Yes, sir.

THE COURT: -- or spoke to a Santiago during that time period who was a private investigator, so the -- seems like the easiest question is: Did you? And -- and he doesn't know if he's got the right person, so it seems like the question is: Did you speak with a private investigator between the 16th and the 20th? And Mr. Fortney also said that it was regarding Mr. Garcia, so it seems like the question is: Did you speak with any private investigator, and it's by telephone -- so private investigator by telephone between the 16th and 20th regarding Mr. Garcia?

THE WITNESS: Regarding Mr. Garcia. I don't -- no, I don't -- I don't think so, Your Honor. I -- I know for a fact --

THE COURT: Okay.

THE WITNESS: -- I didn't speak to -- to a woman at all.

THE COURT: Okay. Oh, that's -- I -- let's qualify it even more. Did you speak to a woman? Because who -- they're --

THE WITNESS: No, sir.

THE COURT: -- claiming that --

THE WITNESS: No, sir --

THE COURT: So --

THE WITNESS: -- I did not.

THE COURT: So the question is: Did you speak with a female investigator between the 16th and the 20th by -- by telephone regarding Mr. Garcia?

THE WITNESS: No, sir.

THE COURT: Okay. So, Mr. Fortney, where do we go from there? Because the question is: If Ms. -- you were trying to get to the question whether Ms. Croft spoke with anybody regarding Mr. Garcia during this time period. That's way too broad. I mean, your allegations are that there's a female private investigator that spoke to Ms. Croft between the 16th and the 20th. Let's -- and -- and you don't know really the name, and you don't have -- really have a -- a number for her other than it was a

burner phone, so it seems to me that the question is: Did Ms. Croft speak with a female private investigator between the 16th and the 20th regarding Ms. Garcia? And the answer is no.

THE WITNESS: No, sir.

MR. FORTNEY: Well, I -- I will say --

THE COURT: The --

MR. FORTNEY: I will say this, Your Honor: You know, Ms. San- -- Ms. Santiago, according to both Gerardo Garcia and Jose Maldonado, was with a man, so it -- you know, I don't know which one would have called Ms. Croft, if either did. I'm not sure that limiting this to a female making the phone call is enough to eliminate --

THE COURT: Well --

MR. FORTNEY: -- whether or not --

THE COURT: -- no, no, not eliminate the phone call. She spoke -- if Ms. Croft did not speak to a female investigator -- during --

THE WITNESS: I did not.

THE COURT: -- any phone call, did you speak with a female investigator between

the 16th and 20th by telephone regarding Mr. Garcia?

THE WITNESS: No, sir.

THE COURT: That's the question.

THE WITNESS: No, sir.

THE COURT: And if the answer is no, then that ends that line of discussion.

MR. FORTNEY: Okay.

THE COURT: Anything broader than that is beyond the scope of what I've ordered with respect to jurisdictional discovery.

MR. FORTNEY: Okay.

THE COURT: So that's it. I mean --

THE WITNESS: Yes, sir.

THE COURT: -- you can try to get at it another way, but that -- because what we know -- what we supposedly know from -- based on what everybody's telling me is that there was a conversation that Ms. Santiago had or was a party to. She spoke with Ms. Croft between the 16th and the 20th, and she --

MR. FORD: He's on mute.

MR. FORTNEY: Your Honor, you --

THE COURT: Oh, and she -- oh, got it.

And she's a female investigator.  That's pretty much the -- that's the scope of what we're looking at.

So, again, Ms. Croft, did you speak -- just to make the record clear, did you speak with a female investigator between the 16th and the 20th by telephone regarding Mr. Garcia?

THE WITNESS:  No, sir.

THE COURT:  Okay.  Then that's my ruling, and I'll get off and let you guys continue from there.

MR. FORTNEY:  Okay.

THE WITNESS:  Yes, sir.

MR. FORTNEY:  Thank you, Your Honor.

MR. FORD:  Thank you, Judge.

THE COURT:  No problem.  Thank you.

BY MR. FORTNEY:

Q.  Three minutes of cleanup questions.

Do you know of any pri- -- do you personally know of any private investigators fitting the description of a female who is short with blond hair anywhere in the country?

A.  No.

Q.  And you -- and did you speak to any

female persons holding themselves out to be investigators about either Mr. Garcia or Mr. Maldonado?

A. No.

Q. Let's see. If you can just look back at No. 5. Do you recognize that phone number --

A. No, sir.

Q. -- at the top of the text message?

And then just -- just to be clear, do you have any idea why a woman investigator speaking to Gerardo Garcia would have indicated that you would be a lawyer that could help him?

MR. COSTA: Ob- -- objection. Form.

A. Do I --

BY MR. FORTNEY:

Q. Do you have any idea why your name came up in --

A. Why --

Q. -- this transcript?

A. No.

Q. And your testimony is you had no further communica- -- no communications, whatsoever, with Mr. -- Mr. Garcia; is that correct?

A. That's correct.

Q.   Okay.

     MR. FORTNEY:  Okay.  I don't have any further questions.

     MR. COSTA:  No questions.

     MR. FORD:  No questions.

     THE VIDEOGRAPHER:  This concludes this deposition.  The time is 4:06 p.m.

     THE STENOGRAPHIC REPORTER:  Does anyone need a copy of the transcript?

     MR. COSTA:  Yes, we do.

     MR. FORD:  We'll take a copy as well.

     (Deposition concluded at 4:06 p.m.)