# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

MARCY CROFT,

    *Plaintiff,*

VS.

ANTHONY BUZBEE, ANTHONY BUZBEE, L.P. d/b/a THE BUZBEE LAW FIRM, and JOSE MALDONADO

    *Defendants.*

CIVIL ACTION NO. 3:25-CV-000422

## <u>PLAINTIFF MARCY CROFT'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS OR TO STAY</u>

# TABLE OF CONTENTS

STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS ........................... 1

LEGAL STANDARD ................................................................................. 5

SUMMARY OF ARGUMENT .................................................................... 6

ARGUMENT .......................................................................................... 7

    I.    Croft's Claims Survive Rule 12(b)(6) Scrutiny. ......................................... 7

        A.    Croft Plausibly Alleges Conspiracy. ................................................ 7

        B.    Croft Plausibly Alleges Defamation and Defamation Per Se. ........... 9

        C.    Croft Plausibly Alleges False Light. ................................................ 12

        D.    Croft Plausibly Alleges Intentional Infliction of Emotional Distress. ........................................................................................ 14

        E.    Croft Plausibly Alleges Negligent Infliction of Emotional Distress. ........................................................................................ 17

    II.    Dismissal Is Not Proper Under Rule 56 Because Genuine Disputes of Material Fact Remain. ................................................................... 18

    III.    The Court Should Not Abstain or Stay Under *Colorado River*. ................. 22

CONCLUSION ....................................................................................... 27

CERTIFICATE OF SERVICE ..................................................................... 29

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abu-Joudeh v. Schneider*,
954 F.3d 842 (6th Cir. 2020) .................................................................................. 19

*Am. Fam. Life Assur. Co. of Columbus v. Biles*,
714 F.3d 887 (5th Cir. 2013) ........................................................................ 23, 24, 26

*Am. Guarantee & Liab. Ins. Co. v. Anco Insulations, Inc.*,
408 F.3d 248 (5th Cir. 2005) ............................................................................. 23, 26

*Aptim Corp. v. McCall*,
888 F.3d 129 (5th Cir. 2018) .................................................................................. 22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................................. 5

*Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.*,
793 F. Supp. 3d 882 (S.D. Tex. 2025) .................................................................... 14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................ 5, 11

*Black Sea Inv., Ltd. v. United Heritage Corp.*,
204 F.3d 647 (5th Cir. 2000) ........................................................................ 23, 24, 26

*Boyles v. Kerr*,
855 S.W.2d 593 (Tex. 1993) ................................................................................... 17

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ................................................................................................ 12

*Cain v. Hearst Corp.*,
878 S.W.2d 577 (Tex. 1994) ................................................................................... 13

*Causey v. Sewell Cadillac-Chevrolet, Inc.*,
394 F.3d 285 (5th Cir. 2004) .................................................................................... 6

*Cooper Tire & Rubber Co. v. Farese, Farese & Farese Prof. Ass'n*,
423 F.3d 446 (5th Cir. 2005) ......................................................................... 6, 19, 21

*Davis v. Fort Bend Cnty.*,
765 F.3d 480 (5th Cir. 2014) .................................................................................. 21

*E.E.O.C. v. Palafox Hosp., Ltd.*,
188 F. Supp. 2d 680 (S.D. Tex. 2001) .................................................................... 26

**Page(s)**

*Erickson v. Pardus*,
 551 U.S. 89 (2007) ..................................................................................................... 8, 10

*Evanston Ins. Co. v. Jimco, Inc.*,
 844 F.2d 1185 (5th Cir. 1988) ........................................................................................ 25

*Gonzalez v. Gonzalez*,
 704 S.W.3d 54 (Tex. App.—Austin 2024, no pet.) ........................................................ 16

*GTE Sw., Inc. v. Bruce*,
 998 S.W.2d 605 (Tex. 1999) ........................................................................................... 14

*Guadalupe Garza v. Callan Marine, LTD*,
 No. 2020CCV-61002-3 (Nueces Cnty. Ct. at Law No. 3, filed July 17,
 2020) .................................................................................................................................. 2

*Guidry v. Buzbee*,
 No. 2:24-cv-02873 (E.D. La. filed Dec. 13, 2024) ...................................................... 2, 4

*Haire v. Bd. of Supervisors of La. State Univ.*,
 719 F.3d 356 (5th Cir. 2013) ..................................................................................... 19, 21

*Hays v. LaForge*,
 333 So. 3d 595 (Miss. Ct. App. 2022) ............................................................................ 13

*Hernandez v. W. Tex. Treasures Estate Sales, L.L.C.*,
 79 F. 4th 464 (5th Cir. 2023) ............................................................................................ 8

*Hodge v. Engleman*,
 90 F.4th 840 (5th Cir. 2024) ........................................................................................... 19

*Hogan v. S. Methodist Univ.*,
 595 F. Supp. 3d 559 (N.D. Tex. 2022), *reversed on other grounds*, 74
 F.4th 371 (5th Cir. 2023) ................................................................................................ 18

*Khoja v. Orexigen Therapeutics*,
 899 F.3d 988 (9th Cir. 2018) .......................................................................................... 18

*Klaxon Co. v. Stentor Electric Mfg. Co.*,
 313 U.S. 487 (1941) .................................................................................................. 12, 14

*Lexon Ins. Co. v. FDIC*,
 7 F.4th 315 (5th Cir. 2021) ............................................................................................. 19

*In re Lipsky*,
 460 S.W.3d 579 (Tex. 2015) .................................................................................. 9, 10, 11

*Lujan v. Defs. of Wildlife*,
 504 U.S. 555 (1992) ........................................................................................................ 18

**Page(s)**

*Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit,*
369 F.3d 464 (5th Cir. 2004) ............................................................................. 5

*Mitre v. Brooks Fashion Stores, Inc.,*
840 S.W.2d 612 (Tex. App.—Corpus Christi-Edinburg 1992, pet.
denied), *abrogated on other grounds by Cain v. Hearst Corp.*, 878
S.W.2d 577 (Tex. 1994) ................................................................................... 17

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
460 U.S. 1 (1983) .............................................................................. 22, 25, 27

*Murphy v. Uncle Ben's, Inc.,*
168 F.3d 734 (5th Cir. 1999) ........................................................................... 24

*O'Neal v. Bumbo Intern. Trust,*
959 F. Supp. 2d 972 (S.D. Tex. 2013) ............................................................. 13

*Parada v. Sandhill Shores Prop. Owners Ass'n, Inc.,*
604 F. Supp. 3d 567 (S.D. Tex. 2022) ....................................................... 23, 24

*Paschal v. Great W. Drilling, Ltd.,*
215 S.W.3d 437 (Tex. App.—Eastland 2006, pet. denied) .............................. 7

*Penthol LLC v. Vertex Energy Operating, LLC,*
2021 WL 3571274 (S.D. Tex. Aug. 12, 2021) ................................................ 23

*Quicksilver Res., Inc. v. Eagle Drilling, LLC,*
792 F. Supp. 2d 948 (S.D. Tex. 2011) ........................................................ 12, 17

*Wilkerson ex rel. Reel v. Allred,*
407 So. 3d 218 (Miss. Ct. App. 2024), *cert. denied sub nom. Wilkerson
v. Allred*, 406 So. 3d 772 (Miss. 2025) ......................................................... 17

*Rimkus Consulting Grp., Inc. v. Balentine,*
693 F. Supp. 2d 681 (S.D. Tex. 2010) ............................................................. 12

*Saucier v. Aviva Life & Annuity Co.,*
701 F.3d 458 (5th Cir. 2012) ........................................................................... 25

*Seigler v. Wal-Mart Stores Tex.,*
30 F.4th 472 (5th Cir. 2022) ........................................................................... 21

*Sheffield v. Bush,*
604 F. Supp. 3d 586 (S.D. Tex. 2022) ..................................................... 5, 6, 18

*Standard Fruit and Vegetable Co. v. Johnson,*
985 S.W.2d 62 (Tex. 1998) ........................................................................ 15, 16

*Taylor v. Charter Med. Corp.,*
162 F.3d 827 (5th Cir. 1998) ........................................................................... 18

# TABLE OF AUTHORITIES
## (*continued*)

**Page(s)**

*Tex. Refrigeration Supply, Inc. v. FDIC*,
   953 F.2d 975 (5th Cir. 1992) ........................................................................ 21

*Thompson v. Buzbee*,
   No. 2:24-cv-02827 (E.D. La. filed Dec. 9, 2024) ......................................... 2

*Thornbrough v. Columbus & Greenville R. Co.*,
   760 F.2d 633 (5th Cir. 1985), *abrogated on other grounds by St. Mary's
   Honor Ctr. v. Hicks*, 509 U.S. 502 (1993) ................................................. 10

*Torrington Co. v. Stutzman*,
   46 S.W.3d 829 (Tex. 2000) ......................................................................... 12

*Toyota Motor Co. v. Cook*,
   581 S.W.3d 278 (Tex. App.—Beaumont 2019, no pet.) ............................. 13

*United States v. Whitman*,
   665 F.2d 313 (10th Cir. 1981) .................................................................... 10

*Welding Techs. v. James Mach. Works, LLC*,
   2013 WL 1123852 (S.D. Tex. Mar. 18, 2013) ...................................... 22, 26

*Wright v. Honeywell Int'l, Inc.*,
   148 F.4th 779 (5th Cir. 2025) ..................................................................... 21

*Zoanni v. Hogan*,
   715 S.W.3d 47 (Tex. App.—Houston [1st Dist.] 2024, pet. filed) ............... 9

## Statutes

Tex. Civ. Prac. & Rem. Code § 51.014 ............................................................ 26

Tex. Civ. Prac. & Rem. Code § 73.001 .............................................................. 9

## Other Authorities

*Colorado River* Abstention Doctrine in the Fifth Circuit: The Exceptional
   Circumstances of a Likely Reversal, 64 Baylor L. Rev. 277, 299–300
   (2012) .......................................................................................................... 22

## Rules

Fed. R. Civ. P. 12........................................................................... 1, 5, 6, 10, 11

Fed. R. Civ. P. 56.................................................................................... 6, 19

Fed. R. Evid. 201 .................................................................................... 18, 19

Tex. R. Civ. P. 11 ............................................................................................ 25

**Page(s)**

**Treatises**

Restatement (Second) of Conflict of Laws § 6 ........................................................... 12, 14

Restatement (Second) of Conflict of Laws § 145 ....................................................... 12, 13

Restatement (Second) of Conflict of Laws § 146 ............................................................ 13

Restatement (Second) of Conflict of Laws § 151 ............................................................ 14

Restatement (Second) of Conflict of Laws § 153 ............................................................ 14

## STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS

In their Rule 12(b)(6) motion that reads more like a press release than a legal filing, Defendants attempt to rewrite Croft's allegations but fail to undermine their plausibility. Defendants' desire to leapfrog the pleading stage and jump right to arguing the facts is highlighted by their premature and meritless request for summary judgment—lodged nearly four months before the parties' scheduling conference and before any discovery. And their request for the rare application of *Colorado River* abstention does not have legs because, among other problems, the state suits involve different parties and different claims.

Because Defendants' motion ignores or debates the allegations in the complaint, it is important to summarize those allegations as they constitute the record at this stage. The complaint details how Defendants Anthony Buzbee, Jose Maldonado, and the Buzbee Law Firm have maliciously defamed, harmed, and intimidated Plaintiff Marcy Croft, a well-respected and distinguished Mississippi lawyer. Compl. ¶ 13, Dkt. 1. Defendants, working together, used social media and a written letter to falsely accuse Croft of criminal conduct, damaging her professional reputation and standing in the community. *Id.*

On December 17, 2024, Maldonado contacted Croft in Mississippi and told her that the Buzbee Law Firm—Maldonado's former counsel—had exploited him and mishandled client funds. *Id.* ¶¶ 19, 23. Maldonado asked Croft to evaluate his potential claims against the firm. *Id.* ¶ 19. Croft agreed to give Maldonado a free case assessment, advising him on the viability of his claims. *Id.* ¶ 20.

1

While assessing Maldonado's claims, Croft reviewed details about a case challenging the Buzbee Law Firm's financial practices: *Guadalupe Garza v. Callan Marine, LTD*, No. 2020CCV-61002-3 (Nueces Cnty. Ct. at Law No. 3, filed July 17, 2020). *Id.* ¶ 24. *Garza* involved allegations of unpaid, insufficient, or delayed maintenance payments to one of Buzbee's former clients. *Id.* Callan Marine found out that the Buzbee Law Firm told its clients that Callan Marine had failed to make necessary maintenance and cure payments. *Id.* ¶ 25. But according to Callan Marine, it had sent all the necessary maintenance checks to the Buzbee Law Firm, trusting that the firm would then send the checks to its clients. *Id.* Those checks never reached the clients. *Id.*

Callan Marine further contended that the Buzbee Law Firm had deposited the client maintenance checks into its own bank accounts at HomeTown Bank, raising concerns that client funds were improperly commingled or misused. *Id.* ¶ 26. These were not isolated incidents. Callan Marine's motion identified numerous deposits, including two instances in which checks made out to Jose Maldonado were deposited by the Buzbee Law Firm into its HomeTown Bank accounts. *Id.* ¶ 27.

This pattern of suspicious behavior involving Buzbee and his law firm extends beyond *Garza*. Two former clients sued Buzbee for breaches of fiduciary duty related to the mishandling of settlement funds. *Id.* ¶ 30. These lawsuits expose a pattern of unethical practices by Buzbee and the Buzbee Law Firm. And they also reveal the motive for Buzbee to attempt to entrap and defame Croft: Buzbee sensed that another lawsuit—whether from Maldonado or another former client—would have further exposed Buzbee and his firm's questionable handling of client finances. *Id.*

Shortly after Maldonado initially contacted Croft, Buzbee learned of Maldonado's solicitation and, desperate to control the narrative and defend his firm's reputation, enlisted Maldonado to assist in his campaign to preemptively undermine and silence Croft. *Id.* On December 19, 2024, two days after Maldonado contacted Croft complaining of Buzbee's exploitation, Croft and Maldonado spoke over the phone about his concerns. *Id.* ¶ 21. Consistent with the public allegations against the Buzbee Law Firm, Maldonado told Croft that he never authorized the firm to deposit his checks. *Id.* ¶ 29. Croft advised Maldonado that, although Buzbee and his firm likely had defrauded him, Maldonado had not provided enough evidence to pursue civil claims against them. *Id.* ¶ 21. While on the call, Croft sensed that someone else was with Maldonado and heard someone activate a recording device. *Id.*

Although Croft was unaware of it during the call, Maldonado had emailed Croft the day before, stating that her services were no longer needed. *Id.* ¶ 22. But Maldonado made no mention of his termination email during the next day's phone call with Croft. *Id.* After discovering this email, Croft stopped all work related to Maldonado. *Id.* But despite sending the termination email, Maldonado again contacted Croft in Mississippi on December 23, now stating that he had found additional documents for his case. *Id.* ¶ 23. Croft did not respond. *Id.* Shortly after this correspondence, she learned that Maldonado had partnered with Buzbee and his law firm in an attempt to entrap and defame her. *Id.*

Facing mounting lawsuits from all sides, Buzbee began his efforts to attack Croft. On December 18, 2024, the same day that Maldonado ended his relationship with Croft via email, Buzbee posted a series of falsehoods to his personal Instagram account, where he

has over 100,000 followers. *Id.* ¶ 32. For starters, Buzbee falsely claimed that Croft had committed the crime of barratry by hiring fake agents to illegally solicit clients. *Id.* ¶ 34. He then said that agents acting on Croft's behalf offered former Buzbee clients up to $10,000 to file frivolous cases against him. *Id.* ¶ 35. That too is a lie. *Id.* ¶ 36. Next, he falsely accused Croft of committing habitual illegal conduct, obstructing justice, and orchestrating a conspiracy. *Id.* ¶¶ 37–39. Finally, Buzbee accused Croft and others of engaging in intimidation tactics and participating in a "sloppy," "stupid," and "illegal" scheme. *Id.* ¶¶ 41–43. All these statements are falsehoods, designed to tarnish Croft's reputation and standing within the Mississippi legal community. *Id.* ¶¶ 44–45.

But Buzbee did not stop there. He expanded his campaign of lies on Instagram onto Facebook, where he again has thousands of followers. *Id.* ¶ 46. Buzbee began by repeating his previous falsehoods, posting a verbatim copy of his Instagram post on Facebook. *Id.* ¶ 47. He then made a second post, supplementing his previous defamatory statements with new ones. *Id.* ¶ 48. In this second post, Buzbee purports to quote from a secret recording between Croft's supposed agents and a former Buzbee client. *Id.* ¶ 49. Buzbee claims that the agents offered the client cash in exchange for suing Buzbee, purportedly stating, "We could get you paid," and, "We gave this kid 1,000 bucks to start yesterday." *Id.* Again, these statements have no basis in truth. *Id.* ¶ 50.

Finally, Buzbee turned his attention from social media to written letters. On December 19, 2024, Buzbee and his law firm sent former clients a letter on firm letterhead, further defaming Croft. *Id.* ¶ 52. The letter repeated many of the lies from Buzbee's social media posts. *Id.* ¶ 53. For instance, Buzbee accused "the lawyers that hire[d]" the

"investigators" of offering former clients as much as $10,000 to sue Buzbee. *Id.* ¶ 54. Like the social media posts, these statements are false and caused serious damage to Croft and her law practice. *Id.* ¶ 55.

Faced with relentless and baseless assaults on her personal character and professional credibility, Croft filed her complaint. She has sued Buzbee and the Buzbee Law Firm (together, "Buzbee") for defamation, defamation per se, false light invasion of privacy, intentional infliction of emotional distress ("IIED"), and negligent infliction of emotional distress ("NIED"). *Id.* ¶¶ 56–80. And she lodged a civil conspiracy claim against all Defendants. *Id.* ¶¶ 81–86.

## <u>LEGAL STANDARD</u>

A court may dismiss under Rule 12(b)(6) only if the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "In analyzing a 12(b)(6) motion, the court accepts all well-pleaded facts as true, viewing them in the light most favorable to the nonmoving party." *Sheffield v. Bush*, 604 F. Supp. 3d 586, 601 (S.D. Tex. 2022) (Brown, J.) (citing *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "The court's review is limited to the allegations in the complaint and to those documents attached to a motion to dismiss to the extent that those documents are referred to in the complaint and are central to the claims." *Id.* (citing *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004)).

In addition, in the rare circumstance that a motion to dismiss is converted to one for summary judgment, summary judgment may be granted only if, "mak[ing] all reasonable inferences in favor of the nonmovant," *Cooper Tire & Rubber Co. v. Farese, Farese & Farese Prof. Ass'n*, 423 F.3d 446, 456 (5th Cir. 2005), "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a).

## SUMMARY OF ARGUMENT

Defendants' motion fails on all fronts. Defendants move for dismissal under Rule 12(b)(6) on the basis that "two narratives" of the facts exist, and theirs is the true story. Defs.' Mot. Dismiss at 21, Dkt. 15. But the Court considers only the *nonmovant's* allegations at the Rule 12(b)(6) stage. Defendants' motion—which spends about 11 pages spinning their tale and only seven pages arguing plausibility—is about changing the story, not combatting its plausibility. Similarly, summary judgment at this early juncture is entirely unwarranted, particularly when no discovery has occurred and Defendants themselves recognize material factual disputes. Finally, Defendants ask the Court to abstain or stay the case until several of Defendants' state cases are resolved. That's a nonstarter. Defendants' state suits—which involve different parties *and* different claims— lack the essential abstention ingredient: parallelism. On top of that, not a single *Colorado River* factor supports abstention. The Court should deny Defendants' motion in full.

# ARGUMENT

## I. Croft's Claims Survive Rule 12(b)(6) Scrutiny.

### A. Croft Plausibly Alleges Conspiracy.

Croft adequately pleads her civil conspiracy claim against all Defendants because she has alleged all the elements: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Paschal v. Great W. Drilling, Ltd.*, 215 S.W.3d 437, 450 (Tex. App.—Eastland 2006, pet. denied).

As the complaint lays out, Buzbee, the Buzbee Law Firm, and Maldonado worked together "with a common purpose" to achieve the object of entrapping, defaming, discrediting, and harming Croft. Dkt. 1 ¶¶ 82–83. In furtherance of this goal, Defendants "concoct[ed] a fake solicitation for legal services." *Id.* ¶ 82. After Maldonado attempted to terminate services with Croft via the December 18 email, Buzbee had him renew communications with Croft about potential claims against Buzbee and his firm for financial fraud even though Maldonado had no intention of bringing these claims. *Id.* ¶¶ 21–23. After concocting this scheme, Buzbee spread lies about Croft through social media and a client letter, falsely accusing her of criminal misconduct, professional impropriety, and unethical behavior. *Id.* ¶¶ 83, 31–55. And these lies directly resulted in damages. They tarnished Croft's carefully cultivated reputation; they caused her emotional distress; and they lowered her professional standing in the Mississippi legal community. *Id.* ¶¶ 85, 88. That all adds up to a plausible conspiracy claim.

Defendants contend that "[t]wo competing narratives are presented here" and that *their* narrative is more plausible. Dkt. 15 at 20. This argument ignores the motion-to-dismiss standard, which requires the Court to accept the complaint's factual allegations as true and to construe all reasonable inferences in the light most favorable to Croft. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Hernandez v. W. Tex. Treasures Estate Sales, L.L.C.*, 79 F. 4th 464, 469 (5th Cir. 2023). Defendants want to skip straight to trial, asking the Court to weigh evidence and accept their narrative. That is improper. As described above, the complaint plausibly alleges that Defendants agreed to attempt to entrap Croft through a fake legal solicitation and then worked together to spread damaging lies about her through social media and a client letter. Dkt. 1 ¶¶ 82–84. That is more than enough to survive the pleading stage.

In a last-ditch effort, Defendants argue that Croft fails to plead an underlying tort for her conspiracy claim. They must have missed the allegation that Defendants conspired to defame Croft. *Id.* ¶ 82. Defamation is the underlying tort.

And contrary to Defendants' suggestions (at 20–21), Maldonado played a crucial role in the conspiracy. He was the bait. His feigned interest in pursuing claims against Buzbee is what opened the door to Croft being defamed by Buzbee and the Buzbee Law Firm. Dkt. 1 ¶¶ 23, 30, 82. Defendants therefore worked together to achieve their unlawful goal of defaming Croft and damaging her professional and personal reputation. Croft's conspiracy claim is adequately pleaded.

8

**B. Croft Plausibly Alleges Defamation and Defamation Per Se.**

Croft properly pleads defamation and defamation per se against Buzbee, having alleged "(1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages." *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015). "Defamatory statements are those that tend to (1) 'injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury' or (2) 'impeach any person's honesty, integrity, virtue, or reputation.'" *Zoanni v. Hogan*, 715 S.W.3d 47, 78 (Tex. App.—Houston [1st Dist.] 2024, pet. filed) (op. on reh'g) (quoting Tex. Civ. Prac. & Rem. Code § 73.001).

Buzbee repeatedly defamed Croft. On December 18, 2024, Buzbee posted numerous harmful falsehoods about Croft on his personal Instagram and Facebook accounts. Dkt. 1 ¶¶ 32–50. These posts falsely stated, for example, that Croft orchestrated an illegal scheme, hiring fake agents to offer money to former Buzbee clients in exchange for bringing frivolous lawsuits against Buzbee and his law firm. *Id.* ¶¶ 34–35, 37, 49. By making these posts on his Instagram and Facebook accounts, Buzbee willfully published the defamatory statements to his hundreds of thousands of social media followers. *Id.* ¶¶ 32–33, 46. Buzbee then continued his defamation campaign on December 19, when he repeated many of the social media posts' lies in a physical letter on the Buzbee Law Firm letterhead to his former clients, thereby re-publishing the false statements. *Id.* ¶¶ 52–54. These publications seriously harmed Croft, damaging her otherwise pristine personal and professional reputation. *Id.* ¶¶ 45, 50, 55, 88.

Contrary to Defendants' argument (at 21), Croft's allegations satisfy the intent element for defamation. A plaintiff like Croft who is not a public figure must show only that the publisher of the defamatory statements acted with negligence. *Lipsky,* 460 S.W.3d at 593. She need not prove that Buzbee published a defamatory falsehood with actual malice. *Id.*

Nonetheless, the complaint clears even that higher intent bar. It alleges that Buzbee "knowingly and willfully made multiple false statements" about Croft on December 18 and 19, both on social media and in print. Dkt. 1 ¶¶ 57–59. Buzbee had no basis in truth for his numerous statements about Croft. *Id.* ¶ 45. For example, he knew that Croft had told Maldonado he did not have a claim, which is irreconcilable with a barratry allegation. *Id.* ¶ 21. So Croft alleges not just negligence, but also knowledge and even willfulness on the part of Buzbee and his law firm. In any event, "intent is particularly within the province of the jury" and thus should not serve as the basis for dismissal at this stage. *United States v. Whitman*, 665 F.2d 313, 318 (10th Cir. 1981); *Thornbrough v. Columbus & Greenville R. Co.*, 760 F.2d 633, 641 (5th Cir. 1985) ("[D]eterminations regarding motivation and intent . . . are therefore peculiarly within the province of the factfinder."), *abrogated on other grounds by St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993).

Defendants again reiterate that "two narratives are presented by the facts" and urge the Court to accept theirs, rather than Croft's. Dkt. 15 at 21–22. Once again, that argument fundamentally misunderstands the Rule 12(b)(6) standard. The Court must accept the *nonmovant's* factual allegations as true. *Hernandez*, 79 F. 4th at 469. In this case, that means that *Croft's* version of the facts, as set forth in the complaint, must be taken as true

at this stage. And by Croft's account, Buzbee "willfully, maliciously, wantonly, and with reckless disregard for the truth" publicly spread numerous lies about Croft. Dkt. 1 ¶¶ 50, 55. Buzbee himself concedes that the facts laid out in the complaint "might give rise to an inference of malice or at least negligence"—implicitly agreeing that Croft's pleadings meet the Rule 12(b)(6) standard. Dkt. 15 at 21.

Defendants again miss the mark in asserting that "Croft has not adequately pleaded her damages." *Id.* at 22. For starters, Croft does not need to allege damages for her defamation per se claim. "Defamation per se refers to statements that are so obviously harmful that general damages, such as mental anguish and loss of reputation, are presumed." *Lipsky*, 460 S.W.3d at 596. "Accusing someone of a crime" and "[r]emarks that adversely reflect on a person's fitness to conduct his or her business or trade are . . . deemed defamatory per se." *Id.* Buzbee accused Croft—a Mississippi lawyer—of engaging in habitual illegal activity, including orchestrating an illegal scheme to solicit former Buzbee clients. Dkt. 1 ¶¶ 34–39. These statements accuse Croft of committing crimes and impute that she lacks integrity in the conduct of her profession as an attorney. So Buzbee's defamatory statements are actionable per se, and damages are presumed.

In any event, Croft *does* allege extensive damages. In her complaint, Croft explains that due to Buzbee's defamatory statements, she has suffered "past, present, and future mental and emotional distress" and "loss of personal and professional reputation, as well as public embarrassment." *Id.* ¶ 88. At the motion-to-dismiss stage, these allegations are enough. Courts "do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. It

11

is telling Defendants cannot cite a case dismissing defamation claims (or any tort claim) for inadequately pleaded damages.

In sum, Croft properly alleges all the elements of both defamation claims.

### C.     Croft Plausibly Alleges False Light.

Buzbee's argument for dismissal of Croft's false light claim fails right out of the gate because he wrongly assumes that Texas law applies.  Mississippi recognizes such a claim, and its law applies under Texas's choice-of-law rules. [1]

A federal court sitting in diversity applies the choice-of-law principles of the forum state.  *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496–97 (1941).  When faced with a conflict of law on a claim, Texas courts apply the law of the state with the "most significant relationship" to the issue as determined by several Restatement factors.  *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2000) (citing Restatement (Second) of Conflict of Laws §§ 6(2), 145(2) (A.L.I. 1971)). [2]

---

[1] Although Croft's Mississippi complaint was dismissed for lack of personal jurisdiction in that state, "choice of law analysis is . . . different and distinct from the personal jurisdiction analysis." *Rimkus Consulting Grp., Inc. v. Balentine*, 693 F. Supp. 2d 681, 687 (S.D. Tex. 2010); *accord Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 481–82 (1985) ("[C]hoice-of-law analysis—which focuses on all elements of a transaction, and not simply on the defendant's conduct—is distinct from minimum-contacts jurisdictional analysis— which focuses at the threshold solely on the defendant's purposeful connection to the forum." (emphasis omitted)).

[2] Defendants' motion does not implicate a choice-of-law analysis on any of Croft's claims other than false light and NIED.  Therefore, for purposes of responding to Defendants' motion, Croft need not engage in a choice-of-law analysis for her other claims. Nevertheless, given the Restatement's emphasis on the plaintiff's domicile and place of injury in reputational tort claims, *see infra*, such an analysis likely would result in application of Mississippi law to all of Croft's claims if a difference in the law of the two

The conflict between Texas and Mississippi law on false light is "obvious" because Mississippi "recognizes the cause of action and Texas does not." *Quicksilver Ress., Inc. v. Eagle Drilling, LLC*, 792 F. Supp. 2d 948, 954 (S.D. Tex. 2011); *compare Cain v. Hearst Corp.*, 878 S.W.2d 577, 579 (Tex. 1994) ("Today, we join those jurisdictions that do not recognize the false light invasion of privacy action."), *with Hays v. LaForge*, 333 So. 3d 595, 608 (Miss. Ct. App. 2022) (reciting elements of false-light claim under Mississippi law).

Next, Mississippi has the most significant relationship to Croft's false light claim. For tort claims generally, the state with the most significant relationship is determined by considering "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *O'Neal v. Bumbo Int'l Trust*, 959 F. Supp. 2d 972, 976 (S.D. Tex. 2013) (quoting Restatement (Second) of Conflict of Laws § 145). Absent unusual circumstances, those factors will result in application of "the local law of the state where the injury occurred" for tort claims. Restatement (Second) of Conflict of Laws § 146; *see also Bumbo*, 959 F. Supp. 2d at 976 (holding that Indiana law applied because "the injury occurred [there]" and the "[p]laintiffs reside there"); *Toyota Motor Co. v. Cook*, 581 S.W.3d 278, 285 (Tex. App.—Beaumont 2019, no pet.) (noting that the Restatement (Second) of Conflict of Laws § 146 creates a "presumption" in favor of applying the law of the state

_____

states is identified.

where the injury occurred). Moreover, for torts that "injure[ ] [the] plaintiff's reputation . . . or invade[ her] right of privacy," such as false light, "the plaintiff's domicil[e]" is the "single most important contact" for determining the state with the most significant relationship. Restatement (Second) of Conflict of Laws § 145 cmts. e, f; *see id.* § 153; *Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.*, 793 F. Supp. 3d 882, 892 n.5 (S.D. Tex. 2025) (Brown, J.) (applying the laws of the states of the plaintiffs' domicile in a defamation suit); *see also* Restatement (Second) of Conflict of Laws § 151 ("The choice-of-law rules involving injurious falsehood are the same as those involving defamation.").[3]

Croft is domiciled in Mississippi, and she maintains her law firm there. Dkt. 1 ¶¶ 6, 14–15, 17. Buzbee's false and misleading statements reached Mississippi and injured Croft's reputation and law practice there. *Id.* ¶¶ 45, 50, 55, 70. Croft has also suffered and will continue to suffer harm and damages in Mississippi. *Id.* ¶ 70, 88. All these facts point to the same conclusion: Mississippi law governs her false light claim, so Buzbee's sole dismissal argument fails.

**D.     Croft Plausibly Alleges Intentional Infliction of Emotional Distress.**

Croft's claim for IIED is also sufficiently pleaded. The complaint alleges the four

---

[3] Mississippi's superior relationship to Croft's false light claim is underscored by the state's policy to protect its citizens against the conduct that gives rise to that claim. *Klaxon*, 313 U.S. at 496 (federal courts must recognize a state's "right to pursue local policies diverging from those of its neighbors"). Since Texas does not share Mississippi's policy, application of Texas law here "would absolve the defendant[s] from liability"—a result that "could hardly be justified." Restatement (Second) of Conflict of Laws § 6 cmt. f.

elements of the claim: "(1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the actions of the defendant caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 611 (Tex. 1999).

Buzbee acted intentionally. He purposely made numerous false accusations of criminality against Croft in a concerted campaign to undermine and tarnish her reputation, seeking to silence and intimidate her after she began looking into his and his firm's financial practices. Dkt. 1 ¶ 73. Next, Buzbee's social media posts and the Buzbee Law Firm's letter to its former clients were both examples of extreme and outrageous conduct. They baselessly broadcast harmful lies about Croft to more than 100,000 people, falsely labelling her a felon and habitual criminal. *Id.* ¶¶ 32–55. And finally, due to these outrageous actions, Croft "has suffered and will continue to suffer significant insult, indignity, humiliation, embarrassment, and severe physical anguish and emotional distress." *Id.* ¶ 75.

IIED's status as a "gap-filler" tort is no barrier to Croft's recovery at this juncture. In *Standard Fruit and Vegetable Co. v. Johnson*, the Supreme Court of Texas explained that IIED cannot be used "to circumvent the limitations placed on the recovery of mental anguish damages under more established tort doctrines," making it a "gap-filler" tort. 985 S.W.2d 62, 68 (Tex. 1998). Still, though, IIED is available as an independent cause of action when the defendant "intends to cause severe emotional distress or severe emotional distress is the primary risk created by [his] reckless conduct," so long as the risk of the plaintiff's emotional distress is not "merely incidental to the commission of some other

tort.  *Id.* at 63, 68.

Applying that logic here, intentional infliction of emotional distress *is* available to Croft as an independent cause of action.  As Croft alleges, Buzbee intended to cause her severe emotional distress.  Dkt. 1 ¶¶ 73–76.  By posting numerous falsehoods about Croft, Buzbee sought to intentionally intimidate her and dissuade her from looking further into Buzbee's financial practices.  *Id.* ¶ 13.  Thus, one of Buzbee's primary goals in falsely accusing Croft of criminal activity was to cause her severe emotional distress.  And whereas *Standard Fruit* dealt with a car accident—where the primary risk was physical injury—here, the primary risk of repeatedly accusing someone of being a criminal is mental anguish and severe emotional distress.  *Id.* ¶¶ 74–75; *Standard Fruit*, 985 S.W.2d at 63.  This is precisely the type of conduct that Texas law intends for the tort of intentional infliction of emotional distress to redress.

Moreover, Croft pleads outrageous conduct by Buzbee wholly separate from the defamatory statements he made.  Buzbee colluded with Maldonado to trick Croft into engaging with Maldonado as a client, despite his false pretenses.  Dkt. 1 ¶¶ 19–20, 23.  Buzbee caused Maldonado to masquerade as a potential client, thereby insulting, humiliating, and embarrassing Croft and leaving her now to query in emotional anguish whether each new prospective client outreach is made in good faith or with nefarious intent.

Buzbee also wrongly asserts that his conduct was not outrageous or extreme.  It's true that "[c]onduct that is merely insensitive or rude is not extreme or outrageous, nor are mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Gonzalez v. Gonzalez*, 704 S.W.3d 54, 67 (Tex. App.—Austin 2024, no pet.) (citation

modified).  But here, Buzbee's conduct goes beyond mere "annoyances" or "trivialities." He repeatedly, across multiple mediums, falsely accused Croft of being a criminal, claiming that she hired fake agents to bribe Buzbee clients to bring frivolous lawsuits against him and his firm.  Dkt. 1 ¶¶ 34–55.  And recall that these accusations were broadcast publicly to Buzbee's hundreds of thousands of followers to undermine Croft's reputation.  *Id.* ¶¶ 33, 46.  Broadcasting false criminal accusations to the public in this way *does qualify* as outrageous and extreme under Texas law.  *Mitre v. Brooks Fashion Stores, Inc.*, 840 S.W.2d 612, 621 (Tex. App.—Corpus Christi-Edinburg 1992, pet. denied) (denying summary judgment on IIED claim to defendant that falsely and publicly accused plaintiffs of a crime because such conduct "could certainly be considered extreme and outrageous"), *abrogated on other grounds by Cain*, 878 S.W.2d 577.  Croft successfully pleads her intentional infliction of emotional distress claim.

E.      **Croft Plausibly Alleges Negligent Infliction of Emotional Distress.**

As with the false light claim, Mississippi law applies to Croft's NIED claim.  Once again, the conflict between Texas and Mississippi law on NIED is "obvious" because Mississippi "recognizes the cause of action and Texas does not."  *Quicksilver*, 792 F. Supp. 2d at 954; *compare Boyles v. Kerr*, 855 S.W.2d 593, 594 (Tex. 1993) ("We hold that there is no general duty in Texas not to negligently inflict emotional distress."), *with Wilkerson ex rel. Reel v. Allred*, 407 So. 3d 218, 228 (Miss. Ct. App. 2024) (outlining the Mississippi standard for NIED), *cert. denied sub nom. Wilkerson v. Allred*, 406 So. 3d 772 (Miss. 2025). And for the same reasons explained above regarding false light, *supra* Section C,

Mississippi has the most significant relationship to Croft's NIED claim. Once again, Buzbee's lone dismissal argument fails.

## II. Dismissal Is Not Proper Under Rule 56 Because Genuine Disputes of Material Fact Remain.

Defendants' extraordinary request for summary judgment before discovery has begun is inappropriate. On a motion to dismiss, the court takes the plaintiff's alleged facts as pleaded, making all reasonable inferences in her favor. *Sheffield*, 604 F. Supp. 3d at 601. Defendants here propose turning that standard on its head, and then going a step further: They inject their own, self-serving allegations (from unproven, unverified, and heavily disputed pleadings in other cases) into this case that they claim directly contradict Croft's pleaded version of events, ask the Court to make inferences in *their* favor, and then seek *summary judgment* based on those allegations. *See generally* Dkt. 15 at 7–17 (citing various exhibits attached to Defendants' Request for Judicial Notice, Dkt. 15-1). Allegations aren't evidence. And blackletter law dictates that parties cannot "rest on such mere allegations" at summary judgment; they must set forth "specific facts" through evidence. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Defendants' reliance on such disputed, self-serving allegations belies their argument that no disputed facts remain. Rather, it only establishes the prematurity of Defendants' summary-judgment motion, when no discovery has been taken.[4]

---

[4] The Court likewise should reject Defendants' Request for Judicial Notice, Dkt. 15-1, which is a thinly veiled attempt to seek judicial adoption of disputed allegations. *E.g.*, Dkt. 15 at 8 (describing as established fact the contents of court pleadings from other cases). But such disputed facts are not candidates for judicial notice. Fed. R. Evid. 201(b); *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 830 n.18 (5th Cir. 1998) (finding "difficulty

Indeed, summary judgment may be granted here only if, "mak[ing] all reasonable inferences" in Croft's favor, *Cooper Tire*, 423 F.3d at 456, "there is no genuine dispute as to any material fact" and Defendants are "entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). When assessing a summary-judgment motion, the court must "refrain from making credibility determinations or weighing the evidence." *Haire v. Bd. of Supervisors of La. State Univ.*, 719 F.3d 356, 362 (5th Cir. 2013). Motions to dismiss are rarely converted to summary-judgment motions, and typically only when the claims are clearly barred by law or when substantial discovery has already been exchanged. *E.g.*, *Hodge v. Engleman*, 90 F.4th 840, 845–47 (5th Cir. 2024) (affirming grant of qualified-immunity-based summary judgment based on bodycam footage attached to Rule 12(b)(6) motion); *Lexon Ins. Co. v. FDIC*, 7 F.4th 315, 322 (5th Cir. 2021) (no error in converting motion to dismiss *amended* complaint into summary-judgment motion when plaintiff had had "five months to conduct discovery and depose witnesses" and "attached to its amended

conceiving of an adjudicative fact found in a court record that is not subject of reasonable dispute and, therefore, of which a court could take judicial notice"); *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 999 (9th Cir. 2018) (courts "cannot take judicial notice of disputed facts contained in . . . public records"); *cf. Hogan v. S. Methodist Univ.*, 595 F. Supp. 3d 559, 562 n.2 (N.D. Tex. 2022) (concluding that defendant had "taken judicial notice way too far" because "[a] private defendant cannot prevail on a motion to dismiss by simply putting something on the internet that contradicts the complaint"), *rev'd on other grounds*, 74 F.4th 371 (5th Cir. 2023).

Indeed, judicial notice is a mechanism for taking notice of *facts*—not, as Defendants request, of *documents*. Fed. R. Evid. 201(b); *Abu-Joudeh v. Schneider*, 954 F.3d 842, 848 (6th Cir. 2020). And although a document's "existence" may qualify as a fact if the requirements of Rule 201 are met, Defendants seemingly "go[ ] even further, asking [the Court] to take judicial notice of the contents of these documents for the truth of the matters they assert." *See Abu-Joudeh*, 954 F.3d at 848.

19

complaint sixteen exhibits—including deposition transcript excerpts, written correspondence, e-mails, and an asset report").

None of that is in play here. Defendants do not assert that Croft's claims are barred as a matter of law. Nor has *any*—much less *significant*—discovery been exchanged. Granting summary judgment at this juncture would deprive Croft of her right to take discovery in this case. Declaration of Gregg Costa ("Costa Decl.") ¶ 6. At a minimum, Croft needs to obtain documents from each Defendant and take each Defendant's deposition to prove up her case. Accordingly, Defendants' summary-judgment arguments stumble out of the gate.

What little evidence is attached to Defendants' Motion only further confirms that summary judgment is both premature and unwarranted. Defendants attach the transcript of Croft's deposition taken in another case. Croft Tr., Dkt. 16-1. Therein, she testified that Maldonado first called her—not the other way around—and that she didn't know anyone named "Jessica Santiago," the name of the investigator Buzbee contends she hired. *Id.* at 12–16. Croft's testimony plainly conflicts with Maldonado's self-serving affidavit—also attached to Defendants' motion—in which he insists that "investigators" called him on Croft's behalf. Maldonado Aff., Dkt. 16-2 at 2. Croft has not yet had opportunity to pressure-test the veracity of Maldonado's affidavit through the discovery process. Yet these contested facts go to the heart of Croft's defamation claim: whether Buzbee made a false statement when he asserted that Croft's "agents" "illegally solicit[ed]" his former clients. Dkt. 1 ¶ 34.

Accordingly, Defendants cannot reasonably dispute that granting summary

judgment in their favor would require weighing the comparable credibility of Croft's testimony and Maldonado's affidavit and taking inferences in Defendants' favor. For instance, Defendants admit (at 20) that "[t]wo competing narratives are presented here." *See also* Dkt. 15 at 21 ("[T]wo narratives are presented by the facts[.]"). They insist that their "narrative also inherently makes more sense than" Croft's, *id.* at 20 (emphasis omitted), and that it is "more plausible," *id.* at 21. And they ask the Court to conclude that "[t]here [wa]s no reason for" third party "Jessica Santiago" to purportedly "specifically identify" Croft "unless [she was] an active participant in the events complained of in the Harris County lawsuits." *Id.* at 22 (emphasis omitted). It should come as no surprise that those facts are (and will continue to be) vehemently disputed.

Resolving these disputed facts is the province of the jury and is not appropriate for summary judgment. *Haire*, 719 F.3d at 362; *Cooper Tire*, 423 F.3d at 456. Indeed, the Fifth Circuit routinely reverses the grant of summary judgment when, as Defendants seek here, "the district court improperly made a critical inference against . . . the nonmovant." *Cooper Tire*, 423 F.3d at 456 (emphasis omitted); *see, e.g.*, *Seigler v. Wal-Mart Stores Tex.*, 30 F.4th 472, 480 (5th Cir. 2022) (reversing grant of summary judgment because nonmoving plaintiff entitled to factual inference in her favor); *Davis v. Fort Bend Cnty.*, 765 F.3d 480, 488 (5th Cir. 2014) (reversing grant of summary judgment because district court "improperly inferred facts against the nonmoving party"); *cf. Tex. Refrigeration Supply, Inc. v. FDIC*, 953 F.2d 975, 982 (5th Cir. 1992) ("Summary judgment is improper if the undisputed facts raise conflicting inferences because the choice between competing inferences is for the trier of fact."). The same is true when a grant of summary judgment

relies on assessing credibility questions, which are "better weighed by a jury than by the court at the summary judgment stage." *Wright v. Honeywell Int'l, Inc.*, 148 F.4th 779, 784 (5th Cir. 2025) (reversing grant of summary judgment).

Discovery should be taken in this case to further clarify these factual disputes, and Defendants' premature and improper request for summary judgment should be rejected.

## III. The Court Should Not Abstain or Stay Under *Colorado River.*

The Court should reject Defendants' invitation to abstain or stay the case under the *Colorado River* doctrine. Federal courts have a "virtually unflagging obligation" to exercise their jurisdiction, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15 (1983) (quotation omitted), and *Colorado River* abstention is "strictly limited to cases with 'exceptional circumstances' justifying abstention," *Welding Techs. v. James Mach. Works, LLC*, 2013 WL 1123852, at \*2 (S.D. Tex. Mar. 18, 2013) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). Courts begin the *Colorado River* analysis with a "heavy thumb" on the scale in favor of exercising federal jurisdiction. *Aptim Corp. v. McCall*, 888 F.3d 129, 135 (5th Cir. 2018). This form of abstention is so rarely justified that a law review note observes that, as of 2012, the Fifth Circuit had reversed nearly nine out of every ten district court decisions abstaining under *Colorado River*, but it had never reversed a district court's decision *not* to abstain. Josue Caballero, Note, *Colorado River Abstention Doctrine in the Fifth Circuit: The Exceptional Circumstances of a Likely Reversal*, 64 Baylor L. Rev. 277, 299–300 (2012). So it is not surprising that Defendants do not cite a single case in which the Fifth Circuit upheld *Colorado River* abstention.

Here, not only do the *Colorado River* factors weigh against abstention, but also the threshold question—whether the actions are parallel—precludes abstention.

This action and the Harris County lawsuits are not "parallel" for purposes of *Colorado River* abstention. Before a court even considers the *Colorado River* factors, the relevant state and federal proceedings must be "parallel," meaning that they "involve the same parties and the same issues." *Am. Guarantee & Liab. Ins. Co. v. Anco Insulations, Inc.*, 408 F.3d 248, 251 (5th Cir. 2005); *see also Parada v. Sandhill Shores Prop. Owners Ass'n, Inc.*, 604 F. Supp. 3d 567, 582 (S.D. Tex. 2022) (Brown, J.) (the Court "need not consider the *Colorado River* factors" when "the state and federal proceedings are not 'parallel actions'" (quoting *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 650 (5th Cir. 2000))).

Because this action and the Harris County lawsuits involve different parties and different issues, they are not "parallel." First, the Harris County lawsuits involve additional parties (Quinn Emanuel, Roc Nation, and Gerardo Garcia) that are not parties here. *See Am. Fam. Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 892 (5th Cir. 2013) (finding that cases were "far from parallel" in part because the "state action undisputedly involves additional defendants" not in the federal action). Next, this action and the Harris County lawsuits involve different issues. In this action, Croft alleges defamation, false light, intentional and negligent infliction of emotional distress, and conspiracy against Defendants. *See* Dkt. 1. The Harris County lawsuits, on the other hand, allege barratry and tortious interference with contract against Croft and others. *See* Ex. A to Costa Decl. at 2, 16, 29 (Petitions in Harris County Lawsuits). Therefore, "[s]ince this lawsuit's claims

23

differ, resolution of the state court action will not dispose of all the claims in this forum." *Penthol LLC v. Vertex Energy Operating, LLC*, 2021 WL 3571274, at *2 (S.D. Tex. Aug. 12, 2021). Although the "general subject matter" of this action and the Harris County lawsuits may be similar "at a broad level of abstraction," that is not enough to call them "parallel." *Parada*, 604 F. Supp. 3d at 581–82.

Even if this action and the Harris County lawsuits could somehow be deemed "parallel," none of the *Colorado River* factors favors abstention. The six *Colorado River* factors are "(1) assumption by either state or federal court over a res; (2) relative inconvenience of the fora; (3) avoidance of piecemeal litigation; (4) order in which jurisdiction was obtained by the concurrent fora; (5) extent federal law provides the rules of decision on the merits; and (6) adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction." *Biles*, 714 F.3d at 892.

As to the first two factors, Croft agrees with Defendants that there has been no jurisdiction over a res and that the two fora are in the same general location. *See* Dkt. 15 at 25. But Defendants wrongly contend those factors are "irrelevant" or "neutral," *see id.*, when the "absence" of those factors instead weighs in *favor* of exercising jurisdiction, *Murphy v. Uncle Ben's, Inc.*, 168 F.3d 734, 738 (5th Cir. 1999); *see also Biles*, 714 F.3d at 892 (finding the first two factors weighed in favor of exercising jurisdiction when neither court had assumed jurisdiction over a res and the two actions were in the same city).

Next, the avoidance-of-piecemeal-litigation factor does not favor abstention. Defendants merely describe a risk of *duplicative* litigation, which "wasteful though it may be, is a necessary cost of our nation's maintenance of two separate and distinct judicial

systems possessed of frequently overlapping jurisdiction." *Black Sea Inv., Ltd.*, 204 F.3d at 650. Rather than broadly prohibiting such duplicative litigation, the third *Colorado River* factor is concerned with the specific "danger of inconsistent rulings with respect to a piece of property." *Id.* at 650–51. "When, as here, no court has assumed jurisdiction over a disputed res, there is no such danger." *Id.* at 651. Moreover, any risk of inconsistency between the two actions that Defendants complain of (at 25–26) "may be obviated through a plea of *res judicata*." *Evanston Ins. Co. v. Jimco, Inc.*, 844 F.2d 1185, 1192 (5th Cir. 1988). This factor does not favor abstention.[5]

Nor does the order in which jurisdiction was obtained by each court favor abstention. While true that the Harris County lawsuits were filed before this action, that does not end the inquiry. Instead, "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Cone*, 460 U.S. at 21. Despite being filed more than a year ago, the Harris County lawsuits are not out of the starting gate. The parties largely have agreed to suspend motion practice and discovery until the Harris County courts can decide Quinn Emanuel's motion to consolidate, which the plaintiffs in the Harris County lawsuits oppose. *See* Ex. B to Costa Decl. (Rule 11 Agreements in Harris County cases). Moreover, Croft has filed motions to

---

[5] Rather than "favoring abstention" as Defendants argue (at 26), *Saucier v. Aviva Life & Annuity Co.* found that the avoiding-piecemeal-litigation factor "weigh[ed] in favor of retaining federal jurisdiction" because there, like here, avoiding merely duplicative litigation was not enough for abstention. 701 F.3d 458, 464 (5th Cir. 2012). The Fifth Circuit in *Saucier* ultimately held that the district court had abused its discretion in abstaining. *Id.* at 465.

dismiss based on the Texas Citizens Participation Act in all the Harris County cases. *See* Ex. C to Costa Decl. at 6, 11, 17 (Docket Sheets in Harris County cases). Those motions will either be granted, which will terminate the cases against Croft, or be denied, which will stay the cases pending appeal of the denials. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(12), (b) (interlocutory appeal permitted for denial of TCPA motion to dismiss, with case stayed pending appeal). The Harris County cases are not headed for any "substantial progress" soon, so this factor "weighs against abstention." *E.E.O.C. v. Palafox Hosp., Ltd.*, 188 F. Supp. 2d 680, 683 (S.D. Tex. 2001).

Lastly, the final two factors are at most neutral. As to the fifth factor (whose law provides the rules of decision), "the absence of federal issues does not counsel in favor of abstention." *Welding Techs.*, 2013 WL 1123852, at *4 (citation modified). Similarly, on the adequacy-of-the-state-proceedings, even when the parties agree that "the state court is an adequate forum, the sixth factor, by its very nature, does not weigh in favor of abstention." *Biles*, 714 F.3d at 893.

All in all, three of the factors weigh against abstention, and the other three are at most neutral. With that count, abstention is unwarranted.

Defendants alternatively ask for a stay of this case to allow the state cases to play out, but that would just be *Colorado River* abstention without the label. Contrary to Defendants' assertions (at 26), the standard for a stay is not somehow lower than for abstention; no such sliding scale exists. *See Am. Guarantee*, 408 F.3d at 251 ("The court may have believed that it had greater discretion to stay under *Colorado River* than it had to dismiss. However, the Supreme Court has held that the exceptional circumstances test

applies regardless of whether the district court dismisses or merely stays a case."). Indeed, *Colorado River* abstention often results in a stay. *See Black Sea*, 204 F.3d at 651 (finding that district court abused its discretion in granting a stay when *Colorado River* factors were not met). Because the suits are not parallel and the *Colorado River* factors are not met, any type of abstention (whether stay or dismissal) is precluded. *See Cone*, 460 U.S. at 10 (when "stay of the federal suit pending resolution of the state suit mean[s] that there w[ill] be no further litigation in the federal forum . . . [the] stay order amounts to a dismissal of the suit"). Abstention via either dismissal or stay would violate the Court's "virtually unflagging obligation" to exercise jurisdiction. *Id.* at 15; *see also id.* at 11 (obligation to exercise jurisdiction is so certain that orders abstaining or staying under *Colorado River* are immediately appealable). The Court should reject Defendants' invitation to abstain.

## CONCLUSION

The Court should deny Defendants' motion to dismiss, for summary judgment, and for abstention.

Dated: February 10, 2026

Respectfully submitted,

*/s/ Gregg Costa*

Gregg Costa
  State Bar No. 24028160
  SDTX Federal No. 32779
Sydney Scott
  State Bar No. 24088379
  SDTX Federal No. 3126470
 Kylie Calabrese
  State Bar No. 24120738
  SDTX Federal No. 3699266
 Johanna E. Smith
  State Bar No. 24126934
  SDTX Federal No. 3716571
 Tiffany Penner
  State Bar No. 24122890
  SDTX Federal No. 3850611
GIBSON, DUNN & CRUTCHER LLP
811 Main St., Suite 3000
Houston, TX 77002
Telephone: (346) 718-6600
GCcosta@gibsondunn.com
SAScott@gibsondunn.com
KCalabrese@gibsondunn.com
JESmith@gibsondunn.com
TPenner@gibsondunn.com

Reed Brodsky (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
RBrodsky@gibsondunn.com

*Attorneys for Plaintiff Marcy Croft*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this document has been duly served on all known counsel of record and parties in accordance with the Federal Rules of Civil Procedure on February 10, 2026.

*/s/ Gregg Costa*
Gregg Costa