# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| MARCY CROFT, | § | |
| | § | |
| *Plaintiff,* | § | |
| v. | § | Case No. 3:25-cv-000422 |
| | § | |
| ANTHONY BUZBEE, ANTHONY | § | |
| BUZBEE, L.P. d/b/a THE BUZBEE LAW | § | |
| FIRM, and JOSE MALDONADO, | § | |
| | § | |
| *Defendants.* | § | |

## DEFENDANTS ANTHONY BUZBEE, ANTHONY BUZBEE, L.P. d/b/a THE BUZBEE LAW FIRM, AND JOSE MALDONADO'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS OR TO STAY

**<u>INTRODUCTION</u>**

Plaintiff Marcy Croft's ("Croft") response brief relies almost entirely on the refrain that this Court *must* accept her pleaded facts as true. Croft makes no effort to rebut any of the conclusions to be drawn from the numerous exhibits submitted with Defendants' motion to dismiss that Croft's allegations are, at best, implausible and, at worst, outright false. Rather, Croft claims that Defendants' inclusion of evidence and request (made in the alternative) for summary judgment is "extraordinary." It is not. A conversion of a motion to dismiss into one for summary judgment is expressly provided for by Federal Rule of Civil Procedure 12(d).[1]

Defendants presented material outside the pleadings here because, as implausible as the complaint's allegations are on their face, they are also demonstrably in conflict with other evidence of which Croft is more than aware, taken or submitted in connection with other pending cases between the parties. The documents submitted with Defendants' motion to dismiss, which include Croft's own sworn deposition testimony, show that Croft was not randomly targeted for inexplicable purposes by Tony Buzbee and the Buzbee Law Firm, as Croft attempts to allege. Jose Maldonado's affidavit shows that he did not reach out to Croft but rather was placed in contact with her by investigators, contradicting *the*

---

[1] It bears noting that despite being a defendant in the Harris County cases, Croft did not file a counter-claim in any of those actions, choosing instead to file first in Mississippi state court and then (after the dismissal of her Mississippi action) in this Court. This has rendered Croft immune from an anti-SLAPP motion to dismiss, as Mississippi does not have an anti-SLAPP law, and a motion under the Texas Citizens Participation Act cannot be brought in this court. However, an anti-SLAPP motion to dismiss would have required her to supply evidence to counter the evidence submitted by Defendants, which she cannot do, precisely because this is a retaliatory strike suit.

*central material fact* alleged by Croft. Other evidence (including Gerardo Garcia's affidavit) show that Maldonado was not the only Buzbee client Croft actually contacted, putting the lie to Croft's claim that she was baited by defendant Maldonado. The documents submitted by Defendants simply cannot be squared with Croft's story that she, a Mississippi attorney presumably minding her own business, was suddenly and without reason targeted by a Texas law firm through Maldonado acting as bait.

But notwithstanding Defendants' evidence, it is also not true that the Court simply must accept Croft's allegations as true. Under *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a plaintiff's allegations must be *plausible*. There may be two "competing" narratives here, but Croft's makes no sense. Even without resort to the mountain of evidence submitted with Defendants' motion, that implausibility is fatal to Croft's complaint under *Twombly* and *Iqbal*.

Croft's choice of law arguments with respect to her False Light and Negligent Infliction of Emotional Distress, though subsidiary, also fail. The "significant relationship" test is, at best, neutral as to whether Texas or Mississippi law should apply. Moreover, the fact that Croft's alleged injury allegedly occurred in Mississippi should not be determinative. The United States District Court for the Southern District of Mississippi dismissed Croft's Mississippi case for lack of jurisdiction over Defendants, following a lengthy analysis of the effects test and the impact of online publication of allegedly defamatory statements, concluding Croft's residence was of no moment. By contrast, Texas is the site of the allegedly tortious activity in this case *as well as* the target forum of

allegedly tortious activity in the underlying Harris County cases, which are inextricably intertwined with this case.

Finally, whether under the *Colorado River* doctrine or the court's own inherent authority to manage its docket for purposes of justice and efficiency, if this matter is not dismissed then a stay is warranted. Croft's claims here are based entirely on substance of the claims made by the Firm and Buzbee against her in Harris County district court. That is, Croft's claims here *necessarily* depend on the outcome of the underlying Harris County actions for tortious interference and barratry brought by the Firm and Maldonado. Defendants' defense in this case – namely, truth as a defense to purported defamation – is coextensive with Defendants' affirmative claims in those actions. There is little justification for the actions proceeding in tandem as a result.

## ARGUMENT

### A. Defendants' Request for Rule 12(d) / Rule 56 Summary Judgment is Proper

Croft claims that Defendants seek to turn the motion to dismiss standard "on its head" by attaching evidence to their Motion and seeking summary judgment in the alternative to a Rule 12(b)(6) dismissal. Response [Dkt. 20] at 18. That's not the case. Defendants' motion argues that Croft's allegations are implausible on their face and therefore the pleading fails under Rule 12(b)(6), as discussed further *infra* section (B).

However, to the extent the Court cannot find the complaint so implausible as to warrant dismissal, Defendants supplied evidence because Croft's allegations are provably false based on, among other things, her own testimony or evidence Croft has already been

4

confronted with. The evidence attached by Defendants is conclusive against Croft. Among other things, it contradicts Croft's allegation that Defendant Maldonado reached out to her (based on his sworn testimony). *See* Declaration of David C. Fortney ("Fortney Dec."), Ex. 2. The allegation that Maldonado first contacted Croft – purportedly prompted to do so by Buzbee and the Firm as "bait" to solicit Maldonado – is absolutely central to Croft's claims, and it is false. The evidence also shows that Croft called the number of another Firm client, Gerardo Garcia. Fortney Dec., Ex. 6, ¶¶ 6-7. Croft has no conceivable explanation for why she would have Garcia's number if her story of being baited and entrapped by Maldonado and Buzbee is true. Defendants will not here repeat the evidentiary arguments and references from their Motion.

However, to the extent that Croft contends Defendants' inclusion of evidence is "extraordinary" or improper, that is not so. Federal Rule of Civil Procedure 12(d) provides that this Court may either exclude Defendants' evidence for purposes of a Rule 12(b)(6) motion or that it may consider Defendants' evidence by treating Defendants' motion as a Rule 56 motion for summary judgment. Fed. R. Civ. P. 12(d). Defendants contend that they prevail either way.

Contrary to Croft's protestations, it would not require extensive discovery to resolve Defendants' motion if treated as one for summary judgment – and moreover, most of it would be from Croft herself. Croft's phone records, Maldonado's phone records, and evidence showing how Croft sent and received Maldonado's engagement letter with her would, perhaps alone, suffice to show whether or not Maldonado, Croft, or an investigator or third party first initiated contact. If Croft's allegations are true, this is an easy showing

for her to make. However, as Defendants argue in their Motion, if Maldonado did not reach out to Croft, but rather was put in contact with Croft by a third party, there is no conspiracy between Maldonado and Buzbee and no "entrapment." Motion [Dkt. 15]. Of course, it would also show exactly the type of conspiratorial acts alleged by Buzbee and Maldonado in the Harris County lawsuits, defeating Croft's defamation and other claims.

Croft's objections to Defendants' request for judicial notice is also misplaced. Defendants do not cite the Harris County complaints themselves for the truth of what is alleged therein – the other evidence submitted by Defendants is sufficient for that purpose – but rather (1) for the fact that those lawsuits were filed, and involve the same underlying facts and parties as here, and (2) for the *timing* of those lawsuits. As explained in the Motion, if Buzbee and Maldonado conspired to use Maldonado as bait, it makes no sense that the *Garcia* complaint – which was the precipitating subject of Buzbee's social media posts made the same day – was filed on December 18, 2024, merely one day after Maldonado allegedly first reached out to Croft and the day *before* Croft allegedly advised Maldonado about his claims. *See* Motion [Dkt. 15] at 11-12; RJN Ex. 3; *see also* Complaint [Dkt. 1] at ¶¶ 19, 21. Maldonado's complaint, by contrast, was not filed until January 3, 2025. RJN Ex. 4.

These facts are not inconsequential. On December 18, 2024, Buzbee made his purportedly defamatory social media posts and filed a lawsuit against Ms. Croft on behalf of another client, Garcia (who is entirely unmentioned in Croft's complaint). But by that date, according to Croft's complaint, the only thing Maldonado is alleged to have done (to "entrap" her or otherwise) was to reach out to her the day before. Everything else Croft

alleges about Maldonado happened *after* Buzbee's public statements and the filed *Garcia* lawsuit. Complaint [Dkt. 1] at ¶19-23. The inference from this is not that Maldonado and Buzbee conspired to entrap and defame Croft; it's that Buzbee already knew from an entirely distinct source that Croft was targeting Buzbee's former clients.

**B. Croft's Allegations Are Implausible Under *Twombly*, or Conclusory**

Again, Defendants' proferred evidence is unnecessary for the resolution of Defendants' motion. As explained in Defendants' motion, Croft's allegation that Buzbee and Maldonado worked together to "entrap" her is entirely implausible. First, as explained directly above, the timeline as pleaded by Croft does not make any sense. Croft claims Maldonado first reached out to her on December 17, 2024, only one day prior to Buzbee's allegedly defamatory statements, and Croft provides no detail whatsoever about that December 17, 2024 call. Complaint [Dkt. 1] at ¶¶ 19-23, 31. Second, it absolutely beggars reason and belief that Buzbee, *sua sponte*, would "target," "bait," "entrap" (or any other verb one pleases) Croft, a Mississippi attorney unknown to him, for any reason. Third, Croft's allegations as to whether Buzbee and Maldonado were working together from the outset to "entrap" Croft or whether Buzbee somehow "turned" Maldonado from potential adversary to helpful conspirator, is entirely unclear. *See* Complaint ¶¶ 19-23; 30 (implying that Buzbee somehow recruited Maldonado within eight or four days of two other lawsuits being filed by former clients, for purposes of entrapping Croft, despite never pleading why Buzbee and Maldonado picked Croft as their target, why Buzbee would recruit Maldonado, or why Maldonado would participate – especially if he purportedly had a claim against

7

Buzbee). *None* of Croft's inferences are plausible or reasonable. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Beyond these issues, as set forth in the motion, there are no non-conclusory allegations of any agreement between Buzbee and Maldonado (*see* Complaint [Dkt. 1] ¶ 23, which is conclusory), no alleged facts that would support the inference of such an agreement, and no alleged overt act other than Maldonado's purported reaching out to Croft on December 17. Read carefully, everything in Croft's complaint is supposition, or a character assassination of Buzbee based on a few lawsuits filed against him (Dkt. 1 ¶¶ 24-30). Of course, as Croft contends in her response as to lawsuits filed against *her*, lawsuits inherently unreliable and cannot be relied on to establish anything. *See* Response [Dkt. 20] at 18, fn. 4.

Without repeating the arguments of the motion, Croft's allegations that a Texas attorney would enlist a former client to reach out to and entrap a Mississippi attorney, and then baselessly defame her and accuse her of crimes he purportedly set up, in some sort of preemptive, defensive strike to quell further litigation against his firm is, for lack of any better word, preposterous. These are not allegations that meet any criterion of plausibility as required by Rule 12(b)(6).

**C. Texas Law Should Apply to Croft's False Light and NIED Claims**

Croft contends that her False Light and Negligent Infliction of Emotional Distress claims are governed by Mississippi law under the "significant relationship" test. The better argument is that Texas law applies.

The following contacts are used "in determining which state possesses the most

significant relationship" for choice of law purposes:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and,

(d) the place where the relationship, if any, between the parties is centered."

*O'Neal v. Bumbo Int'l Tr.*, 959 F. Supp. 2d 972, 976 (S.D. Tex. 2013). Here, factor (a) is Mississippi, but factor (b) is Texas. Factor (c) is both states – one Mississippi resident and three Texas residents. Factor (d) is either not relevant or is, if anything, Texas (as the state of Croft's client Maldonado's residence). The significant relationship test is neutral or leans towards applying Texas law.

Although a jurisdictional analysis is obviously distinct from choice of law, it bears noting that the United States District Court for the Southern District of Mississippi undertook a lengthy analysis of the parties' actions and contacts in finding that it lacked jurisdiction over Defendants. The putative harm suffered by Croft in Mississippi was *not* enough to satisfy jurisdiction, according to that court. *See* RJN Ex. 8 at 4-16. The Court noted Buzbee's testimony that at the time he made his allegedly defamatory statements, he was unaware that Croft was a Mississippi resident – and therefore his statements could not have been "directed at" Mississippi when they were published online. *Id.* at 11, fn 6. Thus Mississippi's purported policy of allowing these claims (false light and negligent infliction of emotional distress) is no more deserving of "protection" than Texas's policy, as the state of Buzbee's residence, of not recognizing them.

Further, Texas law recognizes that a separate cause of action for "false light" is largely coextensive with and subsumed by defamation, which Croft alleges. *See, e.g., Cain v. Hearst Corp.*, 878 S.W.2d 577, 578-79 (Tex. 1994). Allowing a Mississippi-law claim for false light is merely duplicative. Similarly, negligent infliction of emotional distress is an abandoned, lesser version of the tort of intentional infliction of emotional distress, which as Defendants' motion emphasized is a "gap-filler" tort in Texas. It cannot be pursued here given that Croft has alleged, if inadequately, other cognizable torts covering Defendants' allegedly wrongful behavior. Moreover, applying a negligence-based claim for infliction of emotional distress in the *absence* of any specific intent to cause harm in Mississippi, when Buzbee did not know at the time where Croft resided, is incongruous at best.

**D. Alternatively, Croft's Claims Should be Stayed**

Croft objects that *Colorado River* abstention, or any other form of stay, is unavailable here. *See* Response [Dkt. 20] at 22-27. Croft contends that the proceedings are not "parallel" because the state-court proceedings involve additional parties and additional issues. *See* Response [Dkt. 20] at 23 (citing, among other cases, *Am. Fam. Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 892 (5th Cir. 2013). Defendants concede that abstention (or a stay) under *Colorado River* is the exception rather than the rule. However, Croft overstates her case significantly here.

Federal and state proceedings do not have to be identical in terms of parties and issues, but rather only *substantially* similar, to be "parallel" for purposes of consideration under *Colorado River.* *See Landmark Am. Ins. Co. v. Esters,* No. 2:20-CV-01263, 2025

U.S. Dist. LEXIS 124387, at *5-6 (W.D. La. 2025). All of the parties here are also parties to the *Maldonado* action pending in Harris County. *See* RJN Ex. 4. While there are additional parties, whose behavior moreover is alleged to be related and coordinated with Croft's, that is not enough to determine that the actions are not parallel. As for the issues involved, Croft has filed suit here on the basis that the exact same allegations made in the *Maldonado* action, when published on social media by Buzbee, constitute defamation and related torts. *Compare* RJN Ex. 4 with Complaint [Dkt. 1.]. The *Maldonado* action is, quite literally, the precedent activity purportedly giving rise to Croft's claims.

*Am. Fam. Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887 (5th Cir. 2013) is a far cry away from this case and the *Maldonado* case. *Biles* involved multiple different unrelated parties, insurance coverage disputes, whether some parties were bound by arbitration clauses, and so forth. *See id.* at 890-892.

Moreover, as the *Esters* court observed, "when the resolution of the issues in the state court would effectively dispose of all of the claims raised in the federal case, such a finding is sufficient to defeat the difference in parties in both cases." *Landmark Am. Ins. Co. v. Esters*, No. 2:20-CV-01263, 2025 U.S. Dist. LEXIS 124387, at *6 (W.D. La. 2025) (citing *MidTexas Int'l Ctr., Inc. v. Myronowicz*, CIV.A.3:05CV1957-R, 2006 U.S. Dist. LEXIS 55387, 2006 WL 2285581, at *3 (N.D. Tex. Aug. 9, 2006)). That is the case here. Croft's claims in this action rise or fall based on the outcome of the underlying *Maldonado* action – full stop. These actions are by any measure "substantially similar" to be parallel.

The relevant *Colorado River* factors, as discussed in Defendants' motion, weigh in favor of abstention entirely. However, at minimum, a stay is warranted in order to conserve

judicial resources, the resources of the parties, and to avoid conflicting decisions, as Croft's claims for relief here can succeed only if Defendants' original claims against her fail in the prior-filed Harris County lawsuits.

## CONCLUSION

For all of the above reasons, Plaintiff's claims against Defendants should be dismissed in their entirety, and any claims that are not dismissed should be stayed pending resolution of the underlying Harris County actions.

Respectfully submitted,

**THE BUZBEE LAW FIRM**

By: */s/: Anthony G. Buzbee*
 Anthony G. Buzbee
 Attorney-in-charge
 State Bar No. 24001820
 Fed. ID No. 22679
 David C. Fortney
 State Bar No. 24068740
 Fed. ID No. 3913731
 Lionel Sims, III
 State Bar No. 24107465
 J.P. Morgan Chase Tower
 600 Travis, Suite 7300
 Houston, Texas 77002
 Phone: (713) 223-5393
 Facsimile: (713) 223-5909
 tbuzbee@txattorneys.com
 dfortney@txattorneys.com
 lsims@txattorneys.com

**ATTORNEYS FOR DEFENDANTS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of this document has been duly served on all known counsel of record and parties in accordance with the Federal Rules of Civil Procedure on February 17, 2026.

*/s/ David C. Fortney*
David C. Fortney