United States District Court
Southern District of Texas
**ENTERED**
September 30, 2026
Nathan Ochsner, Clerk

# In the United States District Court for the Southern District of Texas

GALVESTON DIVISION

No. 3:25-cv-422

MARCY CROFT, *PLAINTIFF*,

v.

ANTHONY BUZBEE, *ET AL.*, *DEFENDANTS*.

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE*:

Before the court is the defendants' motion to dismiss or stay the plaintiff's complaint. Dkt. 15. The motion is denied.

## I. Background[1]

This case arises from the defendants' coordinated efforts to publicly discredit, intimidate, and silence Marcy Croft—a well-respected member of the Missouri bar. Dkt. 1 ¶¶ 1, 14–17. These efforts began on December 17, 2024, when José Maldonado called Croft to request legal guidance on

[1] For the purposes of this opinion only, the court adopts Croft's well-pleaded allegations as true. *See White v. U.S. Corrs., L.L.C.*, 996 F.3d 302, 306–07 (5th Cir. 2021).

potential claims against his former counsel (now fellow co-defendant in this case) the Buzbee Law Firm ("the Firm"). *Id.* ¶ 19. On December 18, Maldonado emailed Croft, informing her that he no longer required her assistance. *Id.* ¶ 22.

Sometime on that same day, Anthony Buzbee posted about Croft three times on social media. *See id.* ¶¶ 32, 46. On Instagram, where Buzbee maintained over 104,000 followers, he wrote that agents working for Croft illegally solicited the Firm's clients by offering them up to $10,000 to file a frivolous case against the Firm and that Croft had already conspired with others to do so multiple times. *Id.* ¶¶ 32–38, 42–43. Buzbee claimed Croft orchestrated the conspiracy to commit barratry and intimidate lawyers at the Firm. *Id.* ¶¶ 39, 41–42. Buzbee shared an identical post on his Facebook account, where he had thousands of followers. *Id.* ¶¶ 46–47. In his second Facebook post, Buzbee purportedly quoted a secret recording in which agents working for Croft offer one of the Firm's former clients money to sue Buzbee. *Id.* ¶ 49. Croft maintains the statements in Buzbee's posts were lies and seriously damaged Croft's reputation and the reputation of her law firm in Mississippi. *Id.* ¶¶ 33–34, 36–37, 40, 42, 44–45, 50.

Unaware of Maldonado's email that he no longer needed her advice,[2]

---

[2] The complaint does not specify when Croft became aware of Buzbee's

Croft called Maldonado on December 19 to advise him that—despite other cases that made light of the Firm's financial irregularities—she did not believe Maldonado's evidence would be sufficient to pursue any claims. *Id.* ¶¶ 21, 24–30. During the call, Croft sensed another person's presence on the line and heard what sounded like a recording device being activated. *Id.* ¶ 22. Also on December 19, Buzbee sent a letter to his former clients and repeated the narrative that "'investigators' and the lawyers that hire them" were acting illegally. *Id.* ¶ 54.

Maldonado contacted Croft again on December 23, but Croft did not respond. *Id.* ¶ 23. Days later, Croft discovered that around the time that Croft provided legal assistance to Maldonado, Maldonado partnered with Buzbee and the Firm as part of a coordinated plan to defame and entrap Croft. *Id.* ¶ 23.

Croft filed this diversity action about a year later and brought six claims: (1) defamation, (2) defamation per se, (3) false light invasion of privacy, (4) intentional infliction of emotional distress, (5) negligent infliction of emotional distress, and (6) civil conspiracy. *Id.* ¶¶ 56–86. Croft seeks $25,000,000 in compensatory damages, including emotional distress, damages per se, loss of wage-earning capacity, and loss of personal and

---

social-media posts.

professional reputation. *Id.* ¶¶ 61, 88. The defendants have moved to dismiss Croft's complaint under Fed. R. Civ. P. 12(b)(6). Dkt. 15. The motion is ripe for review. *See* Dkt. 21.

## II. Standard of Review

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the pleaded facts allow the court to reasonably infer that the defendant is liable for the alleged conduct. *Id.* In reviewing the pleadings, a court accepts all well-pleaded facts as true, "construing all reasonable inferences in the complaint in the light most favorable to the plaintiff." *White v. U.S. Corrs., L.L.C.*, 996 F.3d 302, 306–07 (5th Cir. 2021). But the court does not accept "conclusory allegations, unwarranted factual inferences, or legal conclusions" as true. *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

## III. Discussion

### A. *Colorado River* Abstention

The defendants have moved for a stay or dismissal under the *Colorado River* abstention doctrine, which allows a federal district court to stay or

dismiss a pending lawsuit in favor of a concurrent, parallel state-court proceeding. *Colo. River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817–18 (1976). Because the state actions are not parallel, and the balance of the *Colorado River* factors would not support abstention regardless, the court declines to stay or dismiss the case.[3]

**B. False Light and Negligent Infliction of Emotional Distress**

The defendants argue that the court must dismiss Croft's claims for false light and negligence infliction of emotional distress ("NIED") because Texas law does not recognize those torts. Croft argues that the claims are permissible because Mississippi law applies to those claims, and Mississippi recognizes the torts. Croft is correct.

A federal court sitting in diversity will apply the substantive law of the forum state unless there is a conflict. *Mt. Hawley Ins. Co. v. Jamal & Kamal, Inc.*, 550 F. Supp. 3d 432, 436 (S.D. Tex. 2021). A conflict exists when one state recognizes a cause of action and the other does not. *See Quicksilver Res., Inc. v. Eagle Drilling, LLC*, 792 F. Supp. 2d 948, 954 (S.D. Tex. 2011).

[3] The Harris County cases were dismissed before this court could rule on the defendants' motion. *See* Dkt. 25. The defendants argue that the issue is still ripe while on appeal (Dkt. 27), although the Fifth Circuit is silent on that point. Because the court could not abstain if the issue were not ripe—so, the result would be the same regardless—the court assumes without deciding that the issue is still ripe for review.

In the event of a conflict, the forum state's choice-of-law rules supply the applicable test. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

Here, Texas and Mississippi law regarding false light and NIED unquestionably conflict. *Contrast Cain v. Hearst Corp.*, 878 S.W.2d 577, 579 (Tex. 1994) (holding that Texas does not recognize a cause of action for false light), *and Boyles v. Kerr*, 855 S.W.2d 593, 594 (Tex. 1993) ("[T]here is no general duty in Texas not to negligently inflict emotional distress."), *with Hayes v. LaForge*, 333 So. 3d 595, 608 (Miss. Ct. App. 2022) (analyzing the plaintiff's claim for false light), *and Wilkerson ex rel. Reel v. Allred*, 407 So. 3d 218, 228 (Miss. Ct. App. 2024) (analyzing the plaintiff's claim for NIED), *cert. denied sub nom. Wilkerson v. Allred*, 406 So. 3d 772 (Miss. 2025). Thus, the court will apply Texas choice-of-law rules to determine which state's substantive law to apply. *See Klaxon*, 313 U.S. at 496.

Texas courts use the "most significant relationship" test prescribed by the Restatement (Second) of Conflict of Laws § 145. *Levine v. CMP Publications, Inc.*, 738 F.2d 660, 667 (5th Cir. 1984) (citing *Gutierrez v. Collins*, 583 S.W.2d 312, 318–19 (Tex. 1979)). Texas courts also follow the general guidelines in § 6, which permit the court to consider the general policies and interests of each state. *Id.*

Section 145 lists four factors to consider when determining which state's tort law has the most significant relationship to the case: "(1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the residence, nationality, and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered." *Jacked Up, L.L.C. v. Sara Lee Corp.*, 854 F.3d 797, 815 (5th Cir. 2017) (quoting *In re ENSCO Offshore Int'l Co.*, 311 S.W.3d 921, 928 (Tex. 2010)).

"[T]he place of injury is of particular importance in the case of personal injuries." § 145 cmt. f. Further, when a defendant publishes an injurious falsehood through an aggregate communication (e.g., a social-media post), the state with the most significant relationship will typically be the state where she was domiciled at the time of publication. *See Levine*, 738 F.2d at 667; §§ 150(2), 151 ("The choice-of-law rules involving injurious falsehood are the same as those involving defamation.").

Weighing the § 145 and § 6 factors, Mississippi law has the most significant relationship to this dispute. Several factors are neutral: the third factor is neutral because Croft resides in Mississippi, but the defendants' domicile is Texas (Dkt. 1 ¶¶ 6–9); the fourth factor is neutral because Croft's relationship with Maldonado began when he called her while she was in

Mississippi, but their discussion (and Croft's subsequent research) centered around claims Maldonado may have had against the Firm in Texas (*Id.* ¶¶ 19, 22, 24); and the § 6 policy considerations are neutral because Texas has an interest in regulating the speech of its citizens, but Mississippi has an interest in protecting its citizens from harm.

Only the second factor—the place where the defendants carried out the alleged conduct—favors Texas: Buzbee wrote the injurious social-media posts and letter from Texas, and Maldonado called Croft from Texas. *Id.* ¶¶ 19, 32, 46.

But the first and most important factor—where the plaintiff suffers the injury—favors Mississippi: Croft resides, practices law, and alleges ongoing damages in Mississippi, so her injuries arise in Mississippi. *See id.* ¶¶ 6, 14–15, 17, 45, 50, 55, 70, 88. Because this factor weighs more heavily in personal-injury and injurious-falsehood cases, and only one factor favors Texas, the court finds that Mississippi substantive law applies to Croft's false light and NIED claims, and denies the defendants' motion to dismiss on the basis of Texas law.

### C. Defamation and Defamation Per Se

To state a plausible defamation claim under Texas law,[4] a plaintiff who

---

[4] The parties have not raised a choice-of-law issue for Croft's remaining

is not a public figure must establish: (1) the defendant published a false statement of fact to a third party, (2) the statement is defamatory and about the plaintiff, (3) the defendant acted negligently (at minimum) in publishing the statement, and (4) the publication caused damages. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 743 (5th Cir. 2019) (citing *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015)). A statement is defamatory "if it tends to injure a person's reputation and thereby expose the person to public hatred, contempt, ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation." *Lipsky*, 460 S.W.3d at 593.

"Defamation per se refers to statements that are so obviously harmful that general damages may be presumed." *Walker*, 938 F.3d at 743. "Accusing someone of a crime" is defamatory per se, as are "[r]emarks that adversely reflect on a person's fitness to conduct his or her business or trade." *Lipsky*, 460 S.W.3d at 593.

Viewing the facts in the light most favorable to Croft, the court may reasonably infer that Buzbee and the Firm made defamatory statements. *See White v. U.S. Corrs., L.L.C.*, 996 F.3d 302, 306–07 (5th Cir. 2021). Buzbee, speaking on behalf of himself and the Firm, published several social-media

claims, so the court will assume without deciding that Texas law governs for the purposes of this opinion.

posts accusing Croft of habitual illegal activity. *See, e.g.*, Dkt. 1 ¶¶ 37, 43; *see also id.* ¶¶ 32, 47–48 (showing Buzbee's posts, which contain statements such as "The Buzbee Law Firm filed suit" and "we have reported this conduct" and thus indicate the statements were made by both Buzbee and the Firm.). Croft insists these statements were lies. *See, e.g.*, *id.* ¶ 33. But Buzbee and the Firm "knowingly and willfully" published the statements anyway. *See, e.g.*, *id.* ¶ 57. And Croft's reputation suffered as a result. *See, e.g.*, *id.* ¶ 57. These facts alone establish both defamation and defamation per se, and Croft has satisfied her burden under Fed. R. Civ. P. 12(b)(6).

**D. Civil Conspiracy**

Croft has sufficiently pleaded her civil-conspiracy claim. A plaintiff bringing a civil-conspiracy claim must allege: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Apani Sw., Inc. v. Coca-Cola Enters.*, 300 F.3d 620, 635 (5th Cir. 2002) (quoting *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983)). Plaintiffs who advance civil-conspiracy claims must plead specific facts. *Young v. Biggers*, 938 F.2d 565, 569 (5th Cir. 1991).

The "meeting of the minds" element is satisfied when there is circumstantial evidence that the defendants knew of the harm at the

inception of the agreement. *Conceal City, L.L.C. v. Looper L. Enf't, LLC*, 917 F. Supp. 2d 611, 617 (N.D. Tex. 2013).

The overt act may be a tortious act committed by a conspirator "pursuant to the conspiracy." *Adams v. Alcolac, Inc.*, 974 F.3d 540, 544 (5th Cir. 2020) (quoting *Agar Corp. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 141–42 (Tex. 2019)). Regarding the damages element, "the injury is the damage from the underlying wrong, not the conspiracy itself." *Agar Corp., Inc.*, 580 S.W.3d at 141 (citing *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 856 (Tex. 1968)).

Here, Croft plausibly alleged conspiracy. *See Somov v. Barnes*, No. 1:25-CV-717-RP, 2026 WL 1329842, at *2 (W.D. Tex. May 11, 2026), *report and recommendation adopted,* No. 1:25-CV-717-RP, 2026 WL 1511160 (W.D. Tex. May 28, 2026) (recommending the district court deny the defendants' motion to dismiss when the plaintiff plausibly alleged the defendants conspired to defame her).

Croft satisfied the first three elements by alleging that Maldonado, Buzbee, and the Firm worked together to create a fake solicitation for her legal services and fabricate stories about her "illegal" conduct online. Dkt. 1 ¶¶ 31–55, 82–83. Croft satisfied the final two elements by plausibly alleging her defamation claim, as explained in more detail above. *See* Part III.C;

*Somov*, 2026 WL 1329842, at *2. Thus, Croft has plausibly alleged civil conspiracy.

**E. Intentional Infliction of Emotional Distress ("IIED")**

"To recover damages for [IIED], a plaintiff must establish that: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *Hoffmann-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004) (citing *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998)). "[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" do not suffice. *Id.* "Where the gravamen of a plaintiff's complaint is really another tort, intentional infliction of emotional distress should not be available." *Id.*

The defendants argue that Croft's IIED claim should be dismissed because the basis of the claim is defamation. Dkt. 15 at 23–24; s*ee also Hoffmann-La Roche*, 144 S.W.3d at 447. The defendants further argue that the complaint does not allege extreme or outrageous conduct. Dkt. 15 at 24. The court disagrees.

Although it is a close call, construing the complaint in the light most favorable to Croft, there are several independent allegations that support

Croft's IIED claim. For example, Croft alleges that Buzbee and the Firm initiated a "campaign" to "intimidate," "silence," and "entrap" her. Dkt. 1 ¶¶ 13, 23, 30. Instigating a coordinated attack to entrap and intimate (*Id.*) an attorney from a foreign jurisdiction (*Id.* ¶ 73) to stop her from looking into a law firm's financial practices (*Id.* ¶ 30) after initially causing the attorney to look into the financial practices by tricking her into engaging with a new client (*Id.* ¶¶ 19–20, 23) is extreme conduct that goes beyond "mere insults" or "indignities." *See Hoffmann-La Roche*, 144 S.W.3d at 447. Accordingly, the court denies the defendants' motion to dismiss Croft's IIED claim.

* * *

For the foregoing reasons, the court denies the defendants' motion to dismiss. Dkt. 15.

Signed on Galveston Island this 30th day of September, 2026.

Jeff Brown

JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE